**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pacesetter Consulting LLC, | No. CV-19-00388-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Herbert A. Kapreilian, et al., | |
| Defendants. | |

Pending before the Court are (1) a motion to dismiss the second amended complaint filed by defendants Craig Kapreilian, Herbert Kapreilian, Fruit World Nursery, Inc., and Eastside Packing, Inc. (collectively, "Defendants") (Doc. 103), (2) a motion for leave to file a third amended complaint by plaintiff Pacesetter Consulting LLC ("Pacesetter") (Doc. 98), and (3) a "Motion for Rule 60 Relief" filed by Pacesetter (Doc. 96). The Court issued a tentative ruling on November 18, 2019 (Doc. 124) and heard oral argument on December 2, 2019. For the following reasons, the Court will deny the motion to dismiss, grant in part and deny in part the motion to amend, and deny the motion for relief.

## BACKGROUND

The facts as alleged in the second amended complaint (Doc. 87), and as established in other judicial proceedings related to this case, are as follows.[1]

---

[1] When ruling on a 12(b)(6) motion, courts may consider "matters properly subject to judicial notice." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1117 (9th Cir. 2018) (citation omitted). *See also United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e 'may take notice of proceedings in other courts . . . if those proceedings have a direct relation to matters at issue.'") (citation

I.  Factual Background

In early 2005, Craig Kapreilian, along with nonparties John R. Norton III, John P. Norton, and Roger Stevenson, launched Citrines Operations, Inc ("Citrines"). (*Id.* ¶¶ 1-2.) Citrines' goal was to cultivate two orchards' worth of new, proprietary varieties of mandarins provided by Craig's company, Fruit World Nursery, Inc ("Fruit World"). (*Id.* ¶¶ 2, 20-22.) Herbert Kapreilian sold land to Citrines at a discount, on the condition that fruit produced from the orchards was packed by his company, Eastside Packing, Inc. (*Id.* ¶ 4.) The two orchards gave rise to two limited partnerships—Phoenix Orchard Group I and Phoenix Orchard Group II ("POG I" and "POG II"). (*Id.* ¶ 5.)

Both orchard groups began seeking investors. (*Id.* ¶¶ 6-8.) One such investor was the Judson C. Ball Revocable Trust (the "Trust"). (*Id.* ¶ 7.) By April 2008, the Trust had contributed $200,000 to each orchard group. (*Id.*)

On the surface, it appeared to be a sound investment. The Executive Summary outlining the investment opportunity explained that Craig, through Fruit World, had conducted "14 years of world-leading research and development" that resulted in new mandarin varieties suited to the California growing season. (*Id.* ¶ 31.) That research enabled Craig to produce the mandarins in a cost-effective way, over most of the year, with high-quality fruit that surpassed what competitors were putting on the market. (*Id.*) The offering documents projected an annualized return of 22.4% over 25 years, with investors earning back their initial investments in six years. (*Id.* ¶ 32.)

Beneath the surface, though, the roots were rotten. None of what Craig claimed about his experience or research was true. (*Id.* ¶¶ 39-40). The crops were particularly susceptible to freezes, and a 2006 freeze almost entirely wiped out POG I. (*Id.*) Craig's failures were so severe that he was fired from his position maintaining the orchards. (*Id*.)

---

omitted); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("[Courts] may take judicial notice of court filings and other matters of public record."). The only limitation, at least at the motion-to-dismiss stage, is that the Court may not take judicial notice of any disputed facts contained within such records. *See, e.g., Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-90 (9th Cir. 2001).

The trouble didn't end with Craig's lack of expertise, however. The complaint alleges a variety of side-deals, unauthorized transactions, unauthorized debts, and unauthorized personnel decisions made by Citrines and the Kapreilians. (*Id.* at 10-16, 17, 18.) These all deprived POG members of their decision-making rights and potential profits. (*Id.* at 3-4, 17.)

