1   **WO**

2

3

4

5

6                **IN THE UNITED STATES DISTRICT COURT**

7                  **FOR THE DISTRICT OF ARIZONA**

8

9   Pacesetter Consulting LLC,                No. CV-19-00388-PHX-DWL

10              Plaintiff,                     **ORDER**

11   v.

12   Herbert A Kapreilian, et al.,

13              Defendants.

14

15          Pending before the Court is a motion to dismiss filed by Defendants Daniel Duda,

16   Duda Farm Fresh Foods, Inc., ("Duda Foods") and A. Duda & Sons, Inc. ("A. Duda &

17   Sons") (collectively, "Defendants"). (Doc. 150.) Defendants argue that Plaintiff Pacesetter

18   Consulting LLC ("Pacesetter") failed to properly serve the third amended complaint

19   ("TAC") upon them. (*Id.*) For the following reasons, the motion will be granted.[1]

20                            **BACKGROUND**

21   I.    Factual and Procedural History

22          The factual and procedural history of this case is set out more fully in the Court's

23   prior orders. (Docs. 128, 152.) "In a nutshell, Pacesetter alleges that a multitude of

24   defendants engaged in a scheme to induce it to invest $400,000 into California orchards

25   that were doomed to (and did) fail." (Doc. 152 at 1.)

26          Among those defendants are Mr. Duda and two corporations for which he serves as

27   _____

28   [1]     The parties requested oral argument, but that request will be denied because the
     issues are fully briefed and oral argument will not aid the Court's decision. *See* Fed. R.
     Civ. P. 78(b); LRCiv. 7.2(f).

1    a corporate officer, Duda Foods and A. Duda & Sons.[2]  (Doc. 129 ¶ 15; Doc. 143 at 7.)  In

2    its first amended complaint ("FAC"), filed in February 2019, Pacesetter alleged that Mr.

3    Duda was aware of and concealed several key issues with the orchards.  (Doc. 7 ¶¶ 76-77.)

4    Although neither A. Duda & Sons nor Duda Foods was mentioned in the FAC, the FAC

5    did allege that an entity called "Duda & Sons LLC" engaged in misconduct by accepting

6    inadequate prices without notifying investors.  (Id. ¶¶ 80-82.)  No claims were asserted

7    specifically against either Mr. Duda or "Duda & Sons LLC," but the FAC asserted claims

8    of conversion, consumer fraud, fraudulent concealment, tortious interference with a

9    contract, and unjust enrichment against "all defendants."  (Id. at 19-22, 24-25, 27-28.)

10        On February 28, 2019, Mr. Duda moved to dismiss the FAC due to a lack of personal

11   jurisdiction.  (Doc. 22.)  Pacesetter responded that the Court had jurisdiction because

12   "Duda & Sons LLC" "provided marketing, supervision, pricing and packaging services"

13   to the orchards "for an extended period of time" and these contacts could be attributed to

14   Mr. Duda in his role as Vice President of "Duda & Sons LLC."  (Doc. 29.)

15        As it turns out, "Duda & Sons LLC" doesn't exist.  In a separate motion to dismiss

16   filed by A. Duda & Sons, the real entity pointed out that "[a] brief check with the Florida

17   Secretary of State shows no entity by the name of Duda & Sons, LLC."  (Doc. 21 at 2.)

18        On April 15, 2019, the Court orally granted both motions to dismiss.  (Doc. 57.)  As

19   for Mr. Duda, the Court held "the complaint does not contain any factual allegations

20   specifically targeted at . . . what Mr. Duda did in Arizona.  It just has a bunch of allegations

21   about what an entity called 'Duda' did, which . . . isn't sufficient to hale an individual

22   officer into court based on [a] personal jurisdiction theory."  In other words, "an entity

23   doing something in Arizona is different than an individual.  And just because a person

24   shares the last name with an entity doesn't mean that that individual is also subject to

25   personal jurisdiction in Arizona."  As for "Duda & Sons LLC," Pacesetter acknowledged

