**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pacesetter Consulting LLC,<br><br>Plaintiff,<br><br>v.<br><br>Herbert A. Kapreilian, et al.,<br><br>Defendants. | No. CV-19-00388-PHX-DWL<br><br>**ORDER** |

This case has involved extensive litigation over whether Edward Daniel Duda, Jr. ("Duda") is a proper defendant. (*See generally* Docs. 160, 224.) Now pending before the Court is the latest motion related to this topic: Plaintiff Pacesetter Consulting LLC's ("Pacesetter") motion for sanctions against Duda and "those who aided him" for filing an allegedly false declaration in early 2019 in support of Duda's successful motion to dismiss for lack of personal jurisdiction. (Doc. 247.) For the following reasons, the motion is denied.

**BACKGROUND**

Pacesetter filed this action against a variety of defendants. Among them were, at one point, Duda, Duda Farm Fresh Foods, Inc. ("Duda Foods"), and A. Duda & Sons, Inc. ("A. Duda & Sons") (collectively, the "Duda Defendants"). The First Amended Complaint ("FAC"), filed in February 2019, contained allegations directed at an entity called "Duda & Sons LLC" but did not specifically direct any claims against that entity or Duda himself, instead asserting claims against all defendants. (Doc. 7 ¶¶ 80-82; *id.* at 19-22, 24-25, 27-

28.)

In February 2019, Duda moved to dismiss the claims against him in the FAC for lack of personal jurisdiction. (Doc. 22.) This motion was accompanied by a declaration (the "Arizona Declaration") in which Duda avowed, among other things, that he "did not have any communications with the other defendants in this action concerning the subjects of this action." (Doc. 22-1 ¶ 7.) Although this declaration was originally submitted without Duda's signature, Duda later submitted a signed version. (Doc. 28-1.)

In February 2019, A. Duda & Sons filed a separate motion to dismiss, arguing that Duda & Sons LLC does not exist. (Doc. 21.)

On April 15, 2019, the Court orally granted both dismissal motions. (Doc. 57.) As for Duda, the Court held that personal jurisdiction was lacking because "the complaint [did] not contain any factual allegations specifically targeted at . . . what Mr. Duda did in Arizona. It just [had] a bunch of allegations about what an entity called 'Duda' did, which . . . [isn't] sufficient to hale an individual officer into court based on [a] personal jurisdiction theory." (Doc. 160 at 2.) During the hearing, Pacesetter admitted its error as to Duda & Sons LLC but orally requested leave to retroactively change the name of the defendant sued in the FAC from "Duda & Sons, LLC" to "A. Duda & Sons, Inc.," which the Court rejected "due to its untimely and informal nature." (*Id.* at 3.)

On December 23, 2019, Pacesetter filed a third amended complaint ("TAC") in which Duda was again named as a defendant. (Doc. 129.)

On March 20, 2020, Pacesetter filed a "motion for partial summary judgment" against Duda. (Doc. 139.) This motion alleged that Duda had violated several state and federal perjury statutes when he claimed, in the Arizona Declaration, to have no knowledge of the events underlying this case. (*Id.* at 1-6.) As a sanction for these alleged violations, Pacesetter asked that "the Court reinstate Duda fully as a Defendant in this litigation and to impose on him" several sanctions, including default judgment and attorneys' fees. (*Id.* at 15-16.)

On March 24, 2020, the Court issued a text-only docket entry addressing

Pacesetter's motion. (Doc. 140.) Although the entry noted that "allegations of perjury always must be taken seriously," the Court was concerned that Pacesetter had moved for "partial summary judgment" on "claims . . . that do not appear in the complaint" and thus questioned the "propriety of the procedural vehicle Plaintiff has chosen." (*Id.*) To "avoid potentially unnecessary motions (and sanctions) practice," the Court ordered defendants to refrain from filing a response while the Court more fully grappled with the motion. (*Id.*)

On April 1, 2020, rather than wait for further direction from the Court, Pacesetter filed a "motion for telephonic hearing and for Rule 60 relief." (Doc. 141.) In it, Pacesetter sought "a telephonic hearing to discuss if this Court believes that a hearing possibly leading to civil remedies is proper in a situation where a party who has made a so-called limited or special appearance arguably commits perjury to obtain dismissal from a civil lawsuit." (*Id.* at 3.) In the alternative, Pacesetter sought Rule 60 relief to reinstate Duda as a defendant. (*Id.* at 4-8.)

