**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pacesetter Consulting LLC, | No. CV-19-00388-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Herbert A Kapreilian, et al., | |
| Defendants. | |

Pending before the Court are motions for summary judgment filed by the following defendants: (1) AgriCare and Tom Avinelis (the "AgriCare Defendants") (Doc. 201); (2) Eastside Packing Inc., Fruit World Nursery Inc., Craig Kapreilian, and Herbert Kapreilian (the "Kapreilian Defendants") (Doc. 202); and (3) Mark Bassetti ("Bassetti") (Doc. 203). Also pending before the Court are various motions to exclude expert testimony (Docs. 195, 196, 198) and Pacesetter's motion for leave to file a Fourth Amended Complaint (Doc. 256). For the following reasons, all three motions for summary judgment are granted, the expert-related motions are denied as moot, the motion for leave to amend is denied, and this action is terminated.

## BACKGROUND

### I.     Relevant Factual Background

In 2004, John R. Norton III ("Norton"), now deceased, and Roger Stevenson ("Stevenson") met with Judson C. Ball ("Ball") and solicited an investment from the Judson C. Ball Revocable Trust (the "Trust"), of which Ball is the trustee. (Doc. 227 at 22

¶ 1.)  The investment was for a mandarin orange project run by Phoenix Orchard Group I, L.P. ("POG I") and Phoenix Orchard Group II, L.P. ("POG II").  *Judson C. Ball Revocable Tr. v. Phx. Orchard Grp. I L.P.*, 2020 WL 547250, *1 (Ariz. Ct. App. 2020).[1]  After reviewing the first few pages of an Executive Summary, Ball agreed to invest in POG I and POG II on behalf of the Trust.  *Id.*  The Trust invested $200,000 each into both POG I and POG II.  (Doc. 227 at 22-23 ¶ 2.)

II.   <u>State Court Litigation</u>

In 2015, the Trust brought a lawsuit in Maricopa County Superior Court against POG I, POG II, Stevenson, Norton, and various business entities they controlled.  (Doc. 103-1 at 2-5.)  The Trust brought statutory claims under A.R.S. §§ 44-1991(A),-(B) and -2003(A) and tort claims for misrepresentation and nondisclosure.  (*Id.* at 12-14.)  The defendants answered and filed a counterclaim seeking rescission of the Trust's interests in the orchard groups under A.R.S. § 44-2001(A).  (Doc. 103-2 at 11-21.)

In a March 2016 order, the state court determined that rescission was appropriate and entered a declaratory judgment to that effect.  (Doc. 103-3 at 6.)  Rescission satisfied the Trust's statutory claims.  (*Id.*)  The court noted, however, that rescission did not satisfy the potential damages available pursuant to the tort claims and declined to declare the Trust's tort claims satisfied.  (*Id.*)

The Trust appealed the decision.  *Judson C. Ball Revocable Tr. v. Phx. Orchard*

---

[1]    Although the Court may take judicial notice of "court filings and other matters of public record," *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006), it ordinarily may not take judicial notice of facts contained therein.  *See, e.g.*, *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).  Unfortunately, many of the parties' exhibits are documents filed in the state court litigation discussed below, which the Court generally may not consider.  *Cf. Stamas v. County of Madera*, 795 F. Supp. 2d 1047, 1061 (E.D. Cal. 2011) ("The Court cannot take judicial notice of the declarations filed in [another case].  These declarations are not judicially noticeable because they are not facts 'generally known' in the community and are not 'capable of accurate and ready determination.'  The Court may take judicial notice that declarations were filed in that action, but the Court may not take judicial notice of the underlying factual support.").  Accordingly, the factual background section of this order is derived from the factual history enumerated in the state court decisions.  The Court lays out these facts merely to provide context and does not assume the truth of these facts, which are ultimately not material to the ruling in this order.  *Cf. Cal. Cap. Ins. Co. v. Republic Underwriters Ins. Co.*, 445 F. Supp. 3d 61, 63 n.5 (N.D. Cal. 2020) ("To the extent the Court cites to facts contained with the documents judicially noticed, it does so for background purposes only.").

*Grp. I, LP*, 2018 WL 283049 (Ariz. Ct. App. 2018) (mem. decision).  In January 2018, the Arizona Court of Appeals affirmed the rescission.  *Id.* at *1.

Although the Trust maintained its tort claims, those claims ultimately failed.  (Doc. 103-6.)   In an August 2018 order, the state court determined that Ball, the Trust's representative, didn't read any of the relevant materials before investing.  (*Id.* at 5, 7-8, 11.) Because it was Ball's "extreme carelessness" that led to his alleged injuries, rather than misrepresentations made by the defendants, the court granted summary judgment in favor of the defendants.  (*Id.* at 2, 5, 11.)

The Trust appealed this decision, too.  *Judson C. Ball Revocable Tr. v. Phx. Orchard Grp. I*, 2020 WL 547250 (Ariz. Ct. App. 2020) (mem. decision).  In February 2020, the Arizona Court of Appeals affirmed on alternative grounds, holding that the "Trust produced no admissible evidence on damages, a key element of both its remaining claims." *Id.* at *2.  The Trust had previously identified attorneys' fees, costs, accountant fees, and lost opportunity costs as its categories of claimed damages, but the court held that "[a]ttorney fees and costs . . . cannot be used to establish the damage element of its claims" and that the Trust had not proffered any admissible evidence to support its other alleged damages.  *Id.*

Separately, in January 2016, the Trust brought a derivative action in state court against both orchard groups.  *Judson C. Ball Revocable Tr. v. Phx. Orchard Grp. I*, 431 P.3d 589, 591 (Ariz. Ct. App. 2018).  The trial court dismissed following the rescission finding in the parallel state-court action, holding that the Trust, because it no longer had an interest in the orchard groups, no longer had standing.  *Id.*  The Trust appealed but the Arizona Court of Appeals affirmed, concluding that, "because the Trust no longer possesses any ownership interest in POG," it no longer had standing to pursue the derivative action.  *Id.* at 594.

…

…

…

III.   Relevant Procedural History

The winding procedural history of this case is set out in prior orders.  (Docs. 128, 152, 160, 224, 235.)  A brief summary is necessary here to set the stage for the current ruling.

On December 23, 2019, Pacesetter filed its Third Amended Complaint ("TAC"). (Doc. 129.)  The TAC was thereafter answered by the various groups of defendants.  (Docs. 130 [AgriCare Defendants], 131 [Bassetti], 132 [Kapreilian Defendants].)

On November 30, 2020, Bassetti filed two motions to exclude expert testimony. (Docs. 195, 196.)  The first challenges Pacesetter's expert Jeffrey McMullin and the second challenges Pacesetter's expert Roger Brown.  (*Id.*)  The AgriCare Defendants subsequently joined both motions in full (Docs. 208, 209) and the Kapreilian Defendants joined the McMullin motion in full (Doc. 214).  These motions later became fully briefed.  (Docs. 212 & 216 [Brown], 213 & 215 [McMullin].)

Also on November 30, 2020, Pacesetter filed its own motion to exclude expert testimony, seeking to exclude defense experts Christopher G. Linscott and Dwight J. Duncan.  (Doc. 198.)[2]  These motions later became fully briefed.  (Docs 210, 211, 220.)

On December 7, 2020, each group of defendants filed a motion for summary judgment.  (Docs. 201, 202, 203.)  On February 4, 2021, these motions seemed to become fully briefed.  (Docs. 226, 227, 228, 232, 233, 234.)  However, on April 30, 2021, Pacesetter filed a motion for leave to supplement its responses.  (Doc. 244.)  The supplementation request was based on the fact that, after Pacesetter filed its responses, the deposition of one witness—former party Edward Daniel Duda, Jr. ("Duda")—had been reopened to allow limited additional questioning.  (*Id.*)

On May 3, 2021, the Court granted this motion in part, limiting any supplementation to (1) "relevant portions of the transcript of the [reopened] Duda deposition to provide additional evidentiary support for [Pacesetter's] arguments" or (2) "add new arguments

_____

[2]   The motion was originally docketed at Doc. 197 but Pacesetter filed an amended version, appearing at Doc. 198, later that day.

1    that are based on the newly-added deposition excerpts." (Doc. 246 at 3.) The Court

2    clarified that it would not permit Pacesetter to "raise new arguments that were previously

3    available to it" and that any "new arguments must be based on any relevant testimony that

4    was obtained during the reopened deposition." (*Id.*, internal quotation marks omitted.)

5        On May 24, 2021, Pacesetter filed a supplemental response to Bassetti's motion.

6    (Doc. 251.) Pacesetter did not, in contrast, choose to file supplemental responses to the

7    other two summary judgment motions.

8        On June 4, 2021, Bassetti filed a revised reply. (Doc. 254.)

9        On June 15, 2021, Pacesetter moved for leave to file a Fourth Amended Complaint.

10   (Doc. 256.) At the defendants' joint request, further briefing was stayed pending the

11   resolution of the summary judgment motions. (Docs. 273, 274.)

12       On July 1, 2021, the Court issued a tentative ruling. (Doc. 276.)

13       On July 13, 2021, the Court held oral argument. (Doc. 278.)

**DISCUSSION**

14

15   I.   Challenged Exhibits

16       As an initial matter, the defendants object to two of the exhibits Pacesetter attached

17   to all of its summary judgment responses. The challenged exhibits are (1) a declaration by

18   Ball (Doc. 226 at 27-35, Doc. 227 at 22-30, Doc. 228 at 25-33) and (2) a "Fact Worksheet"

19   that purports to summarize and paraphrase the testimony from nine depositions (Doc. 226

20   at 73-135, Doc.227 at 68-130, Doc.228 at 66-128).

21       At summary judgment, a party may cite "particular parts of materials in the record,

22   including depositions, documents, electronically stored information, affidavits or

23   declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed.

24   R. Civ. P. 56(c)(1)(A). "A trial court can only consider admissible evidence in ruling on a

25   motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir.

26   2002), *superseded by rule on other grounds as recognized in Dinkins v. Schinzel*, 362 F.

27   Supp. 3d 916 (D. Nev. 2002).[3] *See also* 2 Gensler, Federal Rules of Civil Procedure, Rules

28   _____
[3]     The 2010 amendments to Rule 56 eliminated the requirement that evidence be
authenticated and admissible in its present form to be considered at the summary-judgment

1  and Commentary, Rule 56, at 178 (2021) (list in Rule 56(c) "is not exhaustive and courts

2  generally may consider any materials that would be admissible or usable at trial"). "While

3  a nonmoving party need not present evidence in an admissible *form*, 'the *facts* underlying

4  the [evidence] must be of a type that would be admissible as evidence.'" *De La Torre v.*

5  *Merck Enters., Inc.*, 540 F. Supp. 2d 1066, 1075 (D. Ariz. 2008) (alteration in original)

6  (citation omitted). "Thus, though [a party] is not required to produce evidence in a form

7  that would be admissible at trial, [it] must show that [it] would be able to present the

8  underlying facts in an admissible manner at trial." *Id.*

9      A.    **Ball Declaration**

10          1.    Objections

11      All defendants object to Ball's declaration. The AgriCare Defendants argue that

12  "Ball's unsupported beliefs and inferences are insufficient to withstand summary

13  judgment" and that the declaration "is replete with unfounded expert agriculture opinions

14  by [Ball]," which are "not admissible and are improper support to oppose a motion for

15  summary judgment." (Doc. 232 at 5.) These defendants also contend that Pacesetter "does

16  not provide any evidence, factual basis, or foundation to support [Ball's] inadmissible

17  expert conclusions." (*Id.*) The Kapreilian Defendants argue that the declaration is self-

18  serving, replete with uncorroborated conclusions, and lacks "admissible evidentiary

19  support." (Doc. 234 at 4-5.) They also argue that Ball "does not have personal knowledge"

20  to support his statements and that his "statements regarding what others may have told him

21  lack[] foundation and constitute[] inadmissible hearsay." (*Id.* at 5-6.) Bassetti similarly

22  argues that the declaration is "inadmissible and self-serving." (Doc. 233 at 2-3.) He argues

23  that, of the declaration's 40 paragraphs, "28 of those paragraphs are stated to be something

24  that [Ball] 'learned,' 'later learned,' 'realized' or some similar formulation," which "are

25  inadmissible hearsay and violate the best evidence rule." (*Id.* at 2.) He also argues that the

26  declaration "contains no context that could provide foundation to allow the admission of

27

28  stage, instead requiring only that the substance be admissible at trial. *Dinkins*, 362 F. Supp.
3d at 922-23.

