**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pacesetter Consulting LLC, | No. CV-19-00388-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Herbert A. Kapreilian, et al., | |
| Defendants. | |

In July 2021, the Court issued an order granting summary judgment against Plaintiff Pacesetter Consulting LLC ("Pacesetter") on all of its claims. (Doc. 280.) The summary judgment motions had been filed by three different groups of defendants—(1) AgriCare and Tom Avinelis (the "AgriCare Defendants"); (2) Eastside Packing Inc., Fruit World Nursery Inc., Craig Kapreilian, and Herbert Kapreilian (together, the "Kapreilian Defendants"); and (3) Mark Bassetti ("Bassetti")—who sought summary judgment on different, but sometimes overlapping, grounds. (*Id.*) Now pending before the Court are motions for attorneys' fees and costs by the Kapreilian Defendants (Doc. 292) and Bassetti (Doc. 293). For the following reasons, both motions are denied.

**BACKGROUND**

The winding history of this case is set out in prior orders. (Docs. 128, 152, 160, 224, 235, 263, 280.) In a nutshell, in 2004, the Judson C. Ball Revocable Trust (the "Trust"), by and through its trustee Judson C. Ball ("Ball"), invested in a mandarin orange project run by Phoenix Orchard Group I, L.P. ("POG I") and Phoenix Orchard Group II,

L.P. ("POG II"). (Doc. 280 at 1-2.) The Trust invested $200,000 in each entity. (*Id.*)

In 2015, the Trust brought a lawsuit in Maricopa County Superior Court against POG I, POG II, and others, seeking rescission of the Trust's interests in the orchard groups. (*Id.* at 2.) In a March 2016 order, the state court determined that rescission was appropriate and entered a declaratory judgment to that effect. (*Id.*) Although the Trust pursued tort claims after the rescission, those claims ultimately failed. (*Id.* at 3.)

Separately, in January 2016, the Trust brought a derivative action in state court against both orchard groups. (*Id.*) That action also failed because the rescission meant the Trust no longer had standing to bring a derivative action. (*Id.*)

At some point after that, the Trust assigned all of its claims to Pacesetter. Pacesetter, in turn, filed this action in January 2019. The ensuing litigation was filled with procedurally irregular maneuvers by Pacesetter, which are discussed in more detail below.

In December 2020, after almost two years of litigation, all three groups of defendants moved for summary judgment on Pacesetter's claims. (Docs. 201, 202, 203.)

In July 2021, the Court granted all three motions. (Doc. 280.) As an initial matter, the Court concluded that much of the evidence submitted by Pacesetter in opposition to the motions was inadmissible. (*Id.* at 5-16.) In part because of that evidentiary determination, the Court then concluded that summary judgment was warranted for three reasons.

The first reason was "Pacesetter's failure to offer any cognizable evidence of damages," which was a ground on which both the AgriCare Defendants and Bassetti sought summary judgment. (*Id.* at 22-30, 35-36.) As to that issue, the Court noted that "Pacesetter disclosed one damages theory (*i.e.,* '$63.2 million in lost profit/benefit-of-the-bargain damages') in its complaint and initial MIDP disclosures, then seemed to disavow that theory during subsequent communications with the Court and opposing counsel, then seemed to return to that theory in its expert report, then expressly disavowed that theory for a second time during its Rule 30(b)(6) deposition." (*Id.* at 25.) The Court further noted that, "although Pacesetter's Rule 30(b)(6) designee stated that Pacesetter's expert (McMullin) would be providing a different calculation, McMullin subsequently testified

that he wasn't offering any opinion on damages." (*Id.* at 25.) Given this backdrop, the Court concluded that "there would be no point in holding a trial—Pacesetter cannot meet its burden of proving damages." (*Id.*)

The second reason was the application of the statute of limitations, which was a ground on which both the AgriCare Defendants and the Kapreilian Defendants sought summary judgment. (*Id.* at 30-34, 37-41.) Pacesetter sought to overcome the statute-of-limitations defense by arguing it was entitled to delayed accrual of its claims pursuant to the discovery rule, but the Court rejected this argument because "[t]he only pieces of evidence on which Pacesetter relies to support application of the discovery rule . . . [have been deemed] inadmissible and not properly before the Court." (*Id.* at 33.)