II. <u>State Court Litigation</u>

Unhappy with the situation, the Trust brought a lawsuit in Maricopa County Superior Court against POG I, POG II, Stevenson, the Nortons, and various business entities they controlled. (Doc. 103-1 at 3-6.) The Trust alleged the same factual background detailed above and brought statutory claims under A.R.S. §§ 44-1991(A), -1999(B), and -2003(A) and tort claims for misrepresentation and nondisclosure. (*Id.* at 11-13.) The defendants answered and filed a counterclaim seeking rescission of the Trust's interests in the orchard groups under A.R.S. § 44-2001(A). (Doc. 103-2 at 10-20.)

The state court determined that rescission was appropriate and entered a declaratory judgment to that effect. (Doc. 103-3 at 6.) Rescission satisfied the Trust's statutory claims. (*Id.*) The court noted, however, that rescission did not satisfy the potential damages under the tort claims and declined to declare the Trust's tort claims satisfied. (*Id.*) The Trust was unsatisfied with rescission and appealed the decision. *Judson C. Ball Revocable Trust v. Phoenix Orchard Group I, LP*, 2018 WL 283049, *1 (Ariz. Ct. App. 2018) (mem. decision) (*Trust I*). The Arizona Court of Appeals affirmed the rescission.

Although the Trust maintained its tort claims, they ultimately failed. (Doc. 103-6.) The state court determined that Judson Ball, representative for the Trust, didn't read any of the relevant materials before investing. (*Id.* at 5, 7-8, 11.) Because it was Ball's "extreme carelessness" that led to his alleged injuries, rather than misrepresentations made by the defendants, the court granted summary judgment in favor of the defendants. (*Id.* at 2, 5, 11.) That decision is currently on appeal. *Judson C. Ball Revocable Trust v. Phoenix Orchard Group I*, 2019 WL 2373855 (Ariz. Ct. App. 2019) (*Trust III*).

While that litigation was ongoing, the Trust also brought a derivative action in state

court against both orchard groups. *Judson C. Ball Revocable Trust v. Phoenix Orchard Group I*, 431 P.3d 589, 591 (Ariz. Ct. App. 2018) (*rev. denied* April 30, 2019) (*Trust II*). The state court dismissed the action after the rescission, holding that the Trust, because it no longer had an interest in the orchard groups, no longer had standing. *Id.* The Trust appealed but the Arizona Court of Appeals affirmed, concluding that, "because the Trust no longer possesses any ownership interest in POG," it no longer had standing to pursue the derivative action. *Id.* at 594.

III. The Federal Case

At some point in this affair, the Trust assigned its "right, title, interest, and claims to economic damages" to Pacesetter. (Doc. 87 at ¶ 7.) Pacesetter filed this action in January 2019, alleging the same factual background detailed above but bringing a variety of tort claims against the Kapreilians, their respective companies, and other entities responsible for the "side deals" that deprived the orchard groups of profits. (Doc. 1.) The complaint was amended the next month (Doc. 7), and then, after receiving leave from the Court, was amended again in June 2019 (Docs. 84, 87).

In the course of discovery, Pacesetter became aware of a transfer of some of POG I's property to Agriculture Capital, LLC ("Agriculture Capital") in November 2016. (Doc. 83 at 1.) Defendant Tom Avenelis, the owner of the farm management company now overseeing the orchards, is a member in Agriculture Capital. (*Id.*) "Because [Pacesetter] has a direct claim to conversion of POG assets . . . counsel requested a disclosure of the sale and closing documents" related to the property. (*Id.*) After Avenelis refused the request, the parties filed a notice of discovery dispute. *(Id.*) The Court construed the notice as a motion to compel and denied the motion. (Doc 92 at 17-18.) Specifically, the Court concluded that, because Agriculture Capital was a non-party to this litigation and because the relevance of the documents was unclear, an informal request for the documents was improper. (*Id.* at 19.)