26

27   _____

[2]        The relationship between these two entities is unclear.  Pacesetter alleges that Duda
28   Foods is a "successor" to A. Duda & Sons and that A. Duda & Sons changed its name to
     Duda Foods after it began marketing the citrus orchards' products.  (Doc. 129 ¶¶ 15, 80.)
     The entities have represented that they are two entirely different entities, both of which still
     exist and operate in Florida.  (Doc. 73 at 14.)

its error by making an oral request, in the middle of the motion hearing, to retroactively change the name of the defendant sued in the FAC from "Duda & Sons, LLC" to "A. Duda & Sons, Inc." (Doc. 152 at 2 n.2.)  The Court rejected this request, due to its untimely and informal nature, and then held that "Duda & Sons, LLC" had to be dismissed because it is obvious that "[a]n entity that doesn't exist can't be subject to personal jurisdiction."

On May 9, 2019, Pacesetter filed a motion seeking leave to file a second amended complaint ("SAC").  (Doc. 67.)  This motion made clear that Pacesetter wasn't seeking to reinstate Mr. Duda, but it did seek to "substitute A. Duda & Sons, Inc[.] and its successor . . . Duda Farm Fresh Foods, Inc." for "Duda & Sons LLC."  (*Id.* at 3-4.)  The proposed SAC included allegations that the corporate entities engaged in various nefarious activities, including providing "industry pricing, costs, and projections which were inflated and grossly out of line with industry data" and "acquiesc[ing to] lower payments without disclosing the lower numbers to the . . . investors," which "resulted in unjustified and imprudent pricing information."  (Doc. 67-1 ¶¶ 80-82.)

On May 23, 2019, a different defendant, Mark Bassetti, filed a response opposing Pacesetter's motion for leave to amend.  (Doc. 73.)  This response characterized the proposed amendment as "a morass of assertions . . . that seek to add new Defendants (A. Duda & Sons, Inc. and Duda Farm Fresh Foods, Inc. (collectively, the 'Duda entities')), legal theories against the Duda entities, and reworked, formulaic recitations of elements instead of factual allegations."  (*Id.* at 1.)  In other words, although the response was formally filed only by Mr. Bassetti, it also seemed to advance arguments on behalf of A. Duda & Sons and Duda Foods.  (*Id.*)  Mr. Bassetti and the corporate entities largely shared the same arguments, but some, such as lack of personal jurisdiction, were unique to the corporate entities.  (*Id.* at 4-15.)

On June 24, 2019, over Bassetti's objection, the Court granted Pacesetter leave to file the SAC.  (Doc. 84).  When doing so, the Court noted that "Bassetti can only argue that proposed amended allegations against himself would be futile" and it was "improper" for Bassetti to assert arguments on behalf of A. Duda & Sons and Duda Foods because they

1   were not yet part of the action.  (*Id.* at 3-4.)

2          On June 28, 2019, Pacesetter filed the SAC.  (Doc. 87.)  This added both A. Duda

3   & Sons and Duda Foods as defendants for the first time.  Despite this addition, the docket

4   indicates neither entity was served with a summons or a copy of the SAC.

5          After the SAC was filed, a flurry of motions practice ensued, including a request by

6   Pacesetter for leave to file the TAC.  (Doc. 98.)  In bold font, the motion for leave to amend

7   indicated that its purpose was to "add[] Daniel Duda and other named individuals that

8   participated in the alleged torts" to the complaint.  (*Id.* at 3.)  In essence, Pacesetter was

9   seeking to reinstate Mr. Duda as a defendant.

10          On December 2, 2019, the Court granted in part and denied in part Pacesetter's

11   motion.  (Doc. 128.)  The Court concluded that the addition of some of the new defendants

12   and claims proposed in the TAC would be futile but otherwise granted the motion for leave

13   to amend.  (*Id.* at 14.)  This included adding Mr. Duda as a defendant.  (*Id.*)

14          On December 23, 2019, Pacesetter filed the TAC.  (Doc. 129.)  The TAC lists Mr.

15   Duda as a defendant in the caption and asserts that he "had authority as COO to fully direct

16   all alleged activities of [Duda Foods] and [Mr.] Bassetti."  (*Id.* at 1 & ¶ 15.)  The TAC goes

17   on to reproduce the same allegations against Mr. Duda that were contained in the FAC.