Later that day, the Court issued another order. (Doc. 142.) The Court noted that Pacesetter's motion for Rule 60 relief "appear[ed] to be an attempt to incorporate by reference the arguments contained in Plaintiff's earlier 'summary judgment' motion (Doc. 139) and reframe them as a request for relief under Rule 60," and the Court "construe[d] it as such." (*Id.*) Accordingly, the Court denied the earlier motion as moot and gave Duda 14 days to file a response to the latter motion. (*Id.*)

On June 24, 2020, while Pacesetter's Rule 60 motion was pending, Duda filed a motion to dismiss the TAC for insufficient service of process. (Doc. 150.)

On July 2, 2020, after full briefing, the Court denied Pacesetter's Rule 60 motion as moot. (Doc. 152.) Because the allegations against Duda in the FAC were nearly identical to those in the TAC, it was "abundantly clear that Mr. Duda [was] now in the same position in this case as he was before he was dismissed from the FAC." (*Id.* at 7-8.) Thus, there was "no need for the Court to grant Rule 60 relief to reinstate Mr. Duda"—after the TAC was filed, Duda was, once again, part of this case. (*Id.* at 8.)

On July 30, 2020, the Court granted Duda's motion to dismiss for insufficient

service of process. (Doc. 160.)  The Court concluded:

> [D]ismissal is the appropriate remedy here.  Pacesetter continues to take a shotgun approach to this litigation while disregarding key procedural steps.  This has caused its adversaries to expend considerable time and resources in fights over sideshow issues not connected to the merits of the case.  Additionally, the Court has serious concerns about whether Mr. Duda is even subject to personal jurisdiction, given that the TAC appears to repeat, in near verbatim fashion, the allegations against Mr. Duda that appeared in the FAC (which the Court previously deemed insufficient).  Finally, the fact this action has now been pending for more than 18 months underscores why it would be improper to afford yet another opportunity to Pacesetter to complete service.  Only one month remains until the discovery deadline (which has already been extended) will expire.  It would be tremendously disruptive at this juncture to allow Pacesetter to essentially start from scratch with Defendants.

(*Id.* at 12-13.)

On August 10, 2020, Pacesetter filed a notice stating that it had served deposition subpoenas on a number of non-parties, including Duda.  (Doc. 161.)

On August 27, 2020, Pacesetter filed a motion for leave to conduct more than 10 depositions.  (Doc. 165.)  Among other things, Pacesetter argued that such leave was necessary because Duda and two other members of the Duda family "have vital information about the remaining defendants in this matter."  (*Id.* at 2.)

On August 31, 2020, the Court issued an order denying Pacesetter's motion for leave to conduct more than 10 depositions.  (Doc. 170.)

On or about September 2, 2020, Duda filed a motion in the United States District Court for the Middle District of Florida (where he resides) to quash the deposition subpoena that Pacesetter had served on him.  (Doc. 217-1 at 37-45.)  A few days later, Duda filed a supporting declaration (the "Florida Declaration").  (*Id.* at 23-25.)  In this declaration, Duda avowed that he "had no involvement in the sale of the limited partnership interests to the assignor of [Pacesetter], which is the subject of the Plaintiff's claims in the lawsuit . . . pending in the United States District Court for the District of Arizona."  (*Id.* ¶ 4.)

On September 29, 2020, a magistrate judge in the Middle District of Florida denied

1 | Duda's motion to quash. (Doc. 178 at 5, 12-13.)

On October 7, 2020, Pacesetter filed a motion to extend the deadline for fact discovery, which was October 15, 2020, so it could complete Duda's deposition. (Doc. 178.) This motion was granted. (Doc. 179.)

On November 20, 2020, Duda's deposition took place in Florida. (Doc. 217-1 at 50-75.)

On December 7, 2020, Pacesetter filed a "motion for remedies" concerning Duda. (Doc. 204.) In it, Pacesetter argued that Duda had engaged in misconduct during his Florida deposition by refusing to answer certain questions about whether (and under what circumstances) he signed the Arizona and Florida Declarations. (*Id.* at 6-13.) Pacesetter requested, as a "suitable remedy for [Duda's] intentional wrongdoing as a deponent," that the Court reinstate Duda as a defendant in the TAC. (*Id.* at 13.)