- 6 -

these statements." (*Id.*)  Last, he argues that other paragraphs "contradict [Ball's] prior sworn testimony." (*Id.* at 3.)

2.   Legal Standard

"An affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  "[A] witness has personal knowledge only when testifying about events perceived through the physical senses or when testifying about opinions rationally based on personal observation and experience." *De La Torre*, 540 F. Supp. 2d at 1075.  "A plaintiff's belief . . . without evidence supporting that belief, is no more than speculation or unfounded accusation . . . .  It is not enough for a witness to tell all she knows; she must know all she tells."  *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 2018 (9th Cir. 2010).  "[C]onclusory affidavits fail to establish foundation." *Travelers Cas. & Sur. Co. of Am. v. Telstar Constr. Co.*, 252 F. Supp. 2d 917, 924 (D. Ariz. 2003).

3.   Analysis

Ball's declaration is largely inadmissible because it contains statements that are conclusory, lack a proper foundation, are not based on Ball's personal knowledge, are based on materials that are not a part of the record, and/or are hearsay.

To take two illustrative examples, the declaration contains conclusions such as "[i]t took time and considerable discovery in the state-court case to learn that the Trust had been the victim of a complex, longstanding pattern of concealment and misrepresentation" (Doc. 227 at 23 ¶ 5) and "Avinelis and some of his colleagues eventually acquired some sort of actual ownership interest in the POG I and POG II land" (*id.* at 24 ¶ 9).  Conspicuously absent from the declaration are any supporting exhibits that might support such conclusions.  Nor does the declaration deign to elaborate on the facts that Ball claims to have "learned" during the state-court litigation (which, for many of the allegations, occurred at some unspecified "later" time).  (*See, e.g., id.* at 23 ¶ 8 ["I also much later

1  learned that [Avinelis] and AgriCare were hired to be the property manager and grower for

2  POG I and POG II."].)   The lack of specificity, particularly regarding the time frame in

3  which Ball purportedly discovered the facts that gave rise to his belief that the Trust had

4  been a "victim of a complex, longstanding pattern of concealment and misrepresentation,"

5  is a critical oversight in light of Pacesetter's attempted invocation (as discussed in more

6  detail below) of the discovery rule in response to certain defendants' statute-of-limitations

7  defense.

8          Also problematic is Ball's failure to submit, or even identify with particularity, the

9  discovery materials he allegedly obtained during the state-court litigation.  Many portions

10  of his declaration are premised on these alleged materials.  (*See, e.g.*, *id.* at 24 ¶ 13 ["After

11  uncovering previously concealed facts in the course of the state-court case, in about March

12  of 2018, I realized that [certain defendants] had actively concealed facts about the

13  mismanagement of POG I and POG II . . . ."].)  These materials, however, are not in the

14  record.  This approach is impermissible.  *See* Fed. R. Civ. P. 56, advisory committee's note

15  to 2010 amendment ("Materials that are not yet in the record—*including materials referred*

16  *to in an affidavit or declaration*—must be placed in the record.") (emphasis added).  "[T]he

17  Ninth Circuit routinely holds that when a party refers to documentary evidence as the

18  source of a factual allegation in an affidavit or declaration, the party must attach the

19  relevant documents to the affidavit or declaration.  Federal district courts within the Ninth

20  Circuit reach the same result, whether under Rule 56(e) prior to the 2010 Amendments, or

21  Rule 56(c)(1)(A) after the 2010 Amendments."  *Sapiano v. Millennium Ent., LLC*, 2013

22  WL 12120262, *4 (C.D. Cal. 2013).[4]   The bottom line is that Ball's declaration refers

23  ───────────────────

[4]      *See also Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993) ("[A]n

24  affidavit of a witness is not exempt from Rule 56[(c)(1)(A)]'s attachment requirement
    simply because the affidavit references documentary evidence *and* personal knowledge as

25  a source of information.  If documentary evidence is cited as a source of a factual
    contention, Rule 56[(c)(1)(A)] requires attachment.  There was no attachment.  The district

26  court did not abuse its discretion in excluding the . . . affidavit."); *Cermetek, Inc. v. Butler
    Avpak, Inc.*, 573 F.2d 1370, 1377 (9th Cir. 1978) ("[M]any of the assertions [in the

27  affidavit] are of facts Mr. Norden could only have gained knowledge of through unrevealed
    records or hearsay. . . .  Those facts alleged on 'understanding' like those based on 'belief'
    or on 'information and belief,' are not sufficient to create a genuine issue of material fact.

28  If Mr. Norden gained knowledge through business records or post trial discovery . . . , he
    should have attached copies of the 'papers or parts thereof referred to' in his affidavit so as

extensively to materials he allegedly obtained during the state-court discovery process that supposedly provide the foundation for his factual assertions. Given this backdrop, Pacesetter was required to provide the underlying materials. Because it failed to do so, the Court declines to consider portions of the Ball declaration that rely on such materials.[5]

Pacesetter's failure to provide the materials underpinning Ball's factual assertions also makes it impossible to assess whether the materials themselves would be admissible at trial (*e.g.*, whether the materials are inadmissible hearsay). Courts routinely disregard testimony based on information obtained from unknown declarants.[6]

---

to properly support his conclusion. It was [the party's] duty to show affirmatively that the affiant was competent to testify . . . ; all we have here is a bare assertion.") (citations omitted).

[5] Other courts have declined to consider affidavits or declarations in analogous circumstances. *Cf. Sapiano*, 2013 WL 12120262 at *4 ("Given Mr. Aguirre's reliance on these licensing agreements, Plaintiffs were required to produce these documents in support of their Motion for summary judgment. However, because Plaintiffs did not do so, Mr. Aguirre's declaration does not indisputably show [the fact]."); *Jones v. Corr. Corp. of Am.*, 2013 WL 56119, *18 (D. Ariz. 2013) (Rule 56 "requires the movant to cite the particular parts of the materials that support its factual assertions. The Advisory Committee Notes explain that under this provision, '[m]aterials that are not yet in the record—including materials referred to in an affidavit or declaration—must be placed in the record.' Because none of the medical records relied on by [the doctors] are in the record, and because neither physician has any personal knowledge of the care provided to Plaintiff, their affidavits will not be considered.") (alteration in original) (emphasis and citation omitted). *See also RES-NV CHLV, LLC v. Rosenberg*, 2014 WL 6610729, *1-2 (D. Utah 2014) (striking declaration that cited documents not in the record and noting that "because the documents [had] not been placed in the record, the court [had] no ability to verify the information contained in the documents); *Loadman Grp., LLC v. Banco Popular N. Am.*, 2013 WL 1154528, *9 (N.D. Ohio 2013) ("[N]one of the previously specified papers relied upon by the affiants appear in the record. Thus, the existence of those documents and the affiant's discussion of them is wholly unsupported by the record. Further, plaintiffs have made no attempt to demonstrate that the affiants' statements regarding those documents would be admissible in evidence and, therefore, the Court will not consider this evidence for purposes of summary judgment.").

[6] *Cf. Cedeck v. Hamiltonian Fed. Sav. & Loan Ass'n*, 551 F.2d 1136, 1138 (8th Cir. 1977) (statement which "contain[ed] a reiteration of what someone told [the declarant was] not admissible as an admission by party-opponent since the author of the statement [was] unknown"); *O'Brien v. City of Frankfort*, 2018 WL 4620265, *3 (S.D. Ind. 2018) (statements were inadmissible hearsay because they had "no attribution," since the "declarant [was] unknown"); *Smart Vent, Inc. v. USA Floodair Vents, Ltd.*, 193 F. Supp. 3d 395, 415 (D.N.J. 2016) (disregarding portions of a declaration as "unprovable hearsay" because of the "unknown identity of the . . . declarants, the lack of documentation . . . , and the absence of *any* indication that unknown [declarants] might testify at trial"); *Atl. Rsch. Mktg. Sys., Inc. v. Saco Def., Inc.*, 997 F. Supp. 159, 168 (D. Mass. 1998) (noting a "complete absence of admissible evidence" where party's summary judgment argument was "based entirely on the hearsay statement of an unidentified declarant . . . based upon an unknown source" because, "[f]or that reason alone, it would be inadmissible at trial" and because the "response [did] not meet the requirement of Fed. R. Civ. P. 56(c) that the

Other portions of the declaration are inadmissible because the Court is not satisfied that the declaration "show[s] that the . . . declarant is competent to testify on the matters stated." *De La Torre*, 540 F. Supp. 2d at 1075 ("Federal Rule of Evidence 602 prohibits a witness from testifying on a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Rule 602 is considered in conjunction with Rule 701, which limits opinions of non-experts to opinions rationally based on the perceptions of the witness. . . .  Further, proper foundation must be laid regardless of the source of evidence.") (internal quotation marks omitted).  The Court thus declines to consider portions of the declaration that are speculative, conclusory, and/or do not provide sufficient facts to show that Ball has sufficient personal knowledge.[7]

Accordingly, after reviewing the declaration and the defendants' objections, the Court will not consider the following paragraphs from the Ball declaration:

| Paragraph(s) | Portion(s) Excluded | Reason(s) For Exclusion |
|---|---|---|
| **3** | | Lack of foundation ("foundation"), refers to materials not in the record, hearsay |
| **4 (in part)** | "But the projections turned out to be totally incorrect." | Foundation, lack of evidence supporting indicia of personal knowledge ("personal knowledge"), conclusory |
| **5-6** | | Foundation, personal knowledge, conclusory |

party opposing summary judgment set forth specific facts showing that there is a genuine issue for trial") (emphasis and internal quotation marks omitted).