The third reason was a general lack of admissible evidence to support Pacesetter's claims, which was a ground on which Bassetti sought summary judgment. (*Id.* at 36-37.) As to that issue, the Court noted that "Bassetti met his initial *Celotex* burden of showing that Pacesetter has no evidence to support its claims against him" and concluded, in part because most of Pacesetter's proffered evidence had been deemed inadmissible, that Pacesetter had not proffered sufficient evidence to create a genuine issue of fact for trial. (*Id.*)

On August 10, 2021, the Kapreilian Defendants and Bassetti filed motions for attorneys' fees and costs. (Docs. 292, 293.)

On August 24, 2021, Pacesetter filed responses. (Docs. 299, 300.)

On September 1, 2021, Bassetti filed a reply. (Doc. 306.)

On September 2, 2021, the Kapreilian Defendants filed a reply. (Doc. 307.)[1]

…

…

…

---

[1] Bassetti requests oral argument (Docs. 293, 306), and Pacesetter requests an "in-person hearing" if the Court were "poised to award sanctions" (Doc. 299 at 17), but these requests are denied because the Court is denying both motions and because the issues are fully briefed and oral argument would not aid the Court's decision. See Fed. R. Civ. P. 78(b); LRCiv 7.2(f).

**DISCUSSION**

I.  The Kapreilian Defendants

The Kapreilian Defendants "seek actual attorney's fees incurred in the total amount of $177,341.97," as well as "non-taxable costs[] in the total amount of $1,697.35." (Doc. 292 at 4.) The Kapreilian Defendants identify three sources of authority for this request: (1) A.R.S. § 12-341.01; (2) A.R.S. § 12-349; and (3) the Court's inherent authority. (*Id.* at 3-4.) Each is addressed below.

    A.  **A.R.S. § 12-341.01**

        1.  Legal Standard

A.R.S. § 12-341.01(A) provides that, "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." In other words, § 12-341.01 "permits a discretionary award to the successful party in an action arising out of a contract." *Matter of Est. of Podgorski*, 471 P.3d 693, 698 (Ariz. Ct. App. 2020).

"Generally, the words 'arising out of a contract' describe an action in which a contract was the main factor causing the dispute." *Keystone Floor & More, LLC v. Ariz. Registrar of Contractors*, 219 P.3d 237, 240 (Ariz. Ct. App. 2009). *See also In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 836-37 (9th Cir. 2001) ("When the contract in question is central to the issues of the case, it will suffice as a basis for a fee award."); *Caruthers v. Underhill*, 287 P.3d 807, 820 (Ariz. Ct. App. 2012) ("The contract must be the essential basis of the action and not merely a factual predicate."); *Chaurasia v. Gen. Motors Corp.*, 126 P.3d 165, 173 (Ariz. Ct. App. 2006). ("The contract must have some causal connection with the claim to justify an award of attorneys' fees."). "In determining whether an action arises out of contract, the court is not bound by the form of the pleadings but looks to the nature of the action and the surrounding circumstances." *Hiatt v. Shah*, 364 P.3d 1138, 1143 (Ariz. Ct. App. 2015). Although "a trial court may award attorney fees under § 12-341.01 to the successful party . . . on contract claims that are interwoven with tort claims," *ML Servicing Co. v. Coles*, 334 P.3d 745, 753 (Ariz. Ct. App. 2014), "[t]he existence of a

contract that merely puts the parties within tortious striking range of each other does not convert ensuing torts into contract claims. Rather, a tort claim will 'arise out of a contract' only when the tort could not exist 'but for' the breach or avoidance of contract." *Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 6 P.3d 315, 320 (Ariz. Ct. App. 2000).