Pacesetter now seeks leave to amend its complaint for a third time. (Doc. 98.) The proposed amendment adds new defendants and three new causes of action, two of which

are premised on the sale of property from POG I to Agriculture Capital. (Doc. 98 at 3; Doc. 98-1 at 1, 36-39.) Pacesetter has also filed a Rule 60 motion for relief from the Court's order in the discovery dispute, arguing that the short page limit on briefs led to "judicial surprise" and that new evidence has come to light that calls the Court's decision into doubt. (Doc. 96 at 1.) Avenelis has filed a response opposing the motion to amend, and Mark Bassetti has also filed a brief preserving an argument he plans to make in a motion to dismiss. (Docs. 106 and 107.) Avenelis has also filed a response to the Rule 60 motion. (Doc. 100.)

Separately, the Kapreilians and their companies, Fruit World and Eastside Packing, have filed a motion to dismiss the second amended complaint. (Doc. 103.) They primarily argue that the Court lacks personal jurisdiction over them. (*Id.* at 5-6.) Even if jurisdiction is appropriate, Defendants argue the complaint should still be dismissed because it is barred by claim preclusion. (*Id.* at 5.) Pacesetter opposes the motion, arguing that jurisdiction is proper and that claim preclusion does not apply. (Doc. 111.)

**ANALYSIS**

I. Defendants' Motion to Dismiss

Defendants raise essentially two arguments in their motion to dismiss. The first is that the Court lacks personal jurisdiction over them. The Kapreilians and their companies are all citizens of California, and they argue that their contacts with Arizona are insufficient to establish either general or specific jurisdiction for this action. (Doc. 103 at 6-10.) Second, even if personal jurisdiction exists, Defendants contend that Pacesetter's claims have already been litigated in the state court proceedings. (*Id.* at 10.) This action, they continue, must therefore be dismissed under the doctrine of claim preclusion. (*Id.* at 10-17.) The Court will address the jurisdictional question first.

  A. **Personal Jurisdiction**

Defendants argue that the Court lacks personal jurisdiction over them. First, Defendants contend they have not "purposefully directed their activities toward Arizona" and are not citizens of Arizona, so the Court lacks general jurisdiction over them. (Doc.

103 at 5.) Second, Defendants contend they lack sufficient minimum contacts to establish specific jurisdiction. (*Id.*) Pacesetter responds that the Court has both general and specific jurisdiction over Defendants. (Doc. 111 at 7.) Although the parties briefed this issue extensively, the question was actually resolved in the initial stages of this litigation.

                1.      Craig and Fruitworld

Early on, Pacesetter moved for an entry of default against Craig and Fruitworld for failing to reply to the first amended complaint. (Doc. 25.) The Clerk entered default two days later. (Doc. 27.) Craig and his company then moved to set aside the default, arguing that they never received proper service of process. (Doc. 34.) Importantly, they did not argue in this motion that the Court lacked personal jurisdiction over them. To the contrary, they voiced an intention to "conduct proper discovery and have an opportunity to defend this case on the merits." (*Id.* at 10.)

"A fundamental tenet of the Federal Rules of Civil Procedure is that certain defenses under Fed. R. Civ. P. 12 must be raised at the first available opportunity, or, if they are not, they are forever waived." *Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1106 (9th Cir. 2000). In *Hayhurst*, the plaintiff moved to set aside a default judgment under Rule 55, arguing only that service of process had been improper. *Id.* at 1107. The trial court denied plaintiff's motion, and, on appeal, the plaintiff also argued that the court had lacked personal jurisdiction. *Id.* The Ninth Circuit determined that the plaintiff's failure to raise personal jurisdiction in his Rule 55 motion constituted waiver. *Id.* at 1107-08. The court noted that "Rule 12(h) provides that a 'defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived . . . if it is neither made by motion under this rule nor included in a responsive pleading." *Id.* at 1107. Whether the filing was under Rule 12 or Rule 55 was immaterial— the "essence" of Rule 12 requires all Rule 12 defenses to be raised at the same time, and "the rule applies with equal effect no matter what is the title of the pleading." *Id.* The Rule 55 pleading was a responsive pleading for purposes of Rule 12, and the plaintiff had failed to raise lack of jurisdiction in his Rule 55 motion. *Id.* at 1106-07. The defense of lack of

jurisdiction, then, was waived. *Id.* at 1108.