18   (Doc. 152 at 6-8.)  The docket indicates that Mr. Duda was never served with a summons

19   or a copy of the TAC after the TAC was filed.

20          On March 20, 2020, Pacesetter filed a "motion for partial summary judgment"

21   against Mr. Duda.  (Doc. 139.)  This motion alleged that Mr. Duda had violated several

22   state and federal perjury statutes when he claimed, in the affidavit filed in support of his

23   motion to dismiss the FAC, to have no knowledge of the events underlying this case.  (*Id.*

24   at 1-6.)  As a sanction for these alleged violations, Pacesetter asked that "the Court reinstate

25   [Mr.] Duda fully as a Defendant in this litigation and to impose on him" several sanctions,

26   including default judgment and attorney's fees.  (*Id.* at 15-16.)

27          On March 24, 2020, the Court issued a text-only docket entry addressing

28   Pacesetter's motion.  (Doc. 140.)  Although the entry noted that "allegations of perjury

always must be taken seriously," the Court was concerned that Pacesetter had moved for "partial summary judgment" on "claims . . . that do not appear in the complaint" and thus questioned the "propriety of the procedural vehicle Plaintiff has chosen." (*Id.*) To "avoid potentially unnecessary motions (and sanctions) practice," the Court ordered defendants to refrain from filing a response while the Court more fully grappled with Pacesetter's motion. (*Id.*)

On April 1, 2020, rather than wait for further direction from the Court, Pacesetter filed a "motion for hearing or conference." (Doc. 141.) In it, Pacesetter sought "a telephonic hearing to discuss if this Court believes that a hearing possibly leading to civil remedies is proper in a situation where a party who has made a so-called limited or special appearance arguably commits perjury to obtain dismissal from a civil lawsuit." (*Id.* at 3.) In the alternative, Pacesetter sought Rule 60 relief to reinstate Mr. Duda as a defendant. (*Id.* at 4-8.)

Later that day, the Court issued another order. (Doc. 142.) The Court informed the parties that it had chosen to construe Pacesetter's latest motion as a motion for Rule 60 relief that incorporated Pacesetter's earlier "motion for partial summary judgment." (*Id.*) Accordingly, the Court denied the earlier motion as moot and gave Mr. Duda 14 days to file a response to the latter motion. (*Id.*)

On July 2, 2020, after full briefing, the Court denied Pacesetter's Rule 60 motion as moot. (Doc. 152.) Because the allegations against Mr. Duda in the FAC were nearly identical to those in the TAC, it was "abundantly clear that Mr. Duda [was] now in the same position in this case as he was before he was dismissed from the FAC." (*Id.* at 6-8.) Thus, there was "no need for the Court to grant Rule 60 relief to reinstate Mr. Duda"— after the TAC was filed, Mr. Duda was, once again, part of this case. (*Id.*)

II.    The Pending Motion

On June 24, 2020, while Pacesetter's Rule 60 motion was pending, Defendants filed a motion to dismiss for insufficient service of process. (Doc. 150.) The motion thereafter became fully briefed. (Docs. 153, 158.)

**ANALYSIS**

I.      Legal Standard

Under Rule 12(b)(5) of the Federal Rules of Civil Procedure, a party may seek dismissal for "insufficient service of process."  "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4."  *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).  "The plaintiff may not rest on the allegations in the complaint or on conclusory statements, but must meet the defendant's challenge with affidavits or other proof showing that proper service was made."  1 S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 12 at 315.  *See also Travelers Cas. & Sur. Co. of Am. v. Telstar Const. Co., Inc.*, 252 F. Supp. 2d 917, 922-23 (D. Ariz. 2003) ("Factual questions concerning a 12(b)(5) motion, regarding the manner in which service was executed, may be determined by the Court through affidavits, depositions, or oral testimony.") (citation omitted).