On January 6, 2021, the Court denied Pacesetter's "motion for remedies" because, "[e]ven assuming that Duda acted improperly . . . the proper remedy would not be to reinstate Duda as a party defendant" but instead would "be to reopen Duda's deposition (at Duda's expense) so he may answer the disputed questions," although Pacesetter had "not asked for that targeted remedy." (Doc. 224 at 6.) The Court concluded that, "if the Middle District of Florida determine[d] that the question [of whether to reopen Duda's deposition] [was] properly before it and then resolve[d] the question in Pacesetter's favor," the Court would "deem the final portion of Duda's deposition to be timely under the scheduling order in this case." (*Id.*)

On March 3, 2021, Pacesetter filed a notice that the Middle District of Florida had authorized Pacesetter to reopen Duda's deposition. (Doc. 236.)

On April 15, 2021, the parties filed a joint statement of their dispute as to whether a protective order should issue to limit, among other things, the lines of questioning to which Duda could be subjected during his reopened deposition. (Doc. 239.) Pacesetter objected to the Court's jurisdiction over the reopened deposition, which was to be taken in Florida. (*Id.*)

On April 16, 2021, the Court held a telephonic hearing to resolve the parties' dispute. (Doc. 243.) The Court held that it "possesse[d] jurisdiction and authority to grant the requested relief . . . because the previous dispute [in the Middle District of Florida] was presented to [the presiding judge] under Rule 45 . . . whereas the current dispute [was] being presented by way of a request for protective order under Rule 26(c)." (*Id.* at 1.) The Court granted Defendants' request for a protective order in part, limiting the scope of the reopened deposition. (*Id.*)

On April 23, 2021, Pacesetter deposed Duda for two more hours. (Doc. 244 at 110-95 [transcript].)

On May 12, 2021, Pacesetter filed the motion now pending before the Court, which seeks Rule 11 sanctions against Duda, "against the companies in which he was a high-level officer until just recently," and "against the lawyers who prepared the false, misleading, and incomplete Arizona Declaration, namely, Arizona Attorney O'Daniel and Florida Attorney Carl." (Doc. 247.)

On May 21, 2021, Defendant Mark Bassetti ("Bassetti") filed a "request for briefing schedule" concerning Pacesetter's sanctions motion. (Doc. 248.)

On May 24, 2021, Pacesetter filed a response to Bassetti's filing. (Doc. 249.)

That same day, the Court granted Bassetti's request, which it construed as a motion for extension of time. (Doc. 250.) Accordingly, the Court permitted "any individual, company, or attorney" to respond to the sanctions motion by June 2, 2021. (*Id.*)

On June 2, 2021, Bassetti, Duda, A. Duda & Sons, Duda Foods, and Attorneys Carl ("Carl") and O'Daniel ("O'Daniel") filed their response to Pacesetter's motion (collectively, the "Sanctions Defendants"). (Doc. 253.)

On June 9, 2021, Pacesetter filed a reply (Doc. 255).[1]

…

…

---

[1] The parties requested oral argument (Docs. 247, 253) but these requests are denied because the issues are fully briefed and oral argument would not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f).

**DISCUSSION**

I.     <u>Legal Standard</u>

Federal Rule of Civil Procedure 11(b) provides, in relevant part, that, "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the "factual contentions have evidentiary support." Rule 11 does "not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." Fed. R. Civ. P. 11(d). "Rule 11 . . . imposes an objective standard of reasonable inquiry which does not mandate a finding of bad faith." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

II.    <u>The Parties' Arguments</u>

Pacesetter argues that Duda made false, incomplete, and misleading statements of fact in the Arizona Declaration, thus rendering him and his attorneys liable for sanctions under Rule 11 for filing a paper "with factual contentions lacking evidentiary support." (Doc. 247.) Pacesetter argues that "[s]uitable sanctions" for the alleged misconduct include (1) reinstating the Duda Defendants as defendants; (2) requiring them to "pay all costs and attorney's fees incurred in deposing [Duda] in Florida"; and (3) requiring A. Duda & Sons and Duda Foods to "provide full access to Pacesetter to all of the many documents about the California mandarin-orange operation that . . . Duda admitted existed in the Florida corporate office." (*Id.* at 3.)