[7]    *See also Carmen*, 237 F.3d at 1028 ("A plaintiff's belief . . . without evidence supporting that belief, is no more than speculation or unfounded accusation. . . .  [Plaintiff] failed to show personal knowledge.  It is not enough for a witness to tell all she knows; she must know all she tells."); *Thornhill Publ'g Co. v. Gen.  Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979) ("Appellant has not met the burden imposed by Rule 56[(c)(1)(A)].  In an attempt to avoid summary judgment, appellant submitted conclusory and speculative affidavits that fail to set forth specific facts in support of appellant's . . . theory. . . .  [The affiant] failed to set forth any specific facts within his personal knowledge in support of this assertion."); Gensler, *supra*, at 180 ("Courts frequently disregard affidavit testimony on the basis that the affiant is speculating or drawing conclusions about events or matters beyond the affiant's personal knowledge or competence.  Similarly, affidavit testimony based 'on information' or 'on belief' will not support or defeat summary judgment where the use of those terms indicates a lack of personal knowledge.") (footnote omitted).

| | | |
|---|---|---|
| **7-8** | | Foundation, personal knowledge, refers to materials not in the record, hearsay, conclusory |
| **9** | | Foundation, personal knowledge, conclusory |
| **10 (in part)** | "From 2006, I noticed that the returns that were projected for POG I and POG II were non-existent." | Foundation, personal knowledge, conclusory |
| **11** | | Foundation, personal knowledge, conclusory |
| **12** | | Refers to materials not in the record, hearsay, conclusory |
| **13** | | Foundation, refers to materials not in the record, hearsay, conclusory |
| **14** | | Foundation, personal knowledge, refers to materials not in the record, hearsay |
| **15** | | Foundation, personal knowledge, conclusory |
| **16-17** | | Foundation, refers to materials not in the record, hearsay |
| **18** | | Foundation, refers to materials not in the record, hearsay, conclusory |
| **19** | | Foundation, refers to materials not in the record, conclusory |
| **20** | | Foundation, refers to materials not in the record, hearsay |
| **21** | | Foundation, personal knowledge, refers to materials not in the record, hearsay |
| **22** | | Foundation, personal knowledge, refers to materials not in the record, hearsay, conclusory |
| **23 (in part)** | "POG I and POG II were never profitable." | Foundation, personal knowledge, conclusory |
| **24** | | Foundation, conclusory |
| **25** | | Foundation, personal knowledge, refers to materials not in the record, hearsay, conclusory |
| **26** | | Foundation, personal knowledge, refers to materials not in the record, hearsay |
| **27** | | Foundation, refers to materials not in the record, hearsay, conclusory |

| 28 | | Foundation, refers to materials not in the record, hearsay, conclusory |
| 29-30 | | Foundation, personal knowledge, refers to materials not in the record, hearsay, conclusory |
| 31-32 | | Foundation, refers to materials not in the record, conclusory |
| 33-34 | | Foundation, personal knowledge, conclusory |
| 35 | | Foundation, personal knowledge, refers to materials not in the record, hearsay |
| 36 | | Foundation, personal knowledge, refers to materials not in the record, hearsay, conclusory |
| 37 (in part) | "Those representations were false.  He had no expertise.  He had no experience.  The projected return never arrived." | Foundation, personal knowledge, conclusory |
| 38-39 | | Foundation, personal knowledge, refers to materials not in the record, hearsay, conclusory |

The Court acknowledges and is not unsympathetic to Ball's insistence that he only learned of the alleged misconduct during the state-court discovery process, long after the events giving rise to this litigation took place.  But it was Pacesetter's burden, as the non-moving plaintiff, to "make a showing sufficient to establish the existence of an element to [its] case . . . on which [it] will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  *See also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990) ("*Celotex* made clear that Rule 56 does not require the moving party to *negate* the elements of the nonmoving party's case . . . .").  Indeed, "Rule 56(e) provides that judgment 'shall be entered' against the nonmoving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.'"  *Lujan*, 497 U.S. at 888 (citation omitted).  "The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.  Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact

essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Id.* at 888-89 (citation omitted).[8] If Pacesetter had evidence or specific facts to support the declaration, it was required to put that evidence before the Court. *See, e.g.*, *Thornhill Publ'g Co.*, 594 F.2d at 738 ("If, indeed, evidence was available to underpin [the] conclusory statement, Rule 56 required [the party opposing summary judgment] to come forward with it.") (internal quotation marks omitted).

B.   **Fact Worksheet**

1.   Objections

All defendants object to the Fact Worksheet.  The AgriCare Defendants argue the Fact Worksheet is "inadmissible and improper support for its Response" and a "transparent attempt by Pacesetter to circumvent the Court's Case Management Order and requirement that the parties may not file separate statements of fact or controverting facts."  (Doc. 232 at 7 n.2.)  The Kapreilian Defendants argue the Fact Worksheet "is not admissible because it is compound, fails to quote the various deponent's actual sworn statements, and is an inadmissible summary and thereby violates the [Court's] Scheduling Order."  (Doc. 234 at 3.)  Bassetti argues the Fact Worksheet is "unsworn and unauthenticated," "neither relevant nor material," "clearly designed to avoid the Court's page limits and rule forbidding separate statements of facts," and "inadmissible hearsay."  (Doc. 233 at 3.)

2.   Legal Standard

Rule 56 requires a party to cite "particular parts of materials *in the record*."  Fed. R. Civ. P. 56(c)(1)(A) (emphasis added).  As noted above, "[m]aterials that are not yet in the record . . . must be placed in the record."  Fed. R. Civ. P. 56, advisory committee's note to 2010 amendment.  *See also* Gensler, *supra*, at 164 ("[I]tems on this list must be placed in the summary-judgment record in order to be cited to.").

…

…

---

[8]   The Court can't help but observe that Ball's declaration contains even less detail than the TAC.  (Doc. 129.)

1          3.      Analysis

2          The "Fact Worksheet" is inadmissible.  It is a single-spaced, 62-page document with

3    multiple columns that purports to summarize the testimony of nine different depositions.

4    It contains very few direct quotations from the depositions.  Instead, it consists of hundreds

5    of what the Court can only assume are attorney-drafted summaries of the deponents'

6    testimony.  Some of the summaries are quite informal.  (*See, e.g.*, Doc. 226 at 73 [providing

7    the following identical summary for portions of four different deposition transcripts:

8    "Exhibit glossary/initial stuff"].)  Others are argumentative.  (*See, e.g.*, *id.* at 81 ["Craig

9    contradicts himself in this statement.  Just prior when generically asked whether there was

10   a difference between proprietary and patented cultivars, twice he said no.  When asked

11   about the 14 cultivars he states not all were patented.  Then he back paddles [sic] and states

12   as in regard to the control of them."].)  Critically, the underlying deposition transcripts are

13   not part of the record.  Thus, the Court has no way to verify whether Pacesetter's summaries

14   are accurate.

15         This is not an appropriate way to introduce deposition testimony at the summary

16   judgment stage.  A summary of depositions—particularly an argumentative, informal

17   summary devoid of direct quotations—is no substitute for the real thing.  *Cf. Richmond v.*

18   *Gen. Nutrition Ctrs. Inc.*, 2011 WL 2493527, *6 (S.D.N.Y. 2011) (granting motion to strike

19   chart submitted as exhibit in opposition to motion for summary judgment that

20   "summarize[d] allegedly inconsistent statements made by Defendants during deposition

21   testimony" in part because the summaries were "inappropriately argumentative").

22   *Compare Batchelor v. Frisbie*, 2009 WL 10715185, *8 (S.D. Ind. 2009) (chart

23   summarizing deposition testimony was admissible because the party did "not attempt to

24   replace the actual evidence, namely the deposition text," with the chart).

25         This finding of inadmissibility with regard to the Fact Worksheet is consistent with

26   *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d

27   1058 (9th Cir. 2002) (en banc).  There, the Ninth Circuit suggested that a district court has

28   discretion under Rule 611 to admit summaries of depositions at trial in lieu of verbatim

transcripts. *Id*. at 1183.  Putting aside the fact that the rule announced in *Planned Parenthood* appears to be rule admissibility at trial, not at summary judgment (because it is grounded in Rule 611), the broader point is that *Planned Parenthood* vests the district court with discretion to decide admissibility.  Here, even assuming the Court might have discretion to admit the Fact Worksheet despite Pacesetter's failure to provide the underlying transcripts, it would decline to do so in light of the argumentative and informal nature of the summaries and in light of the absence of direct quotations.

Finally, even if the Fact Worksheet were otherwise admissible, the Court would still decline to consider it here because of the improper manner in which Pacesetter attempted to rely on it.  In its motion papers, Pacesetter does not attempt to identify specific portions of the Fact Worksheet that support its arguments.  Instead, Pacesetter provides general allusions to the 62-page document, apparently in the hope that the Court will be able to comb through the innumerable single-spaced summaries contained within it and find something that might be helpful.  (*See, e.g.,* Doc. 226 at 9 ["The acts Avinelis and Agricare committed are more fully understandable by reviewing the detailed Fact Worksheet attached as Exh. 8."]; Doc. 227 at 9 ["The acts that the Kapreilian Defendants committed are more fully understandable by reviewing the detailed Fact Worksheet attached as Exh. 8."]; Doc. 228 at 6 ["Bassetti was a leading control figure . . . . [who] acted in the context of an intricate web of facts and circumstances, which are set out in the 'Fact Worksheet.' (Exh. 5)."].)  Pacesetter's general citation of over sixty pages of single-spaced material is improper.  *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[J]udges are not like pigs, hunting for truffles buried in briefs.") (internal quotation marks omitted).  *See also* Gensler, *supra*, at 164 ("The citations must be to 'particular parts' of those materials.  General references to lengthy materials are not sufficient.  For example, citations to deposition testimony should be to the particular page (and preferably line) where the support is located.  Courts may disregard insufficiently particular citations.") (footnotes omitted).

Because the Court does not consider the above exhibits, the Court will deem undisputed those facts that Pacesetter failed to properly address.  *See* Fed. R. Civ. P. 56(e)

(if a "party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," a court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it").

II.     Motions For Summary Judgment

        A.      **Legal Standard**

        "The court shall grant summary judgment if [a] movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018). "Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors*, 771 F.3d at 1125.

        A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "If . . . [the] moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103.

        "If the nonmoving party fails to produce enough evidence to create a genuine issue

1    of material fact, the moving party wins the motion for summary judgment." *Id.* There is

2    no issue for trial unless enough evidence favors the non-moving party. *Anderson v. Liberty*

3    *Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable or is not

4    significantly probative, summary judgment may be granted." *Id.* at 249-50. At the same

5    time, the evidence of the non-movant is "to be believed, and all justifiable inferences are

6    to be drawn in his favor." *Id.* at 255. "[I]n ruling on a motion for summary judgment, the

7    judge must view the evidence presented through the prism of the substantive evidentiary

8    burden." *Id.* at 254. Thus, "the trial judge's summary judgment inquiry as to whether a

9    genuine issue exists will be whether the evidence presented is such that a jury applying that

10   evidentiary standard could reasonably find for either the plaintiff or the defendant." *Id.* at

11   255.

12        B.    **AgriCare Defendants**

13             1.    Relevant Undisputed Facts

14        In 2009, AgriCare entered into an agreement with POG II to "manage the

15   agricultural operations on approximately 255 acres of POG II's property in Fresno County,

16   California." (Doc. 201-5 at 1 ¶ 3.) In 2011, AgriCare entered into an agreement with POG

17   I to "manage the agricultural operations on approximately 159.67 acres on POG I's

18   property in California." (*Id.* at 1-2 ¶ 4.) Before October 2016 and during the relevant time

19   period of this litigation, Tom Avinelis was AgriCare's CEO. (Doc. 201-6 ¶ 2.) Before

20   May 2016, "AgriCare did not have any communication with . . . any of the limited partners

21   of POG I or POG II," including the Ball Trust. (Doc. 201-5 at 2 ¶ 7; Doc. 201-6 ¶ 6.)

22   AgriCare denies having any knowledge of, among other things, the Ball Trust's

23   involvement in POG I/II, the identities of any of the POG I/II limited partners, or the POG

24   I/II partnership agreements. (Doc. 201-6 ¶¶ 7-10.)

25             2.    Pacesetter's Evolving Damages Disclosures

26        Before turning to the parties' summary judgment arguments, it is helpful to begin

27   by summarizing the evolving nature of Pacesetter's damages theories in this action.

28        In the initial iteration of its complaint, filed in January 2019, Pacesetter asserted that

1    it was entitled to "direct consequential damages in an amount not less than $400,000" on

2    each of its claims.  (Doc. 1 at 30.)[9]  Pacesetter also enclosed various exhibits to its

3    complaint.  As relevant here, Exhibit 2 was a document entitled "Executive Summary—

4    Citrines" that included the statement "Projected internal rate of return over the planned 25

5    year period is 22.4%" (Doc. 2 at 6), and Exhibit 19 was a document entitled "Orchard I

6    and II Combined IRR" that included a calculation of how much a $400,000 investment

7    made in 2006 would be worth in 2031 if subjected to compound interest of 22.4% each

8    year, *i.e.,* just over $63.2 million  (Doc. 2-4 at 21-24).