### 2. The Parties' Arguments

The Kapreilian Defendants argue that A.R.S. § 12-341.01 applies here because "collective conduct established an implied contract between" them and Pacesetter. (Doc. 292 at 3.)

Pacesetter responds that "this is not a contested action arising out [of] contract" because "Pacesetter is not contesting the validity of any contract, but the fraud that induced the original investment and the ongoing misrepresentations, fraudulent nondisclosures, fraud, and fraudulent concealment that were jointly committed, aided, and abetted over several years by all the Defendants." (Doc. 300 at 2-4.)

The Kapreilian Defendants don't address this issue in their reply. (Doc. 307.)

### 3. Analysis

Pacesetter has the better side of these arguments. Pacesetter's claims against the Kapreilian Defendants in this action were tort claims, not contract claims. Additionally, the Kapreilian Defendants offer no support for their assertion that they had an implied contract with Pacesetter and have not, at any rate, established that Pacesetter's tort claims arose out of that purported implied contract. Finally, even if the Kapreilian Defendants had established these prerequisites to relief under § 12-341.01, they have not discussed any of the factors that courts consider when deciding whether to exercise their discretion to award fees under that statute. The Court thus denies the Kapreilian Defendants' request for fees under § 12-341.01. *See, e.g.*, *Ellis v. Johnston*, 2009 WL 2450457, *3 (D. Ariz. 2009) ("Defendant fails to mention, let alone discuss, any of the . . . factors that this Court must consider in deciding whether to exercise its discretion to award attorneys' fees under A.R.S. § 12-341. That in and of itself is reason enough for the Court to decline to grant Defendant's motion for attorneys' fees.").

B. **A.R.S. § 12-349**

A.R.S. § 12-349(A) provides as follows:

> Except as otherwise provided by and not inconsistent with another statute, in any civil action commenced or appealed in a court of record in this state, the court shall assess reasonable attorney fees, expenses and, at the court's discretion, double damages of not to exceed five thousand dollars against an attorney or party . . . if the attorney or party does any of the following:
>
> 1. Brings or defends a claim without substantial justification.
> 2. Brings or defends a claim solely or primarily for delay or harassment.
> 3. Unreasonably expands or delays the proceeding.
> 4. Engages in abuse of discovery.

(*Id.*)

This statute requires little discussion. As Pacesetter correctly notes (Doc. 300 at 2), the Ninth Circuit has held that § 12-349 cannot serve as the basis for an award of sanctions by a federal court for litigation conduct occurring in federal court. *Larry's Apartment*, 249 F.3d at 838-39 (reversing fee award imposed under § 12-349, "question[ing] . . . the propriety of using an Arizona sanction statute in federal court," and concluding that "when fees are based upon misconduct by an attorney or party in the litigation itself, rather than upon a matter of substantive law, the matter is procedural [under *Erie*]. . . . In other words, the federal courts must be in control of their own proceedings and of the parties before them, and it is almost apodictic that federal sanction law is the body of law to be considered in that regard."). *See also R. Prasad Industries v. Flat Irons Env. Solutions Corp.*, 2014 WL 4722487, *12 (D. Ariz. 2014) ("The Court finds the Ninth Circuit's analysis of the issue in *In re Larry's Apartment* both persuasive and binding on this District Court. Therefore, the Court finds that A.R.S. § 12-349 is inapplicable here."); *Stilwell v. City of Williams*, 2014 WL 1654530 (D. Ariz. 2014) ("The Ninth Circuit has held that this state law statute . . . does not apply to actions in federal court, even if the court is sitting in diversity.").

…

- 6 -

C.  **Inherent Authority**

1.  Legal Standard

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (internal quotation marks omitted). These inherent powers include "the ability to fashion an appropriate sanction for conduct which abuses the judicial process," including "an assessment of attorney's fees . . . [against] a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side." *Id.* (internal quotation marks omitted). "[S]uch a sanction, when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature." *Id.* "That means . . . the court can shift only those attorney's fees incurred because of the misconduct at issue. . . . [I]f an award extends further than that—to fees that would have been incurred without the misconduct—then it crosses the boundary from compensation to punishment. Hence the need for a court, when using its inherent sanctioning authority . . . to establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party." *Id.*

"In exceptional cases, the but-for standard even permits a trial court to shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop." *Id.* at 1187. "If a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may . . . make a blanket award." *Id.* at 1188.