*Hayhurst* resolves this issue. Craig and Fruitworld moved to vacate the entry of default under Rule 55. They raised a single Rule 12 defense—insufficient service of process—and otherwise voiced an intention to litigate the case on the merits. At that point, all other defenses listed under Rule 12(h), including lack of personal jurisdiction, were waived. The motion to dismiss for lack of personal jurisdiction as to Craig and Fruitworld is therefore denied.

2. <u>Herbert and Eastside Packing</u>

The Clerk did not enter default against Herbert and his company, Eastside Packing, and as a result those defendants did not join in Craig's first motion to set aside default. (Docs. 27, 34.) They did, however, sign on to a joint motion to set aside default and extend the time for an answer. (Doc. 36.)

Failing to raise personal jurisdiction when raising other Rule 12 defenses is not the only way a party can waive that defense. A party can also "waive the defect of lack of personal jurisdiction by appearing generally without first challenging the defect in a preliminary motion." *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982). "An appearance ordinarily is an overt act by which the party comes into court and submits to the jurisdiction of the court. This is an affirmative act involving knowledge and an intention to appear." *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986). "Intent to appear" requires a "clear purpose to defend." *Id.*

Here, Herbert and Eastside Packing joined a motion to set aside default they had no reason to join—default had not been entered against them, so participation in the motion was completely voluntary. (Doc. 36.) Motions to set aside default and participation in joint stipulations have each been regarded as actions that manifest a "clear purpose to defend the action." *Pom Wonderful LLC v. Gida Maddeleri ITH IHR TIC SAN AS*, 2014 WL 12738923, *3 (C.D. Cal. 2014). In other words, the joint motion to set aside default was not the sort of "holding pattern" that does not constitute a general appearance, nor was it an informal, out-of-court communication. *Franchise Holding II, LLC v. Huntington*

*Rests. Grp., Inc.*, 375 F.3d 922, 928 (9th Cir. 2004) (reviewing Ninth Circuit cases analyzing general appearances). Rather, Herbert and Eastside Packing affirmatively demonstrated "knowledge of the suit and an intention to appear." *Benny*, 799 F.2d at 491.[2] The motion to dismiss for lack of personal jurisdiction as to Herbert and Eastside Packing is therefore denied.

### B. Claim Preclusion

Defendants next argue that Pacesetter's claims are barred by claim preclusion. They argue that the claims here arise from the same nucleus of facts as the claims in the state court proceedings, those claims were fully adjudicated in the state court proceedings, and Pacesetter should not get a "second bite of the apple." (Doc. 103 at 10-17.) Pacesetter counters that the state court litigation involved different parties and different claims, so two separate elements of claim preclusion are absent. (Doc. 111 at 4-7.)

"Claim preclusion, often referred to as res judicata, bars any subsequent suit on claims that were raised or could have been raised in a prior action." *Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2009). "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Olivas-Motta v. Whitaker*, 910 F.3d 1271, 1279 (9th Cir. 2018) (citation omitted). Similarly, claim preclusion "bars all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action." *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992). "Claim preclusion 'applies when there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between the parties.'" *Cell Therapeutics*, 586 F.3d at 1212 (citation omitted). Because claim preclusion is an affirmative defense, "it is incumbent on the defendant to plead and prove such a defense." *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008). In

---

[2] The Court acknowledges that many of the cases discussed in this section arose under different factual circumstances involving issues of default under Rule 55. That said, *Benny* noted that any defect in personal jurisdiction is waived by a general appearance and did not distinguish a general appearance for personal jurisdiction purposes from any other sort of general appearance. *Benny*, 799 F.2d at 492. The analysis, then, is the same.

determining the preclusive effect of a prior judgment, the Court applies "the res judicata rule of the jurisdiction that heard the initial case." *Howard v. City of Coos Bay*, 871 F.3d 1032, 1040 n. 2 (9th Cir. 2017). Thus, Arizona law applies.