II.     Mr. Duda

It is undisputed that Pacesetter did not personally serve a summons, or the TAC itself, on Mr. Duda after the TAC was filed in December 2019.  It is also undisputed that a copy of the TAC was automatically transmitted, via the CM/ECF system, to the attorneys who filed the motion to dismiss the FAC on Mr. Duda's behalf in February 2019 (both because those attorneys continue to represent other defendants in this case and because those attorneys never formally withdrew from their representation of Mr. Duda after his motion to dismiss the FAC was granted).  The dispute thus boils down to whether electronic service of the TAC on the attorneys representing Mr. Duda was appropriate.  Mr. Duda argues it was not.  (Doc. 150; Doc. 158 at 4-5 ["Counsel only represented [Mr.] Duda until he was dismissed and thereafter he was not a party and required service of process to bring him into the case."].)  Pacesetter argues that, because Mr. Duda previously appeared in this action and was represented by counsel, electronic service on his attorneys was not only permissible but required by local rule.  (Doc. 153.)

At bottom, the parties' dispute is over the applicability of Rules 4 and 5 of the

Federal Rule of Civil Procedure.  "Rule 4 . . . governs the commencement of an action and the service of process.  Rule 5, in turn, governs service of every pleading subsequent to the original complaint, unless the court orders otherwise . . . ."  *Emp. Painters' Trust v. Ethan Enters., Inc.*, 480 F.3d 993, 999 (9th Cir. 2007) (citation omitted).  Rule 4 requires that a summons be issued to a party, doesn't allow for electronic service, and typically requires that the party be served personally, rather than through an attorney.  *See generally* Fed. R. Civ. Proc. 4.   Service under Rule 5, in contrast, can be accomplished through "various means," some of which are "relatively informal."  *Employee Painters' Trust*, 480 F.3d at 999-1000 (citation omitted).  One of those enumerated means is "sending it to a registered user by filing it with the court's electronic-filing system."  *See* Fed. R. Civ. Proc. 5(b)(2)(E).

In general, amended complaints fall within the class of documents that may be served in the means prescribed by Rule 5.  *Employee Painters' Trust*, 480 F.3d at 999.  *See also* 4B Wright & Miller, Fed. Prac. & Proc. § 1143 (2020).  But this general rule is subject to some exceptions.  *Employee Painters' Trust*, 480 F.3d at 999 ("[T]here are circumstances in which amended complaints must be served pursuant to Rule 4.").  One such exception is when an amended complaint seeks to add a party.  When that occurs, the amended complaint must be served on the new party pursuant to Rule 4.  *See, e.g., Ransom v. Brennan*, 437 F.2d 513, 518 (5th Cir. 1971) ("[W]hen an amended complaint, normally served in conformity with Rule 5, asserts an additional claim against a party who has not appeared in the original suit, the pleading must be served in accordance with Rule 4 . . . .");  *Kaden v. Chamisa Arts, Inc.*, 2016 WL 7616692, *3 (W.D. Tex. 2016) ("[I]f an amended complaint names a new defendant, the plaintiff must serve that defendant with the summons and amended complaint in compliance with Rule 4.");  4B Wright & Miller, Fed. Prac. & Proc. § 1146 n.3.  *Cf. Brait Builders Corp. v. Massachusetts*, 644 F.3d 5, 9-10 (1st Cir. 2007) (indicating that Rule 4 applies when "an amended complaint . . . adds defendants" to an action);  *Bolden v. City of Topeka*, 441 F.3d 1129, 1148-49 (10th Cir. 2006) ("[T]he 120-day period provided by Rule 4(m) is not restarted by filing an amended complaint except as to those defendants newly added in the amended complaint.").  The

question, then, is whether Mr. Duda was, upon the filing of the TAC, a new party (who therefore had to be served pursuant to Rule 4) or a party who had already appeared (such that service under Rule 5 would be proper).