The Sanctions Defendants make the following arguments in response: *first*, the Court lacks personal jurisdiction over the Duda Defendants and Carl, such that it can't assess Rule 11 sanctions against them (Doc. 253 at 6-7); *second*, the sanctions motion wasn't properly served under Rule 11(c)(2) on the Duda Defendants or Carl because the motion was served by email and was served fewer than 21 days before the motion was filed

(*id.* at 7-8); *third*, reinstatement of defendants is not a proper sanction under Rule 11 (*id.* at 8-9); *fourth*, sanctions are not permitted against Carl, A. Duda & Sons, or Duda Foods because Carl has not appeared in this action and the two entities were not parties when the declarations were filed (*id.* at 9); *fifth*, the declarations were (and are) true and accurate (*id.* at 9-13); *sixth*, O'Daniel is not subject to sanctions for the alleged misconduct because the "[Florida] Declaration was not filed in this Court by [O'Daniel]" and because nothing he filed lacked evidentiary support or an otherwise proper basis (*id.* at 13-14); *seventh*, Pacesetter's allegations of discovery misconduct should be rejected because Pacesetter never filed a motion to compel before the close of discovery and because Rule 11 is inapplicable to discovery papers (*id.* at 14); and *eighth*, Pacesetter's cited authority does not warrant an award of sanctions here (*id.* at 14-17).

Pacesetter argues in reply: *first*, the Court has jurisdiction over Duda, Carl, and O'Daniel because Duda signed and the attorneys prepared (and, in the case of O'Daniel, filed) the two declarations in service of A. Duda & Sons and Duda Foods (Doc. 255 at 2-3); *second*, it properly served the Sanctions Defendants with the Rule 11 motion because it served O'Daniel, who was and is acting as their counsel for purposes of the motion (*id.* at 3-4); *third*, its Rule 11 motion "proved" the declarations' falsity (*id.* at 4); *fourth*, the Florida Declaration was intended to "prevent [Duda's] deposition and to keep Pacesetter from discovering facts to prove that the Arizona district-court declaration was false and was part of an effort to avoid the imposition of any direct or vicarious liability against [Duda] and his organizations" (*id.*); *fifth*, reinstatement is a proper remedy because, "if the sanctions motion succeeds, [Duda, A. Duda & Sons, and Duda Foods] should be back in the case as a reasonable and proportionate sanction for [Duda's] improper declarations" (*id.* at 5); *sixth*, its "basis for seeking sanctions did not become apparent until [Pacesetter was] able to have a real, in-depth deposition of [Duda]" (*id.*); and *seventh*, the motion "arises from improper declarations," not any "discovery matter" (*id.*).

…

…

III. Analysis

Pacesetter argues that the Rule 11 violation arises from "filing a paper [the Arizona Declaration] with factual contentions lacking evidentiary support." (Doc. 247 at 2.) Accordingly, the Court need only address that conduct. Fed. R. Civ. P. 11(c)(2) (requiring that a motion for sanctions "describe the specific conduct that allegedly violates Rule 11(b)"); *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 310 (2d Cir. 2014) ("Only conduct explicitly referred to in the instrument providing notice is sanctionable.") (internal quotation marks omitted).[2] For the reasons explained below, Pacesetter has not established that the Arizona Declaration contained factual contentions lacking evidentiary support.

A. **Paragraph 1**

Paragraph 1 of the Arizona Declaration states: "My name is Daniel Duda. I make this declaration based on my own knowledge and information and upon information obtained from the business records of A. Duda & Sons, Inc." (Doc. 28-1 ¶ 1.)

Pacesetter first takes issue with the fact that Duda did not personally draft the Arizona Declaration. (Doc. 247 at 5.) When asked during his deposition who prepared the Arizona Declaration, Duda stated that it was "internal legal counsel, Amanda Carl, in coordination with David O'Daniel." (*Id.* at 119, line 25, to 120, line 1.)

The Court disagrees with Pacesetter that this was some sort of smoking-gun admission. The Arizona Declaration doesn't state that Duda *drafted* it. It states: "I *make* this declaration." In the Court's view, the most logical interpretation of "make" in the