9        In March 2019, Pacesetter provided further disclosures regarding its theory of

10   damages.  These disclosures were required by the District of Arizona's Mandatory Initial

11   Discovery Pilot Project ("MIDP"), which was in effect at relevant times during this action.

12   Specifically, under the MIDP, Pacesetter was required to "[p]rovide a computation of each

13   category of damages claimed by you, and a description of the documents or other

14   evidentiary material on which it is based, including materials bearing on the nature and

15   extent of the injuries suffered."  *See* D. Ariz. G.O. 17-08 ¶ B.5.  In its March 2019 MIDP

16   disclosures, Pacesetter provided the following computation:

17           The plaintiff's damages on the $400,000 principal invested is calculated at
             the 22.4% return on investment specified in Exhibit 2 to the amended
18           complaint (Executive Summary) and the table of calculations is contained in
             Exhibit 19 to the amended complaint. Although compounded returns at
19           22.5% over the term of the investment were projected to be $63,236,035.95,
             assuming the project was managed competently and an absence of fraud and
20           concealment, plaintiff calculates a conservative return of $12-15 million.
21

22   (Doc. 195-2 at 26.)  In other words, the theory of damages disclosed in Pacesetter's March

23   2019 MIDP disclosures was that it was entitled to recover over $63 million (or at least $12-

24   15 million) to provide compensation for 22.4% annualized profits it would have earned

25   "over the term of the investment."  These appear to be "lost profit" or benefit-of-the-

26   _____

27   [9]      Subsequent versions of Pacesetter's complaint, including the operative Third
     Amended Complaint ("TAC"), contain similar descriptions of Pacesetter's damages
     theory, albeit with slightly different nomenclature. (Doc. 129 at 44 [alleging that Pacesetter
28   is entitled to "direct damages (actual and consequential) in an amount well in excess of
     $400,000" on each of its claims].)

bargain damages, which are one of the categories of damages specified in the complaint, and are consistent with the calculations set forth in the documents attached as Exhibits 2 and 19 to the complaint.[10]  Additionally, Pacesetter included the following footnote in the section of its MIDP disclosures setting forth its damage computations: "Judson C. Ball is a successful long-term investor and will testify about his calculations of damages."  (*Id.* at 26 n.4.)[11]

Unfortunately, during subsequent communications with the Court and opposing counsel, Pacesetter seemed to change its mind with respect to its theory of damages.  For example, during a discovery hearing in June 2019, Pacesetter's counsel stated that even though Ball's initial $400,000 investment had been returned to him, he sustained additional "tort-related damages" of $281,000 and the "opportunity cost of 12 years of not having the use of that $400,000.  And [Ball] has a track record, which we're prepared to prove with specificity, of 45 percent returns during his 30-plus-year career as a hands-on investor." (Doc. 92 at 16.)  In other words, during the June 2019 hearing, Pacesetter seemed to suggest that it was not seeking "lost profit" or benefit-of-the-bargain damages stemming from the 22.4% returns that should have been generated by Ball's underlying investment of the $400,000 over the 25-year course of that investment—instead, it was seeking "lost opportunity" damages consisting of the profits Ball could have earned from *other* investments had his $400,000 not been tied up for 12 years (before it was returned to him via the State Litigation).

Similarly, in September 2019, Pacesetter served Defendants with its initial

---

[10]     In the tentative order, the Court characterized the $63.2 million damage figure as representing "opportunity cost" damages.  During oral argument, Pacesetter's counsel disagreed with this characterization and asserted that the $63.2 million figure represents Pacesetter's claim for "benefit of the bargain" damages.  Upon reflection, counsel is correct that the $63.2 million figure represents a claim for the profits Pacesetter would have earned from the $400,000 investment, assuming a 22.4% annualized return over a 25-year investment horizon, and not for the profits that Ball could have earned had he invested the $400,000 in other ventures.  The final version of this order has been changed accordingly. As discussed herein, this clarification does not alter the ultimate conclusion regarding Defendants' entitlement to summary judgment.

[11]     Later versions of Pacesetter's MIDP disclosures included the same description of its damages theory that appeared in its initial MIDP disclosures.  (*See, e.g.,* Doc. 201-2 at 46-47 & n.4 [October 2020 version].)

1 "disclosure regarding its expert on damages." (Doc. 195-2 at 2.) In this document,

2 Pacesetter explained that "the data considered by" its damages expert, Jeffrey McMullin,

3 consisted of "the substantial opportunity cost sustained by plaintiff being deprived of the

4 $400,000 principal for a period of at least 10-years." (*Id.*) Once again, this disclosure

5 suggested that Pacesetter was not (contrary to its complaint and MIDP disclosures) seeking

6 $63.2 million in "lost profit" or benefit-of-the-bargain damages and was instead seeking a

7 lesser sum of "opportunity cost" damages.

8 In March 2020, Pacesetter disclosed McMullin's formal report on damages. (Doc.

9 138.) In the portion of this report entitled "Statement of opinions the expert witness will

10 express and the basis and reasons for those opinions," McMullin wrote as follows:

11 Pacesetter's damages on the $400,000 principal that was invested in the
subject Citrines investment were calculated at the 22.4% return on the

12 projected internal rate of return on that investment over the planned 25-year
period as specified in the Executive Summary. The table of calculations

13 (amortization schedule) for the damages is expressed in Exhibit 19 (Doc 002-
4) to the Complaint that was filed on January 26, 2019 in *Pacesetter*

14 *Consulting, LLC v. Kapreilian*, United States District Court for the District
of Arizona Case No. 2:19-cv-00388-DWL (Doc 001). The compounded

15 returns at 22.4% over the term of the investment were projected to total
$63,236,035.95.

16

17

18 (Doc. 195-1 at 2-3.) In other words, in his report, McMullin seemed to return to the "lost

19 profit" or benefit-of-the-bargain theory that had been set forth in the complaint and in

20 Pacesetter's initial MIDP disclosures. In contrast, he did not mention the "opportunity

21 costs" theory discussed during the June 2019 discovery hearing and in Pacesetter's

22 September 2019 expert disclosure.

23 On July 15, 2020, the AgriCare Defendants noticed the Rule 30(b)(6) deposition of

24 Pacesetter. (Doc. 155.) Among other things, the notice called for Pacesetter's designee to

25 be prepared to testify about "[t]he factual basis and supporting documents for Pacesetter's

26 claimed damages as stated in Pacesetter's . . . MIDP Responses." (*Id.* at 3.)

27 On July 23, 2020, Pacesetter's Rule 30(b)(6) deposition took place. Pacesetter's

28 chosen designee was Ball. Critically, Ball testified that the $63.2 million damages figure

set forth in Pacesetter's MIDP disclosures and McMullin's report did *not* represent the damages Pacesetter is seeking in this lawsuit—instead, Ball clarified that this figure constituted Pacesetter's damages arising from the State Litigation, "separate from the federal case." (Doc. 201-9 at 18-19.)  And in response to a follow-up question about the damages Pacesetter is "seeking in this . . . case in federal court," Ball provided a meandering answer in which he admitted that he couldn't calculate a damages figure and suggested that  McMullin would be responsible for providing a damages calculation at a later date:

> Q.    What are you seeking in this Pacesetter case in federal court, what are the damages that you're seeking?
>
> A.    I haven't asked Jeff [McMullin] to do those calculations for me yet.
>
> Q.    And so you don't know what the damages you're seeking in . . . this federal court case for Pacesetter, you don't know what the damages are yet?
>
> A.    Well, . . . . I'm seeking straight fraud and straight misrepresentation. . . .  I said to Mr. Moolenaar that I had cursorily reviewed the case law on this.  And I am not relying on my legal opinions because I don't know what my legal opinions would be, but I'm saying that the cases range in compensation for these claims from somewhere between 100,000 and multiple millions of dollars.  Now, is that translated I'm going to get 50 million for this case, I don't know.  I don't know what I'm going to get.  And I haven't had Jeff McMullin do a breakdown of what, in his conservative thinking, his – his thinking of what this case is worth.  Well, I'm not necessarily going to agree with his assessment of what he thinks it's worth.  I'm not saying that.  So don't construe on the record here that I'm saying if Jeff says it's worth a million bucks, I'm going to take a million dollars to settle it.  That is not what I'm saying.  What I'm saying is I'm going to be seeking a lot of money when we go to trial on this case, and I'm going to be going after the maximum on whatever case I can find the maximum . . . . for perjury, et cetera.
>
> Q.    As you sit here today, you don't know what that amount that you're going to be seeking is?
>
> A.    I haven't asked Jeff [McMullin] to do anything on that yet.

(*Id.* at 19-20.)

Finally, on October 16, 2020, McMullin was deposed.  (Doc. 201-13.)  Critically, McMullin answered "yes" when asked to confirm that he is "*not providing any testimony or opinion on what [Pacesetter's] damages are in this case*" and, instead, was simply "providing an opinion on calculation of 22.4 percent internal rate of return applied over a 25-year period."  (*Id.* at 2, emphasis added.)  McMullin also answered "yes" when asked to confirm that his "opinions are limited solely to your calculations that are Exhibit 19 of the amended complaint."  (*Id.*)

In short, the chronology is as follows: (1) Pacesetter initially disclosed one damages theory ("$63.2 million in lost profit/benefit-of-the-bargain damages") in its complaint and initial MIDP disclosures; (2) Pacesetter then seemed to disavow that theory during the June 2019 discovery hearing and again in its September 2019 communication with Defendants' counsel, stating on both occasions that it was actually seeking "opportunity cost" damages arising from Ball's inability to invest the $400,000 in other ventures; (3) Pacesetter then seemed to revert back to its "$63.2 million in lost profit/benefit-of-the-bargain damages" theory in McMullin's report, which was issued in March 2020; (4) Pacesetter then disavowed its "$63.2 million in lost profit/benefit-of-the-bargain damages" theory for a second time during its Rule 30(b)(6) deposition in July 2020, clarifying that the $63.2 million figure constituted its damages arising from the State Litigation, "separate from the federal case," and that McMullin would be providing a *different* damages computation during his deposition; and (5) finally, during McMullin's deposition in October 2020, McMullin only discussed the "$63.2 million in lost profit/benefit-of-the-bargain damages" calculation but made clear that he wasn't opining that Ball or Pacesetter had actually suffered such damages—he was merely providing a mathematical computation of how a $400,000 investment would grow at an annualized 22.4% rate of return over time.

### 3.   Parties' Arguments Regarding Damages

Although the AgriCare Defendants contend they are entitled to summary judgment for an array of different reasons (Doc. 201 at 8-22), the Court will begin by focusing on their arguments related to the sufficiency of Pacesetter's damages evidence because that

issue is dispositive.  The AgriCare Defendants argue that Pacesetter cannot prove the element of damages for any of its claims against them (*i.e.*, conversion, consumer fraud, fraudulent concealment, tortious interference with contract, unjust enrichment, and aiding and abetting fraud) because Ball testified, during Pacesetter's Rule 30(b)(6) deposition, that the damages calculations set forth in Pacesetter's MIDP disclosures are not the damages Pacesetter is seeking in this action and stated that McMullin would be providing a different calculation, yet McMullin subsequently conceded that he is not offering an opinion on damages in this lawsuit.  (*Id.* at 11-13.)  Additionally or alternatively, the AgriCare Defendants argue that "opportunity costs" cannot form the basis for any damages because Ball testified that the Trust's investment in POG I and POG II did not prevent it from making any other investments.  (*Id.* at 13-14.)