2.  Discussion

Although Pacesetter's litigation conduct in this action has been troubling and sometimes inexplicable, the Court nevertheless declines, in its discretion, to sanction Pacesetter pursuant to its inherent authority. As an initial matter, it is unclear whether the Kapreilian Defendants seek sanctions for all of Pacesetter's conduct since the initiation of this lawsuit or whether the sanction request is tied to specific instances of misconduct that occurred during the litigation. (*Compare* Doc. 292 at 3 ["This federal case spanned almost

3 years and involved reams of defendants wrongfully haled into a federal case for time-barred claims for which identical relief could have been previously sought in the original State Court proceedings."], *with* Doc. 292 at 5-6; Doc. 307 at 2-3 [mentioning several instances of perceived misconduct].) Regardless, the Kapreilian Defendants' request fails. If the Kapreilian Defendants seek a "blanket award" for a case initiated in bad faith, they have not established that this is the type of "exceptional case[]" for which a blanket award would be appropriate. Although the Kapreilian Defendants correctly note that the Court concluded at summary judgment that Pacesetter's claims were time-barred, that conclusion was based on Pacesetter's failure to proffer admissible evidence that the discovery rule applied to delay the accrual of its claims. Concluding that a party has failed to proffer admissible evidence to support delayed accrual is not the same thing as concluding that delayed accrual was categorically unavailable, much less that Pacesetter knew at the outset of the case it would unable to rely on the discovery rule.

Alternatively, if the Kapreilian Defendants seek sanctions for specific instances of misconduct by Pacesetter, the Kapreilian Defendants have failed to clearly identify which specific instances of misconduct are sanctionable, why those instances qualify for sanctions under the bad-faith standard, and why there is a causal link between the purported misconduct and the legal fees incurred. Counsel's time entries span from March 2019 to July 2021 (Doc. 292-4) and do not appear to be linked to any specific instances of misconduct, and the request for "actual attorney's fees in the total amount of $177,341.97" (Doc. 292 at 4) suggests the Kapreilian Defendants are seeking reimbursement for all of the fees they incurred.

II.     Bassetti

Bassetti "seeks a total sanctions award of $574,105.43 of attorney's fees, excess costs, and other expenses." (Doc. 294 at 1.) Bassetti identifies three sources of authority for this request: (1) 28 U.S.C. § 1927; (2) A.R.S. § 12-349; and (3) the Court's inherent authority. (Doc. 293 at 4.)[2]

---

[2]     Bassetti notes that he "omits discussion of Rule 11 or Rule 37 violations in the interests of page space, although much of Pacesetter's conduct also likely violates one or

As discussed above, Bassetti is not entitled to fees under § 12-349.[3] The Court thus confines its analysis to whether Bassetti has established an entitlement to fees under 28 U.S.C. § 1927 and/or the Court's inherent authority.

### A. **28 U.S.C. § 1927**

#### 1. Legal Standard

Under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." As the Ninth Circuit has recognized, "[t]he use of the word 'may' [in § 1927]—rather than 'shall' or 'must'—confers substantial leeway on the district court when imposing sanctions." *Haynes v. City & County of San Francisco*, 688 F.3d 984, 987 (9th Cir. 2012).