As noted, claim preclusion requires privity between the parties in the first and second suits. "Finding privity between a party and a non-party [to prior litigation] requires both a substantial identity of interests and a working functional relationship." *Hall v. Lalli*, 977 P.2d 776, 779 (Ariz. 1999) (quoting *Phiniesee v. Rogers*, 582 N.W.2d 852, 854 (Mich. Ct. App. 1998)). "Examples of persons in privity include employers and employees, principals and agents, and indemnitors and indemnitees." *Corbett v. ManorCare of Am., Inc.*, 146 P.3d 1027, 1039 (Ariz. Ct. App. 2006).

Defendants have failed, at this early stage of the proceedings, to meet their burden of demonstrating privity. They assert that "[w]hile the 11 defendants named in [this] action were not named as 'parties' in the prior State Court Action, they are certainly privies—in fact, the named Defendants here are littered throughout the State Court Action's Second Amended Complaint." (Doc. 103 at 14.) It is possible this assertion would have been persuasive had Defendants offered any support for it, but they did not (presumably because they are seeking dismissal at the Rule 12(b)(6) stage). The mere assertion of privity, standing alone, is all they have offered.

In essence, Defendants' theory of privity boils down to the fact that Defendants were mentioned in the state court complaint. That does not establish privity. Rather, privity stems from relationships with a "certain recognized legal significance." *Aldrich & Steinberger v. Martin*, 837 P.2d 1180, 1183 (Ariz. Ct. App. 1992). Mere mention in a complaint is not legally significant. Accordingly, Defendants' argument that claim preclusion bars this action is denied without prejudice. Although Defendants may be able to establish claim preclusion at a future stage of the proceedings, it is not established on the current record.

…

…

II. Pacesetter's Motion To Amend

Pacesetter seeks to amend its complaint for a third time. (Doc. 98.) The proposed amendment adds five new defendants, the spouses of all named defendants, and three new causes of action (Counts 9 through 11). (Doc. 98-1 at 1, 32-39). Count 10, conspiracy to defraud, and count 11, fraudulent transfer, turn on the sale of part of POG I's land to Agriculture Capital. (*Id.* at ¶¶ 146, ¶ 154.) In Pacesetter's view, the October 2016 sale of one of POG I's ranches to an "insider-related entity (Agriculture Capital, LLC)" is both a fraudulent transfer and part of a conspiracy to defraud. (*Id.* at 36-39.) Avenelis filed a response opposing the motion to amend as to counts 10 and 11, arguing that those amendments are futile. (Doc. 106 at 1.)

"Rule 15 advises the court that leave [to amend] shall be freely given when justice so requires. This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations and internal quotation marks omitted). Thus, "[n]ormally, when a viable case may be pled, a district court should freely grant leave to amend." *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058 (9th Cir. 2011). "However, liberality in granting leave to amend is subject to several limitations." *Id.* (citation and internal quotation marks omitted). "Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay." *Id.* If the amendment would be subject to dismissal, there is no need to grant leave to amend. *Californians for Renewable Energy v. California Pub. Utils. Comm'n*, 922 F.3d 929, 935 (9th Cir. 2019).

Although not labelled as such, Pacesetter essentially asserts two statutory theories as to why counts 10 and 11 should be added. The first is that the Trust (which has assigned its rights to Pacesetter) is a withdrawn partner of POG I entitled to distributions under A.R.S. § 29-334. Section 29-336 makes any partner entitled to distributions a creditor of the partnership. Pacesetter's second argument is that it is "a person with a claim," making it a creditor under A.R.S. § 44-1001. Either way, Pacesetter argues, it would be a creditor entitled to the protections provided by A.R.S. § 44-1004 against fraudulent transfers, which

would allow it to undo the transfer of land from POG I to Agriculture Capital.