The Court concludes that Mr. Duda was a new party requiring service under Rule 4. This is because "Rule 4 is jurisdictionally rooted." *Ransom*, 437 F.3d at 517. Service under Rule 4 is required "in order that the court obtain personal jurisdiction over the new party." *Id.* at 518. Thus, when (as here) the purpose of an amended complaint is to gain jurisdiction over a defendant, service under Rule 4 is required. *Id. Compare Employee Painters' Trust*, 480 F.3d at 999 (amended complaint was properly served via Rule 5 because "the court had already exercised personal jurisdiction over" the defendants). Because the Court had not previously exercised jurisdiction over Mr. Duda—indeed, Mr. Duda was dismissed from the FAC due to a lack of personal jurisdiction (Doc. 57)— Pacesetter was required to comply with the requirements of Rule 4. *Cf. Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1293 (Fed. Cir. 2012) ("Rule 4 is the starting point for any personal jurisdiction analysis in federal court.") (citation omitted); *Point Landing, Inc. v. Omni Capital Int'l, Ltd.*, 795 F.2d 415, 424 (5th Cir. 1986) ("Rule 4 therefore has been characterized as a 'jurisdictional provision.'"); Wright & Miller § 1146 ("[I]f the pleading seeks to add a new party—for example . . . a third person *over whom the district court has not previously acquired personal jurisdiction*—the pleading also must be served on the new party to the action together with a summons pursuant to the procedures in Rule 4.") (emphasis added).

The Court also notes that, had Mr. Duda been the sole defendant named in the FAC, this case would have terminated upon his dismissal. Thus, subsequent attempts to bring the claims at issue here would have required the refiling of the case, which would have required service in compliance with Rule 4.

Pacesetter makes no attempt to prove it complied with Rule 4. (Doc. 153.) No post-TAC certificate of service for Mr. Duda was filed and Pacesetter doesn't claim it otherwise met Rule 4's requirements.

1    Although Pacesetter's failure to comply with Rule 4(c), which requires service of a

2    summons in addition to the complaint, is enough to grant Mr. Duda's motion, that motion

3    could also be granted because Pacesetter served the TAC on Mr. Duda's attorneys, rather

4    than on Mr. Duda personally.  Rule 4(e) provides plaintiffs "with a menu of options for

5    serving the summons and the complaint."  Gensler, Rule 4 at 48.  Part of that menu is

6    fixed—the options outlined in Rule 4(e)(2)—and part of that menu varies—state law

7    methods of service incorporated by Rule 4(e)(1).  *Id.*  Under both Arizona and federal law,

8    a plaintiff may serve an "authorized agent" of the defendant.  Fed. R. Civ. Proc. 4(e)(2)(C);

9    Ariz. R. Civ. Proc. 4.1(c)(3). *See also* Ariz. R. Civ. Proc. 4.2(b)(1) (incorporating Ariz. R.

10   Civ. Proc. 4.1.(c)(3) into the acceptable forms of service of process on a defendant outside

11   of Arizona).  However, under both, the mere fact that a party is represented by or has

12   retained counsel does not make counsel an authorized agent for purposes of service of

13   process. *Kline v. Kline*, 212 P.3d 902, 907-08 (Ariz. Ct. App. 2009) ("Even current counsel

14   of record are not presumed authorized to accept service of process before a general

15   appearance . . . ."); *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1248-49 & n.5

16   (9th Cir. 1987) ("Arizona and federal law are identical on this point . . . .").  *See also*

17   Gensler, Rule 4 at 52 ("Service on the defendant's attorney is effective under Rule 4(e)(2)

18   only if the defendant has specifically appointed or authorized the attorney as its agent for

19   service of process.").

20   At bottom, Pacesetter was required to serve process on Mr. Duda pursuant to Rule

21   4.  Pacesetter failed to do so.  Accordingly, Mr. Duda's Rule 12(b)(5) motion to dismiss

22   for insufficient service of process will be granted.