---

[2] It is unclear whether Pacesetter is also seeking Rule 11 sanctions based on alleged false statements that appeared in the Florida Declaration. (*Compare* Doc. 247 at 13 ["Because the false, misleading, and inaccurate Florida Declaration was filed in the . . . Middle District of Florida . . . we believe that we will need to file a sanctions motion concerning the Florida Declaration with that Court . . . and plan on doing so as soon as time allows."], *with* Doc. 255 at 8-9 [arguing O'Daniel engaged in sanctionable conduct for his participation in "preparing the two declarations he filed in the Arizona and Florida district courts."].) To the extent Pacesetter is seeking sanctions based on court documents filed in Florida, the Court rejects that request. *See, e.g.*, *Barr Labs., Inc. v. Abbott Labs.*, 867 F.2d 743, 748 (2d Cir. 1989) ("[A]pplications for Rule 11 sanctions must be made in the court where the offending papers are filed . . . . It was therefore improper for Abbott to seek sanctions in the Southern District of New York for claimed violations of Rule 11 committed in the District of New Jersey."), *overruled on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990).

context of a declaration is "[t]o legally perform, as by executing, signing, or delivering (a document)." *Make*, Black's Law Dictionary (11th ed. 2019). This isn't the same thing as saying Duda personally drafted the Arizona Declaration.

Pacesetter next argues that because Duda responded "It was with Miss Carl" when asked if "someone just told him to sign the Arizona Declaration and 'don't worry about what it means'" (Doc. 247 at 5-6), the inference is that "Attorney Carl told [Duda] just to sign the Arizona declaration and don't worry about what it meant" (Doc. 255 at 7). But Duda's response must be understood in light of his attorney's objection to the preceding question on attorney-client privilege grounds:

> Q. Did someone just tell you to sign this and don't worry about what it means? Exhibit 5 [the Arizona Declaration] I mean.
>
> Obj.: That is the same objection based upon attorney-client privilege because you're asking what he was told. If he can answer that and not discuss what the discussion was with Miss Carl, then if it was someone else other than Miss Carl, then he can answer the question.
>
> A. It was Miss Carl.

(Doc. 247 at 122-23.) In other words, Duda didn't testify that someone set the Arizona Declaration in front of him and told him to sign it without looking at it. Indeed, Duda clarified during other portions of his deposition that he read, and Carl explained to him, the Arizona Declaration before he signed it. (*Id.* at 120, lines 13-15 ["Q. Okay. Let's shift back to Exhibit No. 5. Did you actually read [the Arizona Declaration] before you signed it? A. Yes."]; *id.* at 120, line 19, to 121, line 1 ["Q. Now, as far as [the Arizona Declaration], was that presented to you for your signature with no explanation about what it meant? A. No. Q. Somebody explained it to you? A. Yes. Q. Who explained it to you? A. Amanda Carl, our internal corporate attorney."].)

Pacesetter next argues that Duda "admitted he had no other understanding about the Arizona Declaration other than it was going to be used in court proceedings" (Doc. 247 at 6), the inference being that this contradicted Duda's avowal that "the declaration was based

- 10 -

on his own knowledge and on information obtained from business records" (Doc. 255 at 7). Duda's deposition testimony again doesn't support Pacesetter's argument. When asked what his "understanding about what [the Arizona Declaration] actually meant," Duda responded that "[i]t was a legal document that would be used in court proceedings." (Doc. 247 at 123, lines 22-25.) A further question clarified: "And what was your understanding of what it was you were signing?" to which Duda responded "It's a declaration that was going to be used in court proceedings. That was my understanding." (*Id.* at 124, lines 8-11.) And indeed, when asked if he understood "what it was when [he was] signing," Duda responded "Yes, after discussions with Amanda Carl." (*Id.*, lines 4-7.) Testimony about what Duda understood the Arizona Declaration was going to be used for is a far cry from an admission that the Arizona Declaration wasn't based on Duda's personal knowledge or on information obtained from business records. Pacesetter's argument is without merit.

Last, Pacesetter argues that Duda "admitted at his deposition that he had no access to any of the legal documents on which the Arizona Declaration was based" and that he "did no independent investigation about it—and read no records or documents related to it," the inference being that these supposed admissions contradicted Duda's avowal that the Arizona Declaration was based on his personal knowledge and based on information from business records. (*Id.* at 6.) The Sanctions Defendants respond that the "business records include the FAC as discussed with him by in-house counsel." (Doc. 253 at 11.)

The deposition testimony again does not support Pacesetter's assertions:

> Q. Before signing [the Arizona Declaration], did you do any sort of investigation into what the declaration was actually about?
>
> A. Again, those were conversations with Amanda Carl [in] which we discussed these.
>
> Q. But did you yourself do any sort of independent investigation into [the Arizona Declaration]?
>
> A. No, I did not. I worked with our legal counsel, Amanda Carl.