Pacesetter's response to these arguments is not a model of clarity.  As for whether it has abandoned the damages calculations set forth in its MIDP disclosures, Pacesetter seems to argue that Ball's statements during the Rule 30(b)(6) deposition can be disregarded because he "misspoke" and/or he was testifying "as far as he and not Pacesetter is concerned."  (Doc. 226 at 13.)  Alternatively, Pacesetter argues it has proffered sufficient evidence to survive summary judgment because Ball ultimately testified that "he thought" Pacesetter's claims in this case are "very good" and would result in "substantial damages."  (*Id.* at 13-14.)  Finally, Pacesetter sets forth, seemingly for the first time, a new theory of damages that was not disclosed in its MIDP disclosures or during its Rule 30(b)(6) deposition—that because the transfer of orchard management responsibilities to the AgriCare Defendants was illegal, the payments received by the AgriCare Defendants constituted "sums converted from POG I and POG II" that are recoverable as conversion damages.  (*Id.* at 14.)

In reply, the AgriCare Defendants argue that Pacesetter is bound by the admissions made by Ball during the Rule 30(b)(6) deposition and cannot sidestep those admissions by saying that Ball "simply misspoke."  (Doc. 232 at 9.)  The AgriCare Defendants further note that Pacesetter didn't submit a correction sheet after the Rule 30(b)(6) deposition and

1   has never updated its MIDP responses to suggest that the deposition testimony was

2   erroneous.  (*Id.*)   Finally, the AgriCare Defendants contend that Pacesetter's "disclosed

3   damages relate solely to the amount the Ball Trust believes it would have made from its

4   investment in POG I and II through 2031," which damages are both derivative and

5   speculative, and notes that the new theory of conversion damages discussed in Pacesetter's

6   response (*i.e.*, the fees received by the AgriCare Defendants were "sums converted from

7   POG I and POG II") "only further confirm the derivative nature of Pacesetter's claims."

8   (*Id.* at 9-10.)

9                         4.      Analysis Regarding Sufficiency Of Damages Evidence

10          The AgriCare Defendants are entitled to summary judgment due to Pacesetter's

11   failure to offer any cognizable evidence of damages.  If a plaintiff "fail[s] to offer

12   competent evidence of damages, dismissal on summary judgment [is] appropriate with

13   respect to all claims for which [that party bears] the burden of establishing the amount of

14   actual harm . . . suffered."  *Weinberg v. Whatcom County*, 241 F.3d 746, 751 (9th Cir.

15   2001).  A plaintiff "must provide evidence such that the jury is not left to speculation or

16   guesswork in determining the amount of damages to award."  *Id.* (internal quotation marks

17   omitted).  "Thus, [s]ummary judgment is appropriate where [the plaintiff has] no expert

18   witnesses or designated documents providing competent evidence from which a jury could

19   fairly estimate damages."  *Id.* (alteration in original) (internal quotation marks omitted).

20   "Proof of damages is required [in tort claims] because the purpose of a tort action is to

21   compensate for loss sustained and to restore the plaintiff to his former position."  *Id.*

22   (internal quotation marks omitted).

23          In Arizona, "[d]amages that are speculative, remote or uncertain may not form the

24   basis of a judgment.  The speculations, guesses or estimates of witnesses form no better

25   basis of recovery than the speculations of the jury themselves."  *Coury Bros. Ranches, Inc.*

26   *v. Ellsworth*, 446 P.2d 458, 464 (Ariz. 1968).  However, "[u]ncertainty alone does not

27   justify taking away a party's right to have evidence heard by a jury."  *Felder v.*

28   *Physiotherapy Assocs.*, 158 P.3d 877, 886 (Ariz. Ct. App. 2007).  But the *fact* of damage

- 24 -

must still be proved.  *Id.* ("[T]he evidence plainly showed that Felder's career . . . ended as a direct result of the injury.  Consequently, the *fact* of damage was proven.")  *See also Lewin v. Miller Wagner & Co.*, 725 P.2d 736, 741 (Ariz. Ct. App. 1986) ("[A] distinction exists between the quality of proof necessary to establish that damages were sustained and the measure of proof necessary to enable a jury to fix the amount of damages.")  "The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount."  *Lewin*, 725 P.2d at 741 (internal quotation marks omitted).

These principles foreclose Pacesetter's claims against the AgriCare Defendants, who correctly note that the existence of an injury (*i.e.*, the fact of damage) is an essential element of all Pacesetter's claims against them.  *Collins v. First Fin. Servs., Inc.*, 815 P.2d 411, 413 (Ariz. Ct. App. 1991) (conversion);[12] *Peery v. Hansen*, 585 P.2d 574, 577 (Ariz. Ct. App. 1978) (consumer fraud requires someone to have "been damaged by the prohibited practice"); *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 34 (Ariz. 2002) (fraudulent concealment requires "pecuniary loss"); *Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, 1025 (Ariz. 2008) (tortious interference with contract requires "resultant damage"); *Wang Electric, Inc. v. Smoke Tree Resort, LLC*, 283 P.3d 45, 49 (Ariz. Ct. App. 2012) (unjust enrichment requires an "impoverishment");[13] *Ariz. Laborers*, 38 P.3d at 23 (aiding and abetting requires that a "primary tortfeasor . . . commit a tort that causes injury").

Pacesetter does not "have enough evidence of [this] essential element to carry its

---

[12]	*See also J & J Sports Prods., Inc. v. Rubio*, 2013 WL 950031, *2 (D. Ariz. 2013) ("[B]ecause the Court has no evidence of conversion damages, the request for conversion damages will be denied, including that the Court will not award nominal damages.").

[13]	*See also Ruchman & Assocs., Inc. v. Sevitech, LLC*, 2021 WL 234268, *3 (E.D. Va. 2021) ("Damages is an essential element of . . . unjust enrichment claims.  Ruchman's failure to show damages with reasonable certainty entitles SevlTech to summary judgment."); *Coghlan v. Aquasport Marine Corp.*, 73 F. Supp. 2d 769, 771 (S.D. Tex. 1999) ("Since the defendant in an unjust enrichment action is enriched at the expense of the plaintiff, the plaintiff necessarily suffers injury.  Clearly Plaintiffs are required to allege damages for [such] claims.").

ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102.  As discussed in Part II.B.2 above, Pacesetter disclosed one damages theory (*i.e.,* "$63.2 million in lost profit/benefit-of-the-bargain damages") in its complaint and initial MIDP disclosures, then seemed to disavow that theory during subsequent communications with the Court and opposing counsel, then seemed to return to that theory in its expert report, then expressly disavowed that theory for a second time during its Rule 30(b)(6) deposition.  Additionally, although Pacesetter's Rule 30(b)(6) designee stated that Pacesetter's expert (McMullin) would be providing a different calculation, McMullin subsequently testified that he wasn't offering any opinion on damages.  On this record, there would be no point in holding a trial—Pacesetter cannot meet its burden of proving damages.

The arguments set forth in Pacesetter's written response to the AgriCare Defendants' motion are unpersuasive.  There, Pacesetter argues that, "in his [Rule 30(b)(6) deposition, Ball explained the damages in this case, besides the 'fraud' damages, included damages for poor production of the mandarin oranges and nondisclosure of the improper switch in management that resulted in Avinelis and AgriCare managing the mandarin-orange groves" as well as damages for "straight fraud and straight misrepresentation." (Doc. 226 at 12.)  Pacesetter also cites Ball's Rule 30(b)(6) testimony that he thought Pacesetter has a "very good claim," that the "jury will hold for [him]," and that "there will be substantial damages."  (*Id.* at 14.)  But it is not enough at summary judgment for a plaintiff to simply claim that it is seeking "substantial" damages for an injury caused by the defendants.  Under *Celotex*, once the AgriCare Defendants moved for summary judgment on the ground that Pacesetter could not prove damages, Pacesetter was required to put forth evidence of damages.  Ball's Rule 30(b)(6) testimony, which amounted to nothing more than a vague assurance that another individual would, at a future stage of the case, get around to calculating and opining on damages (an assurance that turned out to be inaccurate), was insufficient to meet that burden.  *Cf. Magnetar Techs. Corp. v. Intamin, Ltd.*, 801 F.3d 1150, 1159 (9th Cir. 2015) (affirming grant of summary judgment because plaintiff had not provided "an accurate estimate of the damages [it] suffered," as the

plaintiff's "expert calculation" "did not delve into the merits," "took as a base assumption the projections [the plaintiff] provided, and assumed that they were accurate," so there was "no independent assessment of the validity of [the plaintiff's] projected revenues") (internal quotation marks omitted); *Sport Collectors Guild Inc. v. Bank of Am. NA*, 2018 WL 8260840, *5 (D. Ariz. 2018) ("[S]ince damages are an essential element of both claims, an absence of evidence of damages would mean summary judgment must be granted in BANA's favor.  Together, this means BANA is entitled to summary judgment if Plaintiffs have no admissible evidence of damages resulting from BANA's decision to litigate, rather than arbitrate, the dispute.  And Plaintiffs do not."); *Dema v. Allegiant Air, LLC*, 2017 WL 5983788, *3 (D. Ariz. 2017) (granting summary judgment where plaintiff did "not identify the specific forms of damages to which he claim[ed] entitlement or the material facts that support his demand for damages, no provide[d] any competent testimony or admissible evidence demonstrating that there [was] a triable dispute as to whether he [was] entitled to any relief").

During oral argument, Pacesetter's counsel offered several additional reasons why Pacesetter's damages claim should survive summary judgment.  Most notably, Pacesetter took umbrage with the notion that it had provided inconsistent descriptions of its damages theory, arguing that it had always characterized its claim as one for $63.2 million in benefit-of-the-bargain damages and had never wavered from that characterization.  (*See, e.g.,* 7/13/21 Tr. 4 ["There has always been a consistent theme from Pacesetter's perspective that the base damages it's seeking in this case are benefit of the bargain damages."]; *id.* at 27 ["[T]here hasn't been any variation theory here in the basic damages theory, it's been the same since the original Complaint . . . ."].)  In a related vein, Pacesetter's counsel denied that Pacesetter had ever suggested it was seeking "opportunity cost" damages in lieu of benefit-of-the-bargain damages.  (*Id.* at 32 ["I've never seen anything like that. . . .  I couldn't find anything like that where he [Pacesetter's former counsel] says this is not a benefit of the bargain case, this is an . . . opportunity costs case.  No."].)[14]  With all respect,

---

[14]     If, contrary to Pacesetter's counsel's representations during oral argument, Pacesetter were seeking damages in this case under an "opportunity cost" theory, the

1   these representations are not accurate.  As discussed in extensive detail above, Pacesetter

2   has repeatedly ping-ponged between damages theories in this case.  Among other things,

3   Pacesetter's counsel avowed during a June 2019 hearing that Pacesetter's damages

4   included the "opportunity cost of 12 years of not having the use of that $400,000" (Doc.

5   92 at 16); Pacesetter's August 2019 letter to Defendants specifically referred to Pacesetter's

6   damages as arising from "the substantial opportunity cost sustained by plaintiff being

7   deprived of the $400,000 principal for a period of at least 10-years" (Doc. 195-2 at 2); and

8   Pacesetter's sworn Rule 30(b)(6) testimony in July 2020 clarified that Pacesetter was *not*

9   seeking its originally disclosed claim for $63.2 million in benefit-of-the-bargain damages,

10  because those damages were "separate from the federal case" (Doc. 201-9 at 18-19).

11  Pacesetter cannot evade these critical, inconsistent representations by pretending they don't

12  exist.

13          During oral argument, Pacesetter also accused the Court of misquoting the portion

14  of McMullin's deposition in which McMullin declined to offer an opinion on damages.