The Ninth Circuit's cases are "less than a model of clarity" as to the applicable liability standard under § 1927. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002), *as amended* (Feb. 20, 2002). One held that "section 1927 sanctions must be supported by a finding of subjective bad faith," which "is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *In re Keegan Mgmt. Co., Sec. Lit.*, 78 F.3d 431, 436 (9th Cir. 1996) (citations and internal quotation marks omitted). Another concluded that

---

both of these rules, as well." (Doc. 293 at 4.) Because Bassetti does not develop any request for sanctions premised on Rules 11 or 37, the Court declines to impose sanctions under those rules. Fed. R. Civ. P. 11(c)(1)-(2) (requiring that the subject of the request be given "notice and a reasonable opportunity to respond" and that the movant "describe the specific conduct that allegedly violates Rule 11(b)"); *Superior Performers, Inc. v. Speer*, 2017 WL 10222369, *2 (M.D.N.C. 2017) ("Plaintiff did not develop its argument in favor of sanctions [under Rule 37] beyond making conclusory assertions, and the Court will therefore not impose any sanctions.") (citation omitted).

[3] Bassetti acknowledges *Larry's Apartment* but identifies two cases from this District in which courts awarded sanctions under § 12-349. (Doc. 293 at 14.) Bassetti notes that he "does not want to lead this Court into error" but could not "reconcile the awards in these two cases against the apparent landscape of the law in this area and did not want to forego a potentially viable path to sanctions in this instance." (*Id.*) The Court appreciates Bassetti's candor but concludes that *Larry's Apartment* is controlling. *Hart v. Massanari*, 266 F.3d 1155, 1175 (9th Cir. 2001) ("A district court bound by circuit authority . . . has no choice but to follow it . . . .").

"recklessness suffices for § 1927," whereas "bad faith is required for sanctions under the court's inherent power." *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001). And another held that knowing about a rule and the applicable law and "recklessness in the face of such undeniable knowledge" would be "sufficient to justify the imposition of § 1927 sanctions." *Maui Police*, 276 F.3d at 1106-07. In *Maui Police*, the Ninth Circuit added that because counsel's argument was "frivolous inasmuch as it lacked credibility on its face," § 1927 sanctions were justified "even under the *Keegan* standard." *Id.* at 1107 n.8.

Finally, as for the amount of fees available under § 1927, the statute may be used to "shift the entire financial burden of an action's defense, including attorneys' fees, if the entire course of proceedings was unwarranted and should not have been commenced or pursued." *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 632 (9th Cir. 2017). It does "not authorize recovery from a party or an employee, but *only* from an attorney or otherwise admitted representative of a party." *FTC v. Alaska Land Leasing, Inc.*, 799 F.2d 507, 510 (9th Cir. 1996) (internal quotation marks omitted).

2. <u>The Parties' Arguments</u>

Bassetti argues that "the state court litigation preceding this action meant that Pacesetter's attorneys could not have reasonably believed that they would, at any point, prove all elements of their claim with any evidence[]." (Doc. 293 at 10-11.) Bassetti also contends that Pacesetter's counsel "repeatedly multiplied the already-frivolous litigation" by engaging in various forms of litigation misconduct over the course of the case, including:

- "Misrepresenting that damages evidence would be forthcoming from the commencement of the action through its conclusion and defending countless meritless positions on filings throughout the case";
- "Employing a Shotgun Approach designed to impose maximum costs by bringing nearly every possible motion or other filing at all times regardless of the merit or likelihood that the results of such filing would be material and relevant to the resolution of the motion overall";

- "[Trying] at least four times to have Daniel Duda returned as a Defendant in this case without success because each attempt was frivolous and made with reckless indifference to its lacking legal support," "even [trying] to have Mr. Duda returned to the case after they had added him as a Defendant to the TAC, but fail[ing] to serve him";
- "[Filing] a frivolous and unsupported Motion for Remedies late in this action seeking to add Daniel Duda again, which has no basis under the applicable rules of procedure and which was denied as meritless";
- "[Filing] a baseless and meritless Motion for Sanctions against defense counsel for Mr. Bassetti";
- "[Multiplying] the litigation" by filing a motion for summary judgment against Duda;
- "[Taking] depositions that were not used in the Response to Mr. Bassetti's Motion for Summary Judgment"; and
- Requiring Bassetti to "brief a Rule 60 Motion that was withdrawn after the Court asked Pacesetter to consider the many pending motions that were unnecessary."