The procedural and legal background of this case, however, refutes both arguments. As discussed, this case is an offshoot of extensive litigation in the Arizona state courts. In the Trust's original action, the superior court found that the Trust's remedy on its securities fraud claims against POG I and II was limited to statutory rescission of the initial transaction and entered an order accordingly. (Doc. 103-3 at 4-5). That remedy was granted under A.R.S. § 44-2001(A), which "is similar to the equitable remedy of rescission." *Grand v. Nachio*, 147 P.3d 763, 772 (Ariz. Ct. App. 2006). "To rescind a contract is not merely to terminate it, but to abrogate and undo it from the beginning; that is, not merely to release the parties from further obligation to each other . . . but to annul the contract and restore the parties to the relative positions which they would have occupied if no such contract had ever been made." *Reed v. McLaws*, 110 P.2d 222, 225 (Ariz. 1941). Rescission, then, represents the complete "undoing" of a transaction. *Grand*, 147 P.3d at 773.

Rescission was ordered on March 28, 2016. At that point, the Trust no longer had an ownership interest in POG I or POG II—either prospectively or retroactively. Indeed, the lack of continuing interest led the Arizona Court of Appeals to conclude that the Trust could no longer maintain a derivative action against the orchard groups. *Trust II*, 431 P.3d at 591-95. In no uncertain terms, then, the Trust (and thus its assignee, Pacesetter) had no interest in the orchard groups as of March 28, 2016.

That alone determines the issue here. The sale at issue happened in October 2016. (Doc. 98-1 at 38.) That was after Pacesetter's interest in POG I had ended. Pacesetter has no reason to complain of a fraudulent sale that occurred *after* its interest ended—Pacesetter could not have been denied funds from the sale, or otherwise harmed by the sale, because it had no stake in the ongoing business of POG I.

Nevertheless, Pacesetter strenuously argues that it did have an interest in POG I, and that the sale of the land harmed Pacesetter by impermissibly reducing POG I's assets. This argument relies heavily on a passage from the superior court order entering rescission

that Pacesetter has cited numerous times throughout its briefing. The passage reads:

> While rescission might make Plaintiff "whole" for the securities fraud claim under Arizona law, Plaintiff is not limited to that remedy for misrepresentation/non-disclosure, and may even recover punitive damages on that claim. Thus, assuming Plaintiff can prove all of its claims, rescission would not adequately compensate it for all of the tortious conduct alleged.

(Doc. 103-3 at 5.) Pacesetter has interpreted this passage to mean that the judge "ruled that the Trust's fraud damages existed after the statutory rescission" (Doc. 108 at 5), which in turn means that "the Trust had a continuing interest in the future revenue, profits, and losses of the continuing POG partnership" (Doc. 96 at 3).

Pacesetter misreads the superior court's order. Nowhere in the order was the Trust found to be a creditor. Nowhere in the order was the Trust found to have a continuing interest in the orchard groups. Nowhere in the order was the Trust found to have tort damages against the orchard groups. All the disputed passage says is that, under Arizona law, securities fraud claims and other torts have different damages, and that satisfying one does not satisfy the other. That is all. Pacesetter's frequent assertions otherwise are unavailing at best.

As a result, Pacesetter's statutory arguments lack merit. Citing A.R.S. § 29-334, Pacesetter argues that, as a withdrawn partner, the Trust was entitled to "the withdrawn limited partner's interest in the partnership to receive distributions." Section 29-336, in turn, bestows creditor status to any partner entitled to a distribution. Finally, A.R.S. § 44-1004 states that a debtor's transfer or obligation is fraudulent as to a creditor if it was made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor" or "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation." In Pacesetter's view, its continuing interest in POG I gives it creditor status, thus entitling it to the protections of § 44-1004.

These arguments are unavailing. First, Pacesetter is not a withdrawn partner. A limited partner's withdrawal is governed by the partnership agreement. A.R.S. § 29-333. Pacesetter did not withdraw "at the time or upon the happening of events specified in

writing in the partnership agreement." Rather, its entire contract with the orchard groups was rescinded, effectively nullifying any interest the Trust (and now Pacesetter) once had. Pacesetter's current legal status is as though it was never a partner at all. It is not a withdrawn partner entitled to distributions, and as such, is not a creditor. Any argument otherwise ignores the superior court's order.