23   III.    A. Duda & Sons and Duda Foods

24   The corporate entities' motion to dismiss raises some added wrinkles.  The first is

25   that they became parties to this litigation as of the SAC, rather than as of the TAC.  The

26   second is that, as discussed above, they seemed to advance arguments in opposition to the

27   filing of the SAC despite not being parties at the time.  The third is that Pacesetter contends

28   the entities previously made "general appearances" sufficient to bring any future pleadings

1    under the auspices of Rule 5.  (Doc. 153 at 6-7.)

2         These considerations do not compel a different conclusion.  As noted, before the

3    filing of the SAC, neither corporate entity was a party to this action.[3]  (Doc. 84 at 3-4.)

4    They both became parties when the SAC was filed.  As discussed above, an amended

5    complaint that adds a party must be served on the new party pursuant to Rule 4.  Thus,

6    once the SAC was filed, the corporate entities were entitled to service of process under

7    Rule 4.

8         A plaintiff becomes entitled to serve papers under Rule 5 only after a defendant has

9    been properly served under Rule 4.  *Daley v. ALIA*, 105 F.R.D. 87, 89 n.2 (E.D.N.Y. 1985)

10   ("Rule 5 . . . allows amended pleadings to be served by first-class mail once original and

11   proper service of process has been made.); Wright & Miller § 1146 n.3.  *See also Kaden*,

12   2016 WL 7616692 at *3 ("[F]or any defendants who the plaintiff has not yet properly

13   served, she must serve them with the summons, complaint, and amended complaint.")

14   (internal quotation marks and citation omitted).  This requires that the first complaint

15   naming a defendant be served under Rule 4.  *Employee Painters' Trust*, 480 F.3d at 995

16   ("We therefore take this opportunity to clarify that an amended complaint can often be

17   served in the same manner as any other pleading *if the original complaint is properly served*

18   and the defendants appeared in the first instance.") (emphasis added).  Here, Pacesetter has

19   provided no indication that the corporate entities were properly served with the SAC,

20   despite the fact that they specifically raised this point in their motion.  (Doc. 150 at 3 ["The

21   Duda entities were named in the [SAC] but were not served."].)  As a result, Pacesetter was

22   unable to resort to Rule 5 methods of service for any subsequent paper, including the TAC.

23        The "appearances" to which Pacesetter refers do not change the analysis.  Pacesetter

24   points to two instances of A. Duda & Sons appearing in this case—the motion to dismiss

25   "Duda & Sons LLC" (Doc. 21) and counsel's telephonic appearance during a discovery

26   ───────────────
     [3]    Although the Court characterized A. Duda & Sons as being previously dismissed
27   (Doc. 84 at 3-4), this is a bit of a misnomer. The Court previously dismissed "Duda & Sons
     LLC" because that entity didn't exist. (Doc. 57.) The SAC represented the first time A.
28   Duda & Sons was properly brought into this litigation, and as such, it is more accurate to
     characterize A. Duda & Sons as a "new defendant" at the time of the SAC, the same status
     as Duda Foods at the time. (Doc. 84 at 3-4.)

dispute hearing (Doc. 92). But in the first, A. Duda & Sons wasn't yet a party (and so stated in its motion). Moreover, even if that motion did constitute an appearance, its effect on this case would have been nullified once the motion to dismiss was granted (in the same way that Mr. Duda's appearance was). As for the second alleged appearance, counsel strenuously disputes that he was appearing for A. Duda & Sons at the telephonic hearing and his involvement appears rather scant—counsel spoke once and did nothing more than identify himself. (Doc. 92 at 3:11.) Further, that hearing was on a discovery dispute that arose (Doc. 83) and was resolved (Doc. 86) before the SAC had been filed (Doc. 87)—in other words, the matter at issue arose before A. Duda & Sons was a party.