(Doc. 247 at 124, line 23, to 125, line 6.) In short, Duda said that he didn't do any

independent investigation into the declaration *apart from what he discussed with his attorney*. This does not conflict with Duda's statement that the declaration was based on his own personal knowledge *and* on information obtained from business records. Whether Duda had physical access to the business records is immaterial, because Carl had access. (*Id.* at 126, lines 4-5.) Duda did not claim the declaration was based solely on his personal knowledge of the information from the business records, and he was entitled to rely on his discussions with counsel concerning the information from the business records.

B. **Paragraph 2**

Paragraph 2 of the Arizona Declaration states: "I am a resident of Florida. I do not own property in Arizona. I do not own a business in Arizona. I have no[] employees in Arizona, and I have no offices in Arizona." (Doc. 28-1 ¶ 2.)

Pacesetter argues that Duda's declaration is "shading the truth" because Duda holds a small ownership interest in A. Duda & Sons, which "wholly owns" Duda Foods, which in turn has property, employees, and an office in Arizona. (Doc. 247 at 11-12.) According to Pacesetter, this means "Duda indirectly owned property and a business in Yuma, and indirectly had employees and an office in Arizona." (*Id.* at 12.) The Sanctions Defendants respond that "[o]wning shares in [A. Duda & Sons] does not make [Duda's] statements about his personal ownership or action false." (Doc. 253 at 11.)

Pacesetter's argument is again without merit. Duda does not, by virtue of his status as a shareholder, personally own assets held by A. Duda & Sons (or by subsidiaries of A. Duda & Sons such as Duda Foods). "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities. An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets and, as a result, does not own subsidiary corporations in which the corporation holds an interest." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474-75 (2003) (citations omitted). *See also United States v. Bennett*, 621 F.3d 1131, 1136 (9th Cir. 2010) ("While the shareholder has a right to share in corporate dividends, 'he does not own the corporate property.' This principle was followed by the states as corporate law developed.") (quoting *R.I. Hosp. Tr. Co. v.*

*Doughton*, 270 U.S. 69, 81 (1926)). It is not "shading the truth" to make an accurate statement supported by century-old tenets of corporate law.

C. **Paragraph 4**

Paragraph 4 of the Arizona Declaration states: "In connection with the claims by Plaintiff in this litigation, I was not involved in the transactions that are the subject of the litigation." (Doc. 28-1 ¶ 4.)

Pacesetter argues that, in his deposition, Duda "admitted he had no knowledge what transactions were the subject of the litigation," so it was "impossible for him to say that he was not involved in the transactions, when he did not even know what those transactions were in the first place." (Doc. 247 at 8, internal quotation marks omitted.) Pacesetter further argues that it was "impossible for [Duda] to make an honest declaration about the claims in this case" because he "did not recall what the claims were that [Pacesetter] had made in this litigation." (*Id.* at 8, internal quotation marks omitted.)

The deposition testimony cited by Pacesetter is an answer taken out of context. The full line of questioning is reproduced below:

> Q. Okay. Before signing the declaration, how did you determine what the claims made by plaintiff were in the litigation?
>
> A. That's with discussions with Amanda Carl, our Duda internal counsel.
>
> Q. Please describe for us the claims that were made by plaintiff in this litigation.
>
> A. I don't recall.
>
> Q. Before you signed the declaration, how did you determine what the transactions were that were the subject of the litigation?
>
> A. I had no involvement in the transactions.
>
> Q. Please describe what the transactions were that were the subject of the litigation.
>
> A. Well, you need to outline that.

| | | |
|---|---|---|
| Q. | | Well, in your declaration, you say: "I was not involved in the transactions that are the subject of the litigation" So I want to know how did you determine what were the transactions that were the subject of the litigation? |
| A. | | I was not in charge of the sales of the mandarin oranges. |
| Q. | | Okay. So you had no knowledge of – |
| A. | | I had no knowledge of Pacesetter, the individuals involved in that. No direct knowledge, no direct communications, no involvement, no knowledge. |
| Q. | | Okay. And no knowledge of the transactions that were the subject of the litigation, right? |
| A. | | Correct. |

(*Id.* at 154, line 1, to 155, line 7.) As for foregoing summary shows, Duda wasn't claiming he didn't know what Pacesetter's claims were when he signed the Arizona Declaration—he was just stating he didn't have knowledge about or involvement in the events giving rise to the lawsuit.