15  (7/13/21 Tr. 7-8 ["[W]hat the Court put into its . . . tentative ruling . . . [is that] McMullin

16  testified that he is, quote, not providing any testimony or opinion on what Pacesetter

17  damages are in this case, end quote.  That is false.  That is absolutely wrong.  That did not

18  happen[]."].)  This accusation is misplaced.  The relevant passage is quoted in full below:

19      Q.      Now, Mr. McMullin, as I understand your testimony today . . . you
20              are not providing any testimony or opinion on what plaintiff's
                damages are in this case.  You're providing an opinion on calculation
21              of 22.4 percent internal rate of return applied over a 25-year period,
                correct?
22
        A.      Yes.
23
        Q.      So your testimony opinions are limited solely to your calculations that
24

25  AgriCare Defendants would be entitled to summary judgment on that claim.  This is
    because Ball admitted during Pacesetter's Rule 30(b)(6) deposition that, at the time of his
26  original $400,000 investment in POG I and POG II, he had "plenty of money on hand," he
    could and did "make investments into other things," and the POG I and POG II investments
27  "didn't keep [him] from making other investments" and "didn't keep [him] awake at night,
    either."  (Doc. 201-9 at 21.)  These concessions undermine the notion that Ball (and
28  Pacesetter) sustained any opportunity costs from not having the $400,000 to put toward
    other investments.

1

are Exhibit 19 of the amended complaint, correct?

2

A.      Yes, as stated in Exhibit 1.

(Doc. 201-13 at 2.)   Put simply, there was no misquotation—McMullin provided an unqualified answer of "yes" when asked to confirm that he wasn't offering an opinion on damages and was simply offering a series of mathematical calculations.

Pacesetter also asserted, during oral argument, that the Court's reliance on the concessions made by Ball and McMullin during their respective depositions (*i.e.*, Ball's concession that the $63.2 million damage claim constituted Pacesetter's damages in the State Litigation, "separate from the federal case," and McMullin's concession that he was not offering any opinion on damages in this case) was inappropriate because the Court had failed to view the challenged statements in the light most favorable to Pacesetter, the non-movant.   (7/13/21 Tr. 8 ["[S]omebody who had an ax to grind against Pacesetter could say, well, I'm going to take an inference [regarding McMullin's deposition testimony] and I'm going to look at that in the light most unfavorable to Pacesetter.   But this Court has no axes . . . .   And it's duty is to look at the evidence in the light most favorable . . . and take every inference in favor of Pacesetter . . . ."]; *id.* at 12 ["Because looking at the evidence most favorably to Pacesetter . . . what [Ball is] saying is that McMullin is going to tell me he did the calculations . . . and would do [them] again in the future."].)   But viewing the facts in the light most favorable to the non-movant at summary judgment does not require twisting the evidence into a more favorable shape, nor does it mean that the Court may blind itself to unambiguous concessions made by a party's Rule 30(b)(6) designee or its proffered expert.   *Cf. L.F. v. Lake Wash. Sch. Dist. #414*, 947 F.3d 621, 625 (9th Cir. 2020) ("[A] court's obligation at the summary judgment stage to view the evidence in the light most favorable to the non-movant does not require that it ignore undisputed evidence produced by the movant."); *Nordé v. P.F. Chang's China Bistro, Inc.*, 2017 WL 4918532, *3 n.4 (E.D. Mich. 2017) ("Reviewing facts in the light most favorable to the Plaintiffs does not require the Court to ignore uncontroverted testimony given by the Plaintiffs."); *Harper v. Santos*, 2015 WL 1510413, *7 n.3 (S.D. Ill. 2015) ("While this Court must accept all facts

1   in a light most favorable to Plaintiff, it is not required to accept all of Plaintiff's arguments

2   that misconstrue the evidence."); *Del Valle v. Marine Transp. Lines, Inc.*, 582 F. Supp.

3   573, 576-77 (D.P.R. 1984) ("When we look at the alleged facts in the light most favorable

4   to the plaintiff in order to determine how to rule on defendant's motion for summary

5   judgment, we do not turn off the lamp to blind ourselves to plaintiff's own admissions.").

6   The Court also notes that Pacesetter had an opportunity to clarify or explain the concessions

7   at issue (and/or provide elucidating evidence) when filing its response to the AgriCare

8   Defendants' motion and failed to do so.  *Cf. Lira v. PNK (Lake Charles), LLC*, 2009 WL

9   2900719, *5 (W.D. La. 2009) ("While we view the evidence before us in the light most

10  favorable to the non-moving party, we do not ignore gaping holes in the evidence which

11  plaintiff has neglected to correct, even after being served with a motion for summary

12  judgment.").

13          Finally, during oral argument, Pacesetter provided an array of case and treatise

14  citations intended to establish the legal proposition that, "in Arizona the base measure, the

15  settle[d] measure of damages for a fraud case is benefit of the bargain damages."  (7/13/21

16  Tr. 4-5.)  This argument is something of a red herring.  Even assuming that a different

17  plaintiff, on a different record, would be entitled to survive summary judgment in a case

18  involving a claim for benefit-of-the-bargain damages arising from a failed investment, the

19  point here is that Pacesetter has not proffered any cognizable *evidence* that it suffered such

20  damages in this case—its Rule 30(b)(6) designee expressly disavowed any intent to seek

21  such damages and its expert stated that he wasn't providing an opinion on damages.

22          Accordingly, the Court grants summary judgment to AgriCare.[15]

23                      5.    Statute Of Limitations

24          Although the tentative order only addressed the AgriCare Defendants' entitlement

25  to summary judgment on the issue of damages, defense counsel noted during oral argument

26  _____

27  [15]    Because Pacesetter's claims fail, Pacesetter's claim for punitive damages also fails.
    *See, e.g.*, *Quiroga v. Allstate Ins. Co.*, 726 P.2d 224, 226 (Ariz. Ct. App. 1986) ("[T]he
    right to an award of punitive damages must be grounded upon a cause of action for actual

28  damages."); *Brill v. Lawrence Transp. Co.*, 2018 WL 6696815, *2 (D. Ariz. 2018) ("Under
    Arizona law, a separate cause of action does not exist for punitive damages . . . .").

1    that, because nearly all of Pacesetter's cited summary judgment evidence has been deemed

2    inadmissible, the absence of conflicting evidence meant that Defendants are entitled to

3    summary judgment on other grounds, too.  (7/13/21 Tr. 44 ["[N]ow that the Court has

4    excluded the vast majority of the Ball declaration, there is simply nothing that is left to

5    support their claims . . . .  So even putting the damages issue aside, . . . they haven't met

6    any of the other burdens."].)  The Court agrees and thus supplements its tentative order by

7    addressing one of the additional grounds on which the AgriCare Defendants moved for

8    summary judgment—the statute of limitations.

9          Specifically, the AgriCare Defendants argue that the "Ball Trust clearly was aware

10   each and every year that it invested with POG I and II that it was not receiving its

11   anticipated return, and certainly was aware no later than the Court ordered rescission in

12   March 2016," so "Pacesetter's claims are barred by their applicable statutes of

13   limitations—A.R.S. § 12-542 (two years for tort claims) and A.R.S. § 12-541 (1 year for

14   consumer fraud)."  (Doc. 201 at 12.)  Pacesetter responds that, because Ball did not

15   discover "the existence and nature of the joint concealment and joint fraudulent conduct

16   that defendants perpetrated against the Trust" until March 2018, Pacesetter's claims are

17   timely because they were tolled under Arizona's discovery rule.  (Doc. 226 at 14-17.)

18   Pacesetter also argues that, even though the AgriCare Defendants raised a statute-of-

19   limitations defense in their answer, they subsequently waived that defense by "actively

20   litigat[ing] this action, filing motions, conducting extensive discovery, and voluntarily

21   participating in many long depositions."  (Id.)  The AgriCare Defendants reply that, as

22   Pacesetter "admitted in the Response, the Ball Trust was aware as early as 2006 that it was

23   not receiving its anticipated return," so any claims would not fall within the statute of

24   limitations.  (Doc. 232 at 11.)  They also contend they have not waived their statute-of-

25   limitations defense because, as Pacesetter admitted, they raised it as an affirmative defense

26   in their answer, and the "fact that [the AgriCare Defendants] participated as Defendants in

27   this case and conducted discovery to attempt to discern the factual and evidentiary basis

28   for Pacesetter's claims . . . is not a waiver by conduct or otherwise."  (Id.)

#### a.     Waiver

The AgriCare Defendants have not waived their statute-of-limitations defense.  As the AgriCare Defendants note, and Pacesetter admits, the AgriCare Defendants raised a statute-of-limitations defense in their answer.  (Doc. 130 at 28 ¶ 4.)  Nor have the AgriCare Defendants waived their ability to raise that defense by subsequently participating in this action.  "Most defenses . . . may be waived as a result of the course of conduct pursued by a party during litigation."  *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir. 1998).  However, the Ninth Circuit has permitted defendants to raise a statute-of-limitations defense for the first time in a motion for summary judgment if, as here, there was no prejudice to the plaintiff.  *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984); *Healy Tibbitts Constr. Co. v. Ins. Co. of N. Am.*, 679 F.2d 803, 804 (9th Cir. 1982).

#### b.     Merits

Although Pacesetter doesn't contest the AgriCare Defendants' assessment of the applicable statutes of limitations, it appears that not all of Pacesetter's claims fall under one- or two-year limitations periods.  *See, e.g.*, *San Manuel Copper Corp. v. Redmond*, 445 P.2d 162, 166 (Ariz. Ct. App. 1968) (unjust enrichment has a four-year statute of limitations under A.R.S. § 12-550).  At any rate, whether analyzed under a one-, two-, or four-year statute of limitations, Pacesetter's claims are time-barred.  Indeed, Pacesetter doesn't dispute that its claims, absent application of the discovery rule, fall outside the statute of limitations.  (Doc. 226 at 14-16.)  Thus, the statute-of-limitations analysis turns on whether there is sufficient evidence in the record to support application of the discovery rule.

In Arizona, courts apply the discovery rule to determine when a claim accrues, so a "cause of action does not accrue until the plaintiff knows or with reasonable diligence should know the facts underlying the cause."  *Lytikainen v. Schaffer's Bridal LLC*, 409 F. Supp. 3d 767, 776 (D. Ariz. 2019) (internal quotation marks omitted).  "When discovery occurs and a cause of action accrues are usually and necessarily questions of fact for the jury."  *Doe v. Roe*, 955 P.2d 951, 961 (Ariz. 1998).  However, the "burden of establishing

that the discovery rule applies to delay the statute of limitations rest[s] on [the] plaintiff. Once the defendant has established a *prima facie* case entitling him to summary judgment [on a statute of limitations defense], the plaintiff has the burden of showing available, competent evidence that would justify a trial." *Logerquist v. Danforth*, 932 P.2d 281, 284 (Ariz. Ct. App. 1996) (third alteration in original) (citations and internal quotation marks omitted). *See also O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002) ("Because Plaintiffs have the burden of proof at trial to establish that they are entitled to the benefit of the discovery rule, to defeat summary judgment they were required to come forward with evidence establishing a triable issue of fact with regard to whether the discovery rule applies.").

The only pieces of evidence on which Pacesetter relies to support application of the discovery rule are portions of Ball's declaration. But as discussed in extensive detail above, those portions of the declaration are inadmissible and not properly before the Court. Put simply, Ball's vague allusions to unspecified discovery materials he obtained on unspecified dates during the State Litigation, which materials Pacesetter has failed to proffer or place in the record, do not qualify as competent evidence for summary judgment purposes. Pacesetter does not argue that its claims otherwise fall within any statute of limitations, nor could a reasonable jury on this record conclude that the discovery rule applies to Pacesetter's claims. *Cf. O'Connor*, 311 F.3d at 1157-58 (affirming grant of summary judgment on statute of limitations where plaintiffs "failed to offer *evidence* from which a reasonable trier of fact could conclude that they had met their burden of explaining how and when they discovered their claims"); *Foster v. Ocwen Loan Servicing LLC*, 2018 WL 6738847, *3 (D. Ariz. 2018) ("Under the 'discovery rule,' in order to successfully establish that [the claims] are not barred by the limitations period, Plaintiffs need to present evidence that they did not know and could not have known, with the exercise of reasonable diligence, the facts underlying the cause of action. Plaintiffs have not presented any such evidence, or even argument.") (citation omitted); *Breeser v. Menta Grp., Inc., NFP*, 934 F. Supp. 2d 1150, 1159-60 (D. Ariz. 2013) (granting summary judgment because plaintiffs

- 33 -

1   had not "proffered sufficient evidence to establish that the discovery rule applie[d]" and

2   had "proffered no competent evidence that would justify a trial"); *Logerquist*, 932 P.2d at

3   284 ("That common law [discovery] rule, *if sufficient evidence supporting its application

4   is presented*, may delay commencement of the time period within which suit must be

5   filed.") (emphasis added).