(*Id.* at 11-12.) Finally, Bassetti emphasizes that "this Court spent significant amounts of its own time recounting the serial frivolous filings emanating from [Pacesetter], and eventually provid[ed] warnings and guidance to Pacesetter to help it correct its misconduct." (*Id.* at 3.)

Pacesetter responds that its counsel "did nothing in subjective bad faith." (Doc. 299 at 4.) As for the specific instances of litigation misconduct alleged in Bassetti's motion, Pacesetter attempts to explain why the challenged conduct was reasonable. (*Id.* at 8-15.) Finally, Pacesetter contends that Bassetti's fee request must be denied for the additional reasons that (1) the request includes fees that were incurred by various non-movants (*i.e.,* the Duda entities and Mr. Duda) and "Bassetti has not separated the fees, expenses, and costs for him alone"; and (2) the attorneys against whom fees are sought did not even

- 11 -

1  appear in this case until September 2019 and June 2020, respectively. (*Id.* at 6, emphasis omitted.)

In reply, Bassetti argues that, even though Pacesetter's current counsel did not appear until after this case was initiated, one of them "was involved in the State Court litigation" and thus "knew or should have known of the lack of evidence of damages in the State Court litigation." (Doc. 306 at 5.) Bassetti also contends that the fees associated with the Duda-related matters "benefited [him] and his Motion for Summary Judgment," so there is no basis for excluding those fees from his overall fee request. (*Id.*) Finally, Bassetti responds to Pacesetter's proffered justifications for the alleged instances of litigation misconduct and argues that the justifications are unavailing. (*Id.* at 6-10.)

3. Analysis

Bassetti's request to sanction Pacesetter's counsel under § 1927, by holding counsel responsible for the entirety of the fees expended by Bassetti's counsel in this case, is denied.

To be clear, the Court shares Bassetti's disappointment with many of Pacesetter's counsel's litigation tactics. It is clear that certain actions were meritless, procedurally improper, and, at times, baseless. This disappointment should come as no surprise, as the Court repeatedly expressed concerns about Pacesetter's counsel's tactics over the course of this case.[4]

---

[4] *See, e.g.,* Doc. 65 at 2 (April 2019 order: "It is baffling to the Court that Plaintiff's counsel would think it appropriate to file an emergency motion under these circumstances."); Doc. 124 at 17 (November 2019 tentative ruling: "The motion practice in this case has been chaotic. Moving forward, the Court urges the parties to carefully consider whether any new motions are truly necessary. The Court also encourages the parties to refamiliarize themselves with the controlling authorities in this case, so that any new arguments presented to the Court are grounded in law and fact and are not unsupported assertions or repeated misreadings."); Doc. 140 (March 2020 order: "The Court has preliminarily reviewed Plaintiff's latest motion . . . [and] has serious concerns about the propriety of the procedural vehicle that Plaintiff has chosen."); Doc. 142 (April 2020 order: "The Court has reviewed Plaintiff's recent filing . . . [and] is disinclined to go along with the first part of the filing, which appears to be a request for a telephonic conference so Plaintiff can solicit legal advice concerning how to raise certain claims."); Doc. 152 at 8 (July 2020 order: "Months ago, the Court encouraged 'the parties to carefully consider whether any new motions are truly necessary' in light of the 'chaotic' nature of the motion practice in this case. Unfortunately, it seems that plea wasn't taken to heart. Pacesetter's [current request] was unnecessary and needlessly wasted the parties' and the Court's time. Moreover, the inflammatory allegations that Pacesetter levied were unaccompanied by a