Second, Pacesetter's other argument—that it is "a party with a claim" entitled to the prohibition against fraudulent transfers outlined in § 44-1004—fails for similar reasons. (Doc. 108 at 9.) "Person with a claim" is the definition of creditor provided by A.R.S. 44-1001. That statute, part of Arizona's Uniform Fraudulent Transfers Act, also defines "claim" as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, equitable, secured, or unsecured." § 44-1001(2). "Right to payment," in turn, means "nothing more nor less than an enforceable obligation." *Hullet v. Cousin*, 63 P.3d 1029, 1034 (Ariz. 2003) (quoting *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998)). "Without a debt against the transferor, a creditor has no claim against the transferee." *Jahner v. Jacob*, 515 N.W.2d 183, 185 (N.D. 1994) (cited with approval by *Hullet*, 63 P.3d at 1034). A claim need not be reduced to a judgment before a person becomes a creditor. *Gulf Insurance Co. v. Clark*, 20 P.3d 780, 785-86 (Mont. 2001) ("[A] judgment in hand is not a legal prerequisite for establishing standing to bring an UFTA claim."); *Klingman v. Levinson*, 114 F.3d 620, 627 (7th Cir. 1997) (holding that a person became a creditor "when her claim arose, even though it was not reduced to judgment" until six years later). *See also Moore v. Browning*, 50 P.3d 852, 861 (Ariz. Ct. App. 2002) (agreeing with *Gulf Insurance Co.*).

At bottom, a claim is required, and Pacesetter does not have one. The fraudulent transfer claim is brought against POG I and Avenelis. POG I, however, was a party to the previous state court litigation. (Doc. 103-5 at 1.) That case was fully litigated and decided against the Trust, meaning that whatever claim it might have once had no longer exists. (Doc. 103-6.) Pacesetter has not pointed to any new tort claims it has against POG I, and Pacesetter's frequent, incorrect assertions that the superior court found it is entitled to tort

damages do not constitute a claim. Without those claims, Pacesetter is not a "creditor" of POG I.

In a nutshell, Pacesetter has no interest in what happened to POG I's assets after March 2016. That includes the transfer at issue in counts 10 and 11 of the proposed amended complaint. Accordingly, those amendments are futile. Further, by Pacesetter's own admission, "the Trust has no remedy against POG I" if §§ 29-334 and -336 don't apply, so it is also futile to add POG I as a defendant. Finally, the proposed amendment also seeks to add Agriculture Capital, LLC as a "nominal defendant[]" for counts 10 and 11 only. Because those amendments are futile, it would also be futile to add Agriculture Capital. As such, Pacesetter's motion to amend is denied with respect to counts 10 and 11, as well as with respect to the addition of defendants POG I and Agriculture Capital. The motion is otherwise unopposed, and therefore the remainder of the motion is granted.

III. Pacesetter's Motion For Relief

The final motion before the Court is Pacesetter's motion for relief under Rule 60. (Doc. 96.) That motion seeks relief from the Court's June 27, 2019 order denying a motion to compel Avenelis to produce documents related to the sale of land from POG I to Agriculture Capital. (Doc. 92 at 17-20.) Pacesetter argues that the Court suffered surprise as a result of the short briefs and that it has discovered new evidence relevant to its case.

At the outset, Rule 60 is an improper vehicle for this motion. Rule 60 is limited to final judgments that terminate litigation. *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 816 (9th Cir. 2018). The ruling on the discovery dispute did not terminate the action, and therefore Rule 60 is inapplicable. The more appropriate vehicle for seeking reconsideration of a ruling on a discovery dispute is LRCiv 7.2(g). *Honeywell Int'l, Inc. v. Western Support Group*, 2013 WL 2369919, *1 (D. Ariz. 2013). The Court will therefore consider Pacesetter's request for relief under that rule.