In any event, "federal courts have firmly established that a court appearance does not waive an otherwise valid Rule 12(b)(5) defense." *Cody v. Comput. Scis. Corp.*, 246 F.R.D. 22, 26 (D.D.C. 2007). *See also Finicum v. United States*, 2019 WL 7756341, *3 (D. Ore. 2019) ("Astarita . . . did not waive the [Rule 12(b)(5)] defense by entering a notice of appearance before filing the motion."); *First State Ins. Co. v. Hill Bros. Chem. Co.*, 2011 WL 13225114, *2 (C.D. Cal. 2011) ("The Remaining Counterclaim Defendants did not waive challenges to HBCC's service of process by 'entering an appearance.'"). Because Pacesetter failed to properly serve the SAC, subsequent service of the TAC via Rule 5 methods was improper and A. Duda & Sons retained the ability to file a motion to dismiss under Rule 12(b)(5) regardless of an appearance.

Finally, the corporate entities' course of conduct in this litigation doesn't indicate they've forfeited their opportunity to complain about insufficient service of process. Forfeiture of a Rule 12(b)(5) defense requires that it be omitted from a motion or a responsive pleading. Fed. R. Civ. Proc. 12(h)(1)(B); *Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107-08 (9th Cir. 2000). Since becoming defendants, neither entity has filed a motion or an answer. The closest they've come is the arguments that were made (by Bassetti) in opposition to the filing of the SAC, but even if that is generously deemed a responsive pleading, it couldn't have forfeited an insufficient-service-of-process defense because the entities were not yet defendants—no service was due.

- 11 -

1    In sum, when A. Duda & Sons and Duda Foods were added as defendants in this

2   case (via the SAC), service of process should have been executed in accordance with Rule

3   4.  It was not.  Pacesetter's failure to comply with Rule 4 means that subsequent service of

4   the TAC pursuant to Rule 5 was improper.

5   IV.   <u>Remedy</u>

6    Defendants argue that the proper remedy for Pacesetter's service failure is to

7   "'dismiss' the Third Amended Complaint . . . and the claims against them."  (Doc. 150 at

8   1.)  Pacesetter, in turn, doesn't dispute that dismissal is the appropriate remedy in the event

9   of a service failure—it simply defends the sufficiency of its service efforts.  (Doc. 153.)

10    Some courts have suggested that "[w]hen granting a Rule 12(b)(5) motion, federal

11   courts have broad discretion to dismiss the action or to retain the case but to quash the

12   service that has been made on the defendant" and give the plaintiff another opportunity to

13   complete service.  *Moletech Glob. Hong Kong Ltd. v. Pojery Trading Co.*, 2009 WL

14   506873, *3 (N.D. Cal. 2009).  *See generally Stevens v. Sec. Pac. Nat'l Bank*, 538 F.2d 1387,

15   1389 (9th Cir. 1976) ("The choice between dismissal and quashing service of process is in

16   the district court's discretion.").  *Cf.* Fed. R. Civ. P. 4(m) ("If a defendant is not served

17   within 90 days after the complaint is filed, the court . . . on motion . . . must dismiss the

18   action without prejudice against that defendant or order that service be made within a

19   specified time.").   Even if the Court has discretion to choose between remedies, it

20   concludes that dismissal is the appropriate remedy here.  Pacesetter continues to take a

21   shotgun approach to this litigation while disregarding key procedural steps.  This has

22   caused its adversaries to expend considerable time and resources in fights over sideshow

23   issues not connected to the merits of the case.  Additionally, the Court has serious concerns

24   about whether Mr. Duda is even subject to personal jurisdiction, given that the TAC

25   appears to repeat, in near verbatim fashion, the allegations against Mr. Duda that appeared

26   in the FAC (which the Court previously deemed insufficient).  Finally, the fact this action

27   has now been pending for more than 18 months underscores why it would be improper to

28   afford yet another opportunity to Pacesetter to complete service.  Only one month remains

- 12 -

until the discovery deadline (which has already been extended) will expire.  (Doc. 127.)  It would be tremendously disruptive at this juncture to allow Pacesetter to essentially start from scratch with Defendants.

Accordingly, **IT IS ORDERED** that Defendants' motion to dismiss for insufficient service of process (Doc. 150) is **granted**.  The claims against Defendants in the TAC are dismissed without prejudice and Defendants are dismissed from this action.

Dated this 30th day of July, 2020.

Dominic W. Lanza
United States District Judge