D. **Paragraph 5**

Paragraph 5 of the Arizona Declaration states: "I did not come into the state of Arizona and conduct any business associated with the claims of Plaintiff." (Doc. 28-1 ¶ 5.)

Pacesetter again claims that, because "Duda did not know what Pacesetter's claims were," it was "impossible for [Duda] to honestly make the statements . . . that he had not conducted any business associated with the claims of Plaintiff." (Doc. 247 at 8-9, emphasis and internal quotation marks omitted.) Pacesetter further argues that Duda "admitted [in his deposition] he had actually done significant business in Arizona" by, among other things, touring Duda Foods in Yuma. (*Id.* at 9, emphasis omitted.) The Sanctions Defendants respond that the "only evidence of [Duda] coming into Arizona is touring the [Duda Foods] vegetable operations in Yuma, Arizona," which has "nothing to do with the claims of [Pacesetter], which relate to mandarins." (Doc. 253 at 12.)

- 14 -

The Court agrees with the Sanctions Defendants. As discussed in Part III.C above, the Court doesn't agree that Duda misrepresented his understanding of the claims raised in this action. Nor does the Court believe that Duda misrepresented his travels to Arizona. Duda testified that he traveled to Yuma "in December of every year," as a representative of Duda Foods, to survey the operations and crops. (Doc. 247 at 164, lines 5-18.) Duda Foods "did not conduct any citrus operations in Yuma, Arizona." (*Id.* at 157, lines 24-25.) In the Arizona Declaration, Duda only stated that he hadn't been to Arizona to conduct any business related to the claims in this litigation, not that he had never been to Arizona at all.[3]

E. **Paragraph 7**

Paragraph 7 of the Arizona Declaration states: "I did not have any communications with the other defendants in the action concerning the subjects of the action." (Doc. 28-1 ¶ 7.)

Pacesetter argues that Duda "admitted in his deposition that he had no independent knowledge about what the subjects of the action actually were," so he could not have made such a representation in his declaration. (Doc. 247 at 6-7.) The Sanctions Defendants respond that Duda "has personal knowledge that after the Complaint was filed, he did not talk to anyone about the lawsuit," and that his "knowledge about the FAC and the claims and subjects [of the litigation] from discussions with in house counsel." (Doc. 253 at 12.)

Pacesetter's argument lacks merit. Duda maintained throughout his deposition that his knowledge of the subjects of the action arose out of his conversations with counsel. (Doc. 247 at 133, lines 2-7 ["Q. Did you, as the person who signed [the Arizona Declaration], know what the subjects of the action were in the declaration that you signed? Did you know what the subjects of the action were? A. Again, those were discussions in

---

[3] Pacesetter also appears to argue that Duda "may have lied" to the Arizona Corporation Commission ("ACC") about, among other things, the makeup of Duda Foods' board of directors. (Doc. 247 at 10-11.) Pacesetter states that "it will file a complaint concerning these matters with the ACC" and only "mention the apparent mendacity here because it is part and parcel of the misrepresentations [Duda] made in his Arizona Declaration about the supposed non-conduct of business in Arizona." (*Id.* at 11.) To the extent Pacesetter seeks relief for this conduct, the Court does not consider this argument because it is unrelated to the Duda Defendants' conduct in this litigation.

detail with Amanda Carl."].) Duda's statement that he didn't have knowledge of the subjects of this lawsuit, separate and apart from his conversations with counsel, is not inconsistent with making a declaration on one's personal knowledge or information obtained from business records, let alone false.

Because Pacesetter has not established that the Arizona Declaration was either false or misleading, the request for Rule 11 sanctions is denied. This outcome makes it unnecessary to resolve the Sanctions Defendants' alternative defenses to the motion, many of which appear, at first glance, to have merit to them.

IV. Other Bases For Sanctions

Pacesetter also argues that, aside from Rule 11, the Court may impose sanctions under its inherent power to "manage [its] own affairs." (Doc. 247 at 14; Doc. 255 at 9.) For the reasons stated above, Pacesetter has not remotely persuaded the Court that any sanctionable conduct has occurred. The Court declines to impose any sanctions under Rule 11 or otherwise.

Accordingly,

**IT IS ORDERED** that Pacesetter's motion for Rule 11 sanctions (Doc. 247) is **denied**.

Dated this 21st day of June, 2021.

Dominic W. Lanza
United States District Judge