6        C.   **Bassetti**

7             1.   Relevant Undisputed Facts

8        Bassetti is currently the Chief Operating Officer of Duda Farm Fresh Foods, Inc.

9   ("DFFF"), which is a wholly-owned subsidiary of A. Duda & Sons, Inc. ("Duda & Sons")

10  (Doc. 203-1 ¶ 3.)[16]  Before assuming this role, he served as the Vice President of Fresh

11  Citrus Sales and the Senior Vice President of Sales, Marketing, and Development.  (*Id.*)

12       In 2002, Duda & Sons entered into a Master Marketing Agreement ("MMA") with

13  Craig Kapreilian, under which Duda & Sons agreed to market and sell Kapreilian's citrus

14  products.  (Doc. 203-1 ¶ 5.)  DFFF "assumed the sales and marketing function of [Duda &

15  Sons] for the fresh citrus of [Kapreilian]."  (*Id.*)  In 2008, Kapreilian assigned the MMA to

16  Citrines Operations, Inc. ("Citrines"), which managed "all production, packing and

17  marketing of certain crops including the mandarins produced" in POG I and POG II.  (*Id.*

18  ¶ 6.)  DFFF "marketed and sold the mandarins produced in [these] orchards for Citrines."

19  (*Id.*)  However, "DFFF ceased marketing and selling mandarins grown by POG I and II in

20  2016."  (*Id.* ¶ 18.)

21       In his role at DFFF, Bassetti "had all the authority to make the decisions regarding

22  the marketing and sales of the mandarins," including the "authority to sign contracts related

23  to the sales and marketing without approval from [his] superior, Daniel Duda."  (*Id.* ¶ 8.)

24  Nevertheless, Bassetti did not "prepare, draft, or assist in the preparation of any documents

25  provided to investors or potential investors in POG I and II" and was not "party to any

26

27  _____

    [16]     Pacesetter does not meaningfully address or otherwise respond to the facts outlined
    in this section, so the Court considers them undisputed.  *See* Fed. R. Civ. P. 56(e).
28  Pacesetter also includes facts based on Ball's declaration (Doc. 228 at 4-6), which the Court
    will not consider for the reasons discussed above.

1   agreement with Judson Ball, his Trust and/or Pacesetter." (*Id.* ¶¶ 7, 13.)

2                2.    Parties' Arguments Regarding Damages

3          Although Bassetti contends he is entitled to summary judgment for an array of

4   different reasons (Doc. 203 at 7-25), the Court will begin by focusing on his arguments

5   related to the sufficiency of Pacesetter's damages evidence because that issue (as it was

6   with respect to the AgriCare Defendants) is dispositive.  In a nutshell, Bassetti contends

7   that Pacesetter "has no disclosed, admissible evidence of its damages." (*Id.* at 23,

8   capitalization omitted.)  Bassetti elaborates that the damages Pacesetter disclosed in its

9   MIDP disclosures used "the same information previously used in the state court action":

10  $63 million, with a "range of $12-15 million as a 'conservative return' estimate." (*Id.*)

11  Bassetti argues the disclosed damages are "simply a calculation [by Ball's accountant] and

12  not damages" and because they are "identical to their form in the state court action," they

13  "do not take into account the rescission of the investment, the reimbursement of the

14  $400,000 Plaintiff invested, or the portion of the attorney's fees already reimbursed." (*Id.*

15  at 24.)  Bassetti also argues that Ball "testified that Pacesetter's damages [in this lawsuit]

16  had not been calculated" and could not be based on "perceived opportunity cost[s]" because

17  "Ball testified that he did not lose any opportunities by investing the $400,000." (*Id.*)  Last,

18  Bassetti argues that Pacesetter did not provide "any evidence of the proper measure of

19  damages for each of its claims" and cannot establish an entitlement to punitive damages.

20  (*Id.* at 24-25.)

21         In response, Pacesetter concedes that "Ball admits he himself—as far as he and not

22  Pacesetter is concerned—does not know the extent of the damages because the

23  circumstances of this matter are so 'fraudulent and misrepresentative.'" (Doc. 228 at 19,

24  citation omitted.)  Nevertheless, Pacesetter argues that "Ball testified that he thought he

25  had a very good claim, that the jury would hold for him, and that he thought there will be

26  substantial damages." (*Id.*, internal quotation marks omitted.)  As for its MIDP disclosures,

27  Pacesetter argues that the "disclosure on the anticipated damages controls." (*Id.* at 20.)  As

28  for punitive damages, Pacesetter argues that "[w]hether punitive damages are proper is a

1    jury question" and that a "defendant's concealment of its misconduct is relevant to the

2    determination of punitive damages, as is the fact that a defendant's actions were driven by

3    its self-interest." (*Id.* at 20-21, citation omitted.)

4       In his original reply, Bassetti did not meaningfully address Pacesetter's damages-

5    related arguments.  (Doc. 233.)  Likewise, the bulk of Pacesetter's supplemental response

6    to Bassetti's motion is directed at the aiding and abetting claim (Doc. 251-1 at 16-19

7    [redlined version of the supplemental response]), not damages, so the Court need not

8    address it or Bassetti's revised reply (Doc. 254).

9                    3.   Analysis Regarding Sufficiency Of Damages Evidence

10      The analysis as to Bassetti mirrors the analysis as to the AgriCare Defendants.

11   Damages are an essential element of all of Pacesetter's claims, Bassetti has met his

12   summary judgment burden of showing that Pacesetter cannot establish the fact of damages

13   or its entitlement to any alleged damages, and Pacesetter has not proffered any cognizable

14   evidence in response.  *Cf. Magnetar Techs. Corp.*, 801 F.3d at 1159; *Sport Collectors*

15   *Guild*, 2018 WL 8260840 at *5; *Dema*, 2017 WL 5983788 at *3.  And, because Pacesetter's

16   claims against Bassetti fail, Pacesetter's claim for punitive damages against Bassetti

17   likewise fails.

18                   4.   Other Bases For Summary Judgment

19      Although the tentative order only addressed Bassetti's entitlement to summary

20   judgment on the issue of damages, the Court now supplements its tentative ruling (as

21   requested by defense counsel during oral argument and based on the evidentiary rulings set

22   forth in Part I above) by addressing one of the additional grounds on which Bassetti moved

23   for summary judgment—the absence of evidence that Bassetti has wronged Ball (or

24   Pacesetter) in any way, other than unsupported allegations and argument.

25      Bassetti met his initial *Celotex* burden of showing that Pacesetter has no evidence

26   to support its claims against him and Pacesetter failed to submit any cognizable evidence

27   in response.  For example, for its conversion claim, Pacesetter relies on allegations, not

28   evidence, that Bassetti is a joint tortfeasor liable for other entities' conversion of the

$400,000 investment.  (Doc. 251 at 9 ["Pacesetter alleged that all the defendants were liable for acts of conversion that caused the trust to suffer consequential damages."].)  For its consumer fraud claim, Pacesetter offers the unsupported argument that "one can reasonably infer that Bassetti was surely aware" of several of Pacesetter's allegations in this case but offers no *evidence* to support this point (or any other).  (*Id.* at 10-11.)  For its fraudulent concealment claim, Pacesetter again relies on the unsupported argument that Bassetti was "at the center of everything," that one could "reasonably infer" that Bassetti knew about the alleged events at the heart of this litigation, and that Bassetti "actively cooperated with the other defendants in the conduct of the mandarin-orange scheme," but again provides no evidence.  (*Id.* at 12-13.)  Pacesetter doesn't even respond to Bassetti's arguments concerning the tortious interference claim.  (*See generally id.*)  For its unjust enrichment claim, Pacesetter curiously argues that the AgriCare Defendants "enriched themselves at the expense of the Trust," but nowhere does Pacesetter argue or provide any evidence that Bassetti was unjustly enriched.  (*Id.* at 13-14.)  Pacesetter's aiding and abetting claim falls alongside its others.  *See, e.g.*, *Avrahami v. Clark*, 2020 WL 2319922, *5 (D. Ariz. 2020) ("In Arizona, both aiding and abetting and civil conspiracy are derivative causes of action that first require the finding of an underlying violation."); *Vicente v. City of Prescott*, 2012 WL 1438695, *6 (D. Ariz. 2012) ("Plaintiff's complaint appears to plead aiding and abetting and conspiracy as standalone claims, which they clearly are not under Arizona law.") (citation omitted).  No reasonable jury could find in Pacesetter's favor on this record.

D. **Kapreilian Defendants**

1. Parties' Arguments

Although the Kapreilian Defendants contend they are entitled to summary judgment for an array of different reasons (Doc. 202 at 5-17), the Court will focus on their statute-of-limitations argument because it is dispositive.  The Kapreilian Defendants argue that Pacesetter's claims are time-barred because they "were terminated from all POGS operations . . . in either 2009 or 2011" yet this lawsuit wasn't filed until 2019, well after the applicable statutes of limitations (either four or six years) had expired.  (*Id.* at 16-17.)

1    Pacesetter responds that its claims aren't time-barred because (1) Ball only
2    discovered the basis for those claims in March 2018, which delayed the accrual of the
3    statute of limitations, and (2) in any event, the Kapreilian Defendants waived any statute-
4    of-limitations defense by not raising it in their answer.  (Doc. 227 at 16-19.)

5    In reply, the Kapreilian Defendants disagree that they waived their statute-of-
6    limitations defense (Doc. 234 at 9-11) and argue that Pacesetter's sole proffered evidence
7    of delayed accrual (Ball's declaration) is largely inadmissible (*id.* at 4-8).

8                          2.    <u>Analysis</u>

9                          **a.    Waiver**

10    Pacesetter argues that, because the Kapreilian Defendants failed to assert the statute
11    of limitations as an affirmative defense in their answer to the TAC, the Kapreilian
12    Defendants are unable to assert such a defense now.  (Doc. 227 at 16.)  The Kapreilian
13    Defendants respond that Pacesetter "was not prejudiced.  Whether raised in an affirmative
14    defense or in the MSJ cannot change that."  (Doc. 234 at 10-11.)

15    The Kapreilian Defendants did not waive the ability to assert a statute-of-limitations
16    defense.  As discussed in Part II.B.5.a above, the Ninth Circuit[17] has "liberalized the
17    requirement that affirmative defenses be raised in a defendant's initial pleading."  *Rivera*,
18    726 F.2d at 566.  In *Healy Tibbitts*, the Ninth Circuit held that a defendant may raise a
19    defense "in a motion for summary judgment, whether or not it was specifically pleaded as
20    an affirmative defense, at least where no prejudice result[ed] to the plaintiff."  679 F.2d at
21    804.  Similarly, in *Rivera*, the court held that the "failure to raise the defense of the statute
22    of limitations in [an] initial pleading does not preclude [a defendant] from making a motion
23    for summary judgment based on that defense" where there is no prejudice to the plaintiff.
24    726 F.2d at 566.