Nevertheless, Bassetti does not seek reimbursement for the fees associated with responding to particular motions that were reckless or filed in bad faith. Instead, Bassetti seeks to hold Pacesetter's counsel (who had not even appeared in the case at the time of some of the challenged filings) responsible for the entirety of the fees incurred over the course of the litigation, based on the theory that counsel "knew or should have known" from the moment they entered the case that all of the litigation conduct that preceded them (as well as all of the litigation conduct that was to unfold in the future) was reckless or undertaken in bad faith. Although this accusation has surface appeal—the sheer volume of procedurally irregular and unsupported requests by Pacesetter's counsel raises an inference that the litigation, as a whole, was being pursued recklessly or in bad faith—the Court cannot say that it fully persuaded. For example, although the summary judgment order concluded that Pacesetter failed to meet its burden of establishing the fact of damages, this ruling was based on Pacesetter's evolving damages disclosures and, in the Court's view, Pacesetter's ultimate disavowal of the damages theory it had disclosed. Pacesetter did not agree that a disavowal had occurred and contested what it perceived as the Court's misreading of the expert's deposition testimony. Although the Court disagreed with Pacesetter's reading of the deposition testimony, the Court does not find that this

---

clear request for relief."); Doc. 160 at 12 (July 2020 order: "Pacesetter continues to take a shotgun approach to this litigation while disregarding key procedural steps. This has caused its adversaries to expend considerable time and resources in fights over sideshow issues not connected to the merits of the case."); Doc. 190 [November 2020 order, denying Pacesetter's "puzzling" deposition-related motion where Pacesetter made "no effort to reconcile [a recent] ruling with the current request"); Doc. 207 (December 2020 order, noting that "the Court is unimpressed by Plaintiff's inaccurate statements concerning the meet-and-confer process"); Doc. 224 at 6 (January 2021 order: "[Pacesetter's] request for reinstatement represents obvious, and unwarranted, overreach."); Doc. 235 at 2 (February 2021 order: "Pacesetter's motion is the latest in a string of frivolous, harassing tactics in this case. Not only has Pacesetter failed to establish that Kaprelian-Santos engaged in misconduct during her deposition, but the proper remedy for such misconduct would not be to enter terminating sanctions . . . ."); Doc. 263 at 16 (June 2021 order, denying Pacesetter's motion for Rule 11 sanctions and noting that "Pacesetter has not remotely persuaded the Court that any sanctionable conduct has occurred"); Doc. 285 at 52-55 (transcript from July 2021 motion hearing, where the Court remarked that Pacesetter's belated attempt to supplement the summary judgment record was "improper," "violate[d]" a court order, and was "puzzling," surprising," and "improper" and Pacesetter's counsel responded by withdrawing the motion and explaining "[w]hen I was a young man in Florida I used to go to Bible meetings, and there would be a moment where you would come to Jesus. And I've had that moment.").

misreading, standing alone, establishes that counsel knew from the outset that Pacesetter would never be able to prove damages.

For this and other reasons, doubts remain about what Pacesetter's counsel's "knew or should have known" when they agreed to appear in this action. And given the presence of such doubts, the Court chooses, in its discretion, to deny Bassetti's fee request under § 1927. Admittedly, this is not a fully satisfying outcome. Bassetti was forced to expend more than a half-million dollars in defense of claims and motions that were often perplexing and undeveloped. On the other hand, it must not be overlooked that "[t]he district court's authority to sanction attorneys under § 1927 . . . must be exercised with restraint and discretion." *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1223 (9th Cir. 2010). Here, considerations of restraint compel the resolution of close calls and doubts in favor of Pacesetter's counsel and against the imposition of sanctions.

### B. **Inherent Authority**

#### 1. Legal Standard

The legal standards governing a claim for sanctions pursuant to the Court's inherent authority are set forth in Part I.C.1 above.