Under LRCiv 7.2, the Court will grant a motion for reconsideration if: (1) "[t]here are material differences in fact or law from that presented to the Court" that the moving party could not have known at the time of the Court's decision; (2) "[t]here are new material

facts that happened *after* the Court's decision"; (3) there was a change in law after the Court's decision; or (4) the moving party makes a "convincing showing that the Court failed to consider material facts presented to the Court." *Id.* at *1-2.

As discussed above, Agriculture Capital will not be added as a defendant. The Court's rationale when denying the earlier discovery request—that Agriculture Capital is a nonparty, and thus an informal request was an inappropriate vehicle to obtain the documents at issue—remains true. No new material information has been brought to light in that regard.

Further, it remains unclear how any of the documents related to this sale are relevant. Again, the transfer of assets at issue in the discovery dispute occurred after the superior court entered its rescission order. As discussed above, that rendered the Trust, and now Pacesetter, without an interest in the continued operations of the orchard groups, including the sale of POG I's land. In short, the same reasons that the proposed addition of counts 10 and 11 was rejected control this motion—Pacesetter had no interest in the sale.

The motion for reconsideration does not present any materially new evidence or law. Agriculture Capital continues to be a nonparty, and the Court continues to fail to see how a sale that occurred after the relationship between the Trust and POG I ended is relevant to disputes that arose in the course of the relationship. (Doc. 92 at 17-20.)

Further, and regardless of the merits, the motion is untimely. Rule 7.2(g)(2) requires that all motions for reconsideration be filed within 14 days of the disputed order. The order at issue was entered on June 27, 2019. (Doc. 86.) Pacesetter's motion was filed on July 18, 2019, 21 days after the order was entered—a full week late. (Doc. 96.) Accordingly, the motion for reconsideration is denied.

IV. <u>Mechanics Of Filing The Third Amended Complaint</u>

Local Rule 15.1 governs the mechanics of filing an amended complaint. Ordinarily, a party seeking leave to file an amended complaint must file a redlined version of the proposed new pleading that "indicate[s] in what respects it differs from the pleading which it amends," and if the motion is granted, the movant "must file and serve the amended

pleading on all parties . . . within fourteen (14) days of the filing of the order granting leave to amend." *See* LRCiv 15.1(a). However, the Court also has discretion to modify these requirements. *Id.*

Here, several modifications are necessary. First, during oral argument, Pacesetter requested (and Defendants did not oppose) a modest seven-day extension of the filing deadline. This request will be granted in light of the upcoming holiday schedule. Second, during oral argument, Pacesetter also requested (and Defendants did not oppose) further leave to make certain non-substantive changes to the second amended complaint (*e.g.,* correcting typos) beyond those set forth in the proposed redlined version of the third amended complaint appearing at Doc. 98-1. That request also will be granted. And third, in light of the fact that Pacesetter's motion for leave to file a third amended complaint is only being granted in part (*i.e.,* Pacesetter is not being allowed to add POG I and Agriculture Capital as defendants or to add proposed counts 10 and 11), it makes sense to require Pacesetter to file, contemporaneously with its third amended complaint, a new redlined version that indicates how the new pleading ultimately deviates from the second amended complaint.

Accordingly, **IT IS ORDERED** that:

(1)     Defendants' motion to dismiss (Doc. 103) is **denied**;

(2)     Pacesetter's motion to amend (Doc. 98) is **granted in part and denied in part**, as outlined above;

(3)     Pacesetter's motion for reconsideration (Doc. 96) is **denied**;

(4)     Pacesetter must, within 21 days of this Order, file and serve its third amended complaint (which may include only the changes from the second amended complaint that were authorized in this Order and the non-substantive changes that were discussed by Pacesetter's counsel during oral argument on December 2, 2019); and

…

…

…

(5) Pacesetter must file, as an exhibit to its third amended complaint, a redlined version of the pleading that indicates how it differs from the second amended complaint (Doc. 87).

Dated this 2nd day of December, 2019.

_____
Dominic W. Lanza
United States District Judge