25    Here, Pacesetter has not claimed that it would suffer any surprise or unfair prejudice

---

26    [17]    Pacesetter argues that the issue of waiver is one of Arizona law.  (Doc. 227 at 10-
27    11.)  This is incorrect.  "While state law defines the nature of [affirmative] defenses, the
      Federal Rules of Civil Procedure provide the manner and time in which defenses are raised
28    and when waiver occurs."  *Healy Tibbitts Constr. Co. v. Ins. Co. of N. Am.*, 679 F.2d 803,
      804 (9th Cir. 1982).

1   from allowing the Kapreilian Defendants to raise a statute-of-limitations defenses at the
2   summary judgment stage.  Nor could Pacesetter credibly make such a claim—it was on
3   notice that the statute of limitations might be at issue in this case because the other
4   defendants raised the statute of limitations as an affirmative defense in their respective
5   answers.  (Doc. 130 at 28 ¶ 4 [AgriCare Defendants]; Doc. 131 at 5 ¶ 1 [Bassetti].)

6        Tellingly, during oral argument, Pacesetter conceded that it would have ultimately
7   lost on the statute-of-limitations issue even if it had been aware of the issue from the outset
8   of the case and had pursued related discovery before the case reached the summary
9   judgment stage.  (7/13/21 Tr. 41 [Q. "How would it have played out differently if they had
10  raised it in their Answer, just like the other defendants raised in their Answer and you had
11  known about it from the beginning"?  A. "Well, we would have dealt with it and probably
12  lost, quite frankly.").  This is not the sort of prejudice that the Ninth Circuit had in mind in
13  *Rivera* and *Healy Tibbitts*.  It is only where the late assertion of a statute-of-limitations
14  defense is *unfairly* prejudicial to a plaintiff—such as where the plaintiff failed to pursue
15  related discovery based on the belief that it was not facing a statute-of-limitations
16  defense—that a finding of waiver might be warranted.  After all, the assertion of a valid
17  statute-of-limitations defense is always prejudicial to the plaintiff.  *Cf. United States v.*
18  *Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) ("Relevant evidence is inherently prejudicial;
19  but it is only unfair prejudice . . . which permits exclusion of relevant matter under Rule
20  403.") (citation omitted).  A finding of prejudice (and resulting waiver) is not warranted on
21  this record.  *See, e.g., Bergdale v. Countrywide Bank FSB*, 2014 WL 2885473, *5 (D. Ariz.
22  2014) ("[A] defendant may even raise an affirmative defense for the first time in a motion
23  for summary judgment so long as it does not result in prejudice to the plaintiff.").

### b.    Merits

25       On the merits, the Kapreilian Defendants argue they "were terminated from all
26  POGS operations . . . in either 2009 or 2011."  (Doc. 202 at 17.)  Thus, even assuming the
27  "longest statutory claim periods" of four years, A.R.S. § 12-550 (general statute of
28  limitations), and six years, *id.* § 12-548 (claims arising out of contract), the Kapreilian

1    Defendants contend this lawsuit's filing on January 26, 2019, came too late.  (*Id.*)

2         Pacesetter doesn't dispute that the events giving rise to its claims against the

3    Kapreilian Defendants occurred outside the relevant limitations periods.  Instead, it argues

4    that the defendants' fraudulent concealment delayed the accrual of the statute of limitations

5    because Ball "did not realize the existence and nature of the joint concealment and

6    fraudulent conduct the defendants had perpetrated against the Trust" until "about March

7    2018," during the discovery process in the State Litigation.  (Doc. 227 at 16-18.)  Pacesetter

8    further argues that claim accrual is a factual question for the jury and is thus improper to

9    resolve at this juncture.  (*Id.*)  The Kapreilian Defendants don't address these arguments in

10   much detail in their reply, only arguing that "even assuming a 6-year statute of limitations,

11   the Kapreilians' involvement in POGS ceased no later than 2013."  (Doc. 234 at 10.)

12        As an initial matter, although Pacesetter doesn't contest the Kapreilian Defendants'

13   assessment of the applicable statutes of limitations, it appears that, with the exception of

14   the unjust enrichment claim, all of Pacesetter's claims fall under other, shorter statutes of

15   limitations.  *See, e.g.*, A.R.S. § 15-542(5) (two-year statute of limitations for "detaining the

16   personal property of another and for converting such property to one's own use"); *Perez v.*

17   *Medtronic Inc.*, 2017 WL 11610298, *2 (D. Ariz. 2017) (one-year statute of limitations

18   under § 12-541(5) for consumer fraud claim); *Coulter v. Grant Thornton, LLP*, 388 P.3d

19   834, 838 (Ariz. Ct. App. 2017) (two-year statute of limitations for breach of fiduciary duty

20   and negligent misrepresentation claims); *Rindliscbacher v. Steinway & Sons Inc.*, 497 F.

21   Supp. 3d 479, 492-93 (D. Ariz. 2020) (predicting three-year statute of limitations for

22   constructive fraud); A.R.S. § 12-543(3) (three-year statute of limitations for "relief on the

23   ground of fraud or mistake"); *Clark v. Airesearch Mfg. Co. of Ariz., Inc.*, 673 P.2d 984,

24   987 (Ariz. Ct. App. 1983) (two-year statute of limitations for tortious interference with

25   contract claim); *YF Tr. v. JP Morgan Chase Bank, N.A.*, 2008 WL 821856, *7 (D. Ariz.

26   2008) ("With respect to Plaintiff's claims for aiding and abetting fraud . . . , the statute of

27   limitations is the same as for the underlying action[].  A claim of fraud must be made within

28   three years after the action accrues.").  At any rate, because the Kapreilian Defendants have

1    established that the events giving rise to Pacesetter's claims against them occurred outside

2    the statute of limitations, the Kapreilian Defendants have met their initial burden of

3    showing that Pacesetter's claims are, absent application of the discovery rule, time-barred.

4    The burden thus shifts to Pacesetter to proffer evidence suggesting that the discovery rule

5    applies.  Pacesetter has not met that burden.  As discussed with the regard to the AgriCare

6    Defendants, Ball's declaration—which is the only evidence on which Pacesetter relies to

7    establish that the discovery rule applies—is insufficient.  Pacesetter does not argue that its

8    claims otherwise fall within any statute of limitations, nor could a reasonable jury on this

9    record conclude that the discovery rule applies to Pacesetter's claims.  *Cf. O'Connor*, 311

10   F.3d at 1157-58; *Foster*, 2018 WL 6738847, at *3; *Breeser*, 934 F. Supp. 2d at 1159-60;

11   *Logerquist*, 932 P.2d at 284.[18]

12   III.    Motion For Leave To Amend

13          Pacesetter seeks leave to amend its complaint to add several new defendants,

14   reinstate certain previously dismissed defendants, and add allegations that these defendants

15   aided and abetted the allegedly tortious conduct that is the subject of this action.  (Doc. 256

16   at 2-4.)

17          This motion is denied.  In the Rule 16 scheduling order, the Court stated that "[n]o

18   motions to join parties, amend pleadings or fil[e] supplemental pleadings shall be filed."

19   (Doc. 127 at 1.)  After a deadline established in a Rule 16 scheduling order expires, a party

20   seeking to amend its pleading must satisfy Rule 16's standards.  *Johnson v. Mammoth*

21   *Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992).  *See also Leibel v. City of Buckeye*,

22   2019 WL 4736784, *2 (D. Ariz. 2019).  Because those standards apply here, Pacesetter

23   must show "good cause" to amend its complaint.  Fed. R. Civ. P. 16(b)(4).  "Rule 16(b)'s

24   'good cause' standard primarily considers the diligence of the party seeking the

25   amendment. . . .  [C]arelessness is not compatible with a finding of diligence and offers no

26   reason for a grant of relief. . . .  [T]he focus of the inquiry is upon the moving party's

27

28   —————————————————
     [18]    Because the Court grants summary judgment on all three motions, the Court need
     not address the parties' motions to exclude various expert witnesses (Docs. 195, 196, 198).

1    reasons for seeking modification.  If that party was not diligent, the inquiry should end."

2    *Johnson*, 975 F.2d at 609.  Although "[d]iscovery of new information after the deadline for

3    amended pleadings passes is a potential basis for good cause to modify the scheduling

4    order," "[a] party must also show diligence in seeking amendment of the scheduling order."

5    *Story v. Midland Funding LLC*, 2016 WL 5868077, *2 (D. Or. 2016).   To determine

6    whether a party exercised diligence, courts typically consider the amount of time between

7    the discovery of the new information and when the party requested leave to amend.

8    *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087-88 (9th Cir. 2002).

9          Pacesetter's basis for amendment is that it discovered new information during the

10   reopened deposition of Dan Duda that made it "apparent" that the new defendants had

11   aided and abetted tortious conduct.  (Doc. 256 at 2-4.)  Pacesetter has not established that

12   it was diligent in seeking leave to amend under these circumstances—the reopened

13   deposition occurred on April 23, 2021, almost two months before Pacesetter filed its

14   amendment request on June 15, 2021.  *See, e.g.*, *MiCamp Sols. LLC v. Nat'l Processing

15   LLC*, 2021 WL 289661, *3 (D. Ariz. 2021) ("That Plaintiff filed the motion nearly one

16   month after [discovering relevant facts] does not indicate diligence."); *Ogier v. KC Care,

17   LLC*, 2019 WL 3210089, *3 (D. Or. 2019) (finding lack of diligence where party waited

18   just over two months and noting that "Courts have held that . . . waiting two months after

19   discovery of new facts to file a motion for leave to amend does not constitute diligence

20   under Rule 16").

21         Underscoring Pacesetter's lack of diligence is the fact that, before it filed its

22   amendment request on June 15, 2021, it filed two different motions based on this same

23   newly discovered information from Duda's deposition: (1) a motion for leave to

24   supplement its summary judgment responses (Doc. 244), which was filed April 30, 2021,

25   and (2) a motion for sanctions against Duda and others (Doc. 247), which was filed on May

26   12, 2021.  That Pacesetter sat on this information, and pursued other avenues of recourse

27   based upon it, for almost two months before filing the amendment request belies any notion

28   that Pacesetter was diligent in seeking amendment.

Although the inquiry could end with Pacesetter's lack of diligence, the Court would decline to grant leave to amend even if Pacesetter had been diligent.  The Court has granted summary judgment in favor of all current defendants and current claims, and although this "does not preclude [a] plaintiff from seeking leave to file an amended complaint," "post-summary judgment amendments are disfavored."   1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 15, at 447 (2021).  Permitting Pacesetter to amend its complaint at this stage would be an exercise in futility because of the grounds on which the Court granted summary judgment—Pacesetter has failed to produce evidence of damages and other elements of its claims, its claims are otherwise barred by the statute of limitations, and it has failed to provide any admissible evidence that the accrual of the statute of limitations has been delayed.  Additionally, it appears that Pacesetter primarily seeks to add the new defendants as aiders-and-abettors of the allegedly tortious conduct set out in the other claims, but given that the Court has granted summary judgment on all of those claims, there are no remaining claims the proposed new defendants could have aided and abetted.  A claim for aiding and abetting is not a standalone claim under Arizona law. *See, e.g.*, *Avrahami*, 2020 WL 2319922 at *5; *Vicente*, 2012 WL 1438695 at *6.

Accordingly,

**IT IS ORDERED** that:

1. The AgriCare Defendants' motion for summary judgment (Doc. 201) is **granted**.

2. The Kapreilian Defendants' motion for summary judgment (Doc. 202) is **granted**.

3. Bassetti's motion for summary judgment (Doc. 203) is **granted**.

4. The motions to exclude experts (Docs. 195, 196, 198) are **denied as moot**.

5. The motion for leave to file a Fourth Amended Complaint (Doc. 256) is **denied**.

6. The Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 26th day of July, 2021.

Dominic W. Lanza
United States District Judge