#### 2. The Parties' Arguments

Bassetti seeks attorneys' fees against Pacesetter under the Court's inherent authority because Pacesetter "brought this action after being put on full notice that [it] had no remaining damages which were not derivative following the rescission of its investment in the several years of litigation they engendered in state court before bringing their frivolous action here." (Doc. 293 at 6.) Bassetti argues that an award of attorneys' fees for the entire action—a blanket award—is proper because Pacesetter brought the action in bad faith from the outset: "Each and every action was taken to defend the frivolous claims brought in bad faith, where Pacesetter . . . knew that no damages existed and no evidence would be presented of any damages which were not derivative to an investment which had already been conclusively rescinded. . . . [N]o effort was ever made to determine any unique damages that may have justified this action as separate from those which completely

overlapped with the prior state court action in which Mr. Ball suffered universal defeat." (*Id.* at 7.) Bassetti also argues that Ball and the Trust "created Pacesetter to try to immediately and illicitly re-litigate the state court determination to harass different but related defendants, and did so through assignment of claims and an LLC vehicle in the hopes of insulating himself from any liability that might eventually arise from his bad faith conduct." (*Id.* at 8-9.) In a related vein, Bassetti argues that the corporate veil should be pierced and fees should be assessed against Ball, his wife, and the Trust. (*Id.* at 10, 15-16.)

Pacesetter responds that "[n]either Pacesetter, no[r] Mr. Ball and his wife, nor [counsel], have ever done anything in this case in bad faith" and their "*sole* goal from the start was to uncover the facts and move this matter to a jury trial on its merits as fast as possible." (Doc. 299 at 3.) Pacesetter also argues that Ball cannot be personally liable for attorneys' fees because he is protected by A.R.S. § 29-3304(A), which provides, in relevant part, that a "debt, obligation, or other liability of a limited liability company is solely the debt, obligation or other liability of the company." (*Id.* at 5.)

In reply, Bassetti disagrees that Ball is shielded from liability because he is the "only member of Pacesetter," "Pacesetter was formed days prior to the filing of the Complaint in January 2019," "Pacesetter has no source of revenue," and Ball "pays the fees incurred by Pacesetter for its attorneys." (Doc. 306 at 4.) Bassetti reiterates that the litigation was brought in bad faith because Pacesetter had no evidence of damages. (*Id.* at 9-10.)

3. <u>Analysis</u>

Bassetti's request for sanctions pursuant to the Court's inherent authority is, for reasons similar to Bassetti's request for § 1927 sanctions, denied. As the Supreme Court has emphasized, courts may rely on their inherent authority to shift all of the fees incurred over the course of a lawsuit only in "exceptional cases." *Goodyear Tire,* 137 S. Ct. at 1186-97. Here, Bassetti has not adequately established that Pacesetter's motivation for bringing this lawsuit—as opposed to its motivation for some of the filings and procedural steps it pursued during the course of the litigation—was rooted in bad faith. Although it is possible that Pacesetter had such a motivation, Bassetti has not proved it with a sufficient

degree of certainty.

As with the denial of Bassetti's request for § 1927 sanctions, the Court does not reach this conclusion without some hesitation. In particular, the formation and use of Pacesetter to pursue this litigation raises an inference of bad faith. Pacesetter does not dispute that the Trust, of which Ball is the trustee, assigned all of its claims to Pacesetter, an LLC in which Ball is the only member, just before bringing this lawsuit. The optics are suspicious. Nor has Pacesetter attempted to explain why Ball formed the LLC and why it was used to pursue this lawsuit, which Ball presumably could have brought on behalf of the Trust, as he did in the state-court litigation. Bassetti argues that Ball formed Pacesetter to avoid personal liability for filing a frivolous lawsuit, and this explanation seems plausible. Pacesetter's response—that Ball is shielded from personal liability under the Arizona LLC Act—only seems to reinforce this inference.

Although the circumstances surrounding the LLC's formation are troubling and raise serious questions about Ball's motivation in bringing this lawsuit, the overall question of bad faith remains a close one. In the final analysis, the Court retains just enough doubt to exercise restraint and decline, in its discretion, to award sanctions. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion.").

Accordingly,

**IT IS ORDERED** that:

(1) The Kapreilian Defendants' motion for attorneys' fees and costs (Doc. 292) is **denied**.

(2) Bassetti's motion for attorneys' fees and costs (Doc. 293) is **denied**.

Dated this 15th day of October, 2021.

Dominic W. Lanza
United States